# EXHIBIT A

## Proposed Final DIP Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re                      :    Chapter 11

RathGibson, Inc., et al.,[1]    :    Case No. 09-12452 (CSS)

         Debtors.    :    Jointly Administered

------------------------------------------------------x  **Ref. Docket No. 15 and 48**

**FINAL ORDER: (I) PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) GRANT SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (II) APPROVING USE OF CASH COLLATERAL OF PREPETITION LENDER; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER; AND (IV) GRANTING RELATED RELIEF**

This matter is before the Court on the motion dated July 13, 2009 (the "Motion")[2] of RathGibson, Inc. ("RathGibson" or the "Borrower"), Greenville Tube Company ("Greenville") and RGCH Holdings Corp. ("RGCH", and together with RathGibson and Greenville, the "Debtors"), three of the debtors and debtors-in-possession in the above-referenced chapter 11 cases (collectively, the "Chapter 11 Cases"), for entry of an interim order (the "Interim Order") and a final order (this "Final Order"), under sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2002-1(b), 4001-1, 4001-2 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors in the above-captioned cases follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). Such Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

[2]    All defined terms shall have the meaning ascribed to them in the Motion or the applicable DIP Documents (as defined herein) unless otherwise defined herein.

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

(1) authorization for RathGibson, to obtain secured postpetition financing (the "DIP Facility") pursuant to the terms and conditions of that certain Secured Super-priority Debtor-in-Possession Multiple Draw Term Loan Agreement, dated as of July 13, 2009, by and among RathGibson, as Borrower, Greenville and RGCH, as guarantors, Wilmington Trust Company FSB as Administrative Agent (in such capacity, the "DIP Agent") and the lenders from time to time party thereto (the "DIP Lenders", and together with the DIP Agent, the "DIP Parties"), substantially in the form filed with the Court on July 13, 2009 (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "DIP Agreement," and together with any related certificates, agreements, documents and instruments (including any amendments, restatements, supplements or modifications of any of the foregoing) delivered pursuant to or in connection therewith (including the "Loan Documents" under and as defined therein), collectively the "DIP Documents");

(2) authorization for the Debtors to execute and enter into the DIP Documents and to perform their respective obligations thereunder and such other and further acts as may be required in connection with the DIP Documents, including, without limitation, the payment of all principal, interest, fees, expenses and other amounts payable under the DIP Documents as such amounts become due and payable;

(3) authorization for the Debtors to grant security interests, liens and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of

the Bankruptcy Code and priming liens pursuant to section 364(d)(1) of the Bankruptcy Code) to the DIP Agent, for the benefit of the DIP Parties, in the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "DIP Obligations"), as more fully set forth in this Final Order;

(4) authorization for the Debtors' use of Cash Collateral of the Prepetition Secured Parties (as defined herein) under the Prepetition Credit Documents (as defined herein), as provided herein, and the provision of adequate protection to the Prepetition Secured Parties for any Diminution in Value (as defined herein) of their interests in the Prepetition Collateral (as defined herein), including Cash Collateral, as set forth in Paragraph 12 below;

(5) authorization for the indefeasible repayment in full in cash of all Prepetition Secured Obligations (the date upon which the Prepetition Secured Obligations are indefeasibly paid in full in cash and no longer subject to objection, challenge, recharacterization, disgorgement or recovery being known as the "Prepetition Secured Obligations Paydown Date"); and

(6) modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

This Court having held an emergency interim hearing (the "Interim Hearing") on the Motion to consider entry of the Interim Order on July 14, 2009; and after considering all the pleadings filed with this Court, including the limited objections raised by the United States

Trustee for the District of Delaware (the "U.S. Trustee") and an informal group of certain holders of payment-in-kind notes issued by RGCH to the entry of the Interim Order and the relief provided therein (together, the "Interim Order Objections"); and, after considering the evidence presented on the record of the Interim Hearing, this Court having overruled the Interim Order Objections that were not otherwise resolved and entered the Interim Order on July 14, 2009, which authorized the Debtors, on an interim basis, to obtain from the DIP Lenders under the DIP Facility term loans in an aggregate principal amount equal to $65 million (the "Initial Draw"), pursuant to the terms of, and on the conditions contained in, the DIP Agreement, which funds were necessary to, among other things, indefeasibly pay in full in cash the Prepetition Secured Obligations (subject to the reservation of rights contained in Paragraph 15 of this Final Order); and

This Court having found that, under the circumstances, due and sufficient notice of the Motion and the final hearing thereon (the "Final Hearing", and together with the Interim Hearing, the "Hearings") was provided by the Debtors as set forth in Paragraph K below, and having held the Final Hearing on August 11, 2009 after considering all the pleadings filed with this Court and as further stated on the record at the Hearings; and this Court having overruled all unresolved objections to the relief requested in the Motion; and upon the record made by the Debtors at the Hearings and the Affidavit of Jon M. Smith, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Motions, and after due deliberation and consideration and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.  On July 13, 2009 (the "Petition Date"), each Debtor filed a petition with this Court commencing a case under chapter 11 of the Bankruptcy Code.  The Debtors are continuing

to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief sought here are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, and Rules 2002, 4001, 6004 and 9014 of the Bankruptcy Rules, and Local Rules 2002-1(b), 4001-1, 4001-2 and 6004-1.

C.  Without prejudice to the rights of any other non-Debtor party-in-interest with standing (but subject to the limitations thereon described in Paragraph 15 below), the Debtors hereby admit, acknowledge, agree and stipulate that:

> (i)  pursuant to that certain Credit Agreement, dated as of February 7, 2006 (as amended on August 15, 2006, June 15, 2007, December 13, 2007, February 27, 2008, April 8, 2008, May 4, 2009, May 15, 2009, June 19, 2009 and June 30, 2009 and as in effect on the Petition Date, the "Prepetition Credit Agreement" and together with all loan and security documents related thereto, the "Prepetition Credit Documents"), by and among RathGibson, as borrower, the other entities designated as "Credit Parties" (as defined therein) party thereto, the lenders from time to time party thereto (in such capacity, collectively, the "Prepetition Lender"),[3] General Electric Capital Corporation

---

[3]  On June 19, 2009, (i) GECC and Wayzata Opportunities Fund II, L.P. ("Wayzata"), entered into that certain Assignment and Transition Agency Agreement (the "GECC Assignment Agreement"), and (ii) Natixis and Wayzata entered into that certain Assignment Agreement (the "Natixis Assignment Agreement", and together with the GECC Assignment Agreement, the "Assignment Agreements"), pursuant to which GECC and Natixis, respectively, assigned their interests in and commitments as lenders under the Prepetition Credit Agreement to Wayzata. Consequently, as of the Petition Date, Wayzata was the sole remaining Prepetition Lender under the Prepetition Credit Agreement.  GECC continues to act as Prepetition Agent under the Prepetition Credit Documents.

("GECC"), as Administrative Agent (in such capacity and in the capacity of Collateral Agent under the security documents for the Prepetition Credit Agreement, the "Prepetition Agent", and together with the Prepetition Lender, in such capacity, the "Prepetition Secured Parties"), the Prepetition Lender provided a revolving credit facility to or for the benefit of the Borrower and the Credit Parties (the "Prepetition Revolving Credit Facility"). As of the Petition Date, the aggregate outstanding principal amount owed by the Debtors under the Prepetition Revolving Credit Facility was not less than $55,350,000 with the aggregate undrawn face amount of all letters of credit issued and outstanding under the Prepetition Credit Agreement being not less than $1,000,000 (collectively, and together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Credit Documents, including but not limited to, accrued and unpaid interest, any reimbursement obligations (contingent or otherwise) in respect of letters of credit, any fees, expenses and disbursements, cash management obligations, derivative obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of any of the Borrower's or any other Credit Parties' obligations pursuant to the Prepetition Credit Documents, including all "Obligations" under and as defined in the Prepetition Credit Agreement, the "Prepetition Secured Obligations");

(ii)     to secure the Prepetition Secured Obligations, the Borrowers granted to the Prepetition Secured Parties a first priority security interest in and lien upon (the "Prepetition Liens") substantially all of the assets of the Debtors, including without

limitation, all "Collateral" under and as defined in the Prepetition Credit Documents (collectively, the "Prepetition Collateral");

(iii)    (a) the Prepetition Secured Obligations constitute legal, valid, enforceable and binding obligations of each of the Debtors; (b) no offsets, defenses or counterclaims to the Prepetition Secured Obligations exist; (c) no portion of the Prepetition Secured Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Prepetition Credit Documents are valid and enforceable by the Prepetition Secured Parties against each of the Debtors; (e) the Prepetition Liens were perfected as of the Petition Date and constitute legal, valid, binding, enforceable and perfected liens in and to the Prepetition Collateral and are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and such liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise expressly permitted by the Prepetition Credit Documents (to the extent any such permitted liens were legal, valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or thereafter pursuant to section 546(b) of the Bankruptcy Code, the "Permitted Liens"); (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Secured Obligations exceeded the amount of the Prepetition Secured Obligations, and the Prepetition Secured Obligations constitute allowed secured claims against the Debtors' estates; and (g) the Debtors and their estates have no claim, objection, challenge or cause of action against the Prepetition Secured Parties or any of their respective affiliates, parents, subsidiaries, partners, controlling persons, agents,

attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or arising under or in connection with any of the Prepetition Credit Documents (or the transactions contemplated thereunder), the Prepetition Secured Obligations or the Prepetition Liens, including without limitation, any right to assert any disgorgement or recovery; and (h) the Assignment Agreements were negotiated in good faith, and the Debtors' entry into the Assignment Agreements prior to the Petition Date was proper.

D. The Debtors hereby agree and stipulate that:

(i) pursuant to that certain indenture, dated as of February 7, 2006 (as supplemented pursuant to that certain First Supplemental Indenture dated as of August 15, 2006 and as in effect on the date hereof, the "Senior Notes Indenture"), by and between RathGibson, as issuer, and The Bank of New York, as indenture trustee (in such capacity, the "Senior Notes Indenture Trustee"), and Greenville, as guarantor, RathGibson issued the 11.25% Senior Notes due 2014 (the "Senior Notes" and the holders of such Senior Notes, in such capacity, the "Senior Noteholders", and together with the Senior Notes Indenture Trustee, in such capacity, the "Senior Notes Parties"). As of the Petition Date, approximately $200 million in aggregate principal amount of Senior Notes, plus accrued and unpaid interest with respect thereto and all reasonable fees, costs and expenses as provided under the Senior Notes Indenture (collectively, the "Senior Notes Obligations") was outstanding; and

(ii)  (a) the Senior Notes Obligations constitute legal, valid, enforceable and binding obligations of RathGibson, as issuer, and Greenville, as guarantor; (b) no offsets, defenses or counterclaims to the Senior Notes Obligations exist; (c) no portion of the Senior Notes Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (d) the Senior Notes Indenture is valid and enforceable by the Senior Notes Indenture Trustee and the Senior Noteholders against each of RathGibson and Greenville; (e) the Senior Notes Obligations constitute allowed unsecured claims against the RathGibson's and Greenville's estates; and (f) the Debtors and their estates have no claim, objection, challenge or cause of action against the Senior Notes Parties or any of their respective affiliates, parents, subsidiaries, partners, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), or whether arising under or in connection with the Senior Notes Indenture or the transactions contemplated thereunder or the Senior Notes Obligations, including without limitation, any right to assert any disgorgement or recovery;

provided, however, that this Paragraph D shall not be binding upon, and shall not prejudice the rights of, any other party-in-interest, including the Committee, concerning its right, if any, to challenge the validity and enforceability of the Senior Notes Obligations or assert any claim or cause of action against the Senior Notes Parties (and which rights of such other parties-in-

interest, including the Committee, shall not be limited to the Investigation Termination Date (as defined herein) or the use of a Challenge (as defined herein)).

E.   Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the DIP Facility and use of Cash Collateral.   The Debtors' ability to maintain business relationships with their vendors, suppliers and customers, pay their employees,  purchase and supply new inventory and otherwise finance their operations is essential to the Debtors' continued viability.   In addition, based on the record presented at the Hearings: (i) the Debtors' critical need for financing is immediate and the entry of this Final Order is necessary to avoid immediate and irreparable harm to the Debtors' estates; (ii) in the absence of the DIP Facility and use of Cash Collateral, the continued operation of the Debtors' businesses would not be possible and serious and irreparable harm to the Debtors and their estates would occur; and (iii) the preservation, maintenance and enhancement of the going concern value of the Debtors are of the utmost significance and importance to a successful reorganization of the Debtors.

F.   Given the Debtors' current financial condition, financing arrangements and capital structure, and the present state of the economy and the credit markets generally, the Debtors are unable to obtain sufficient interim and long-term financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and the DIP Documents, and are not able to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code.   New credit is unavailable to the Debtors without providing the DIP Agent for the benefit of the DIP Lenders the (i) DIP Superpriority Claims (as defined

herein), and (ii) DIP Liens (as defined herein) in the DIP Collateral (as defined herein), as provided herein and in the DIP Documents.

G. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, (i) the terms and conditions of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duty and are supported by reasonably equivalent value and fair consideration, (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Debtors and the DIP Parties, and (iii) any credit extended, loans made and other financial accommodations extended to the Debtors by the DIP Parties have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

H. An immediate and critical need exists for the Debtors to use the Cash Collateral (in addition to the DIP Facility) to continue to operate their businesses in the ordinary course, pay wages, maintain business relationship with vendors, suppliers and customers, make capital expenditures, make adequate protection payments and generally conduct their business affairs so as to avoid immediate and irreparable harm to their estates and the value of their assets (subject to and within the limits imposed by the terms of this Final Order).

I. The Prepetition Secured Parties have consented to the (i) financing arrangements contemplated by this Final Order and the DIP Documents and (ii) Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in this Final Order. As a condition to entry into the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Parties and the Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility shall be used, in each case only in a manner consistent with the terms and conditions of the DIP Documents and in accordance with

an Approved Budget (as defined herein), solely for (v) working capital, capital expenditures and for other general corporate purposes, (w) adequate protection payments, as provided for hereunder, (x) the permitted payment of costs of administration of the Chapter 11 Cases, (y) payment of such prepetition expenses as are consented to by the DIP Parties and approved by the Court, and (z) in connection with the Initial Draw (as defined herein) under the DIP Facility, the repayment in full in cash of all Prepetition Secured Obligations (including, to the extent necessary, for cash collateralization of letters of credit issued and then outstanding under the Prepetition Credit Agreement). The repayment in full in cash of the Prepetition Secured Obligations is necessary, as the Prepetition Secured Parties will not otherwise consent to the DIP Lenders extending the DIP Facility and credit to the Debtors under the DIP Documents and as provided hereunder, and the Prepetition Secured Parties have not otherwise consented to the use of their Cash Collateral or the subordination of their liens to the DIP Liens. The consent of the Prepetition Secured Parties is expressly limited to the postpetition financing being provided by the DIP Lenders and the use of Cash Collateral (as contemplated by this Final Order and the DIP Documents) and the provision of adequate protection herein, and shall not extend to any other postpetition financing or to any modified version of the DIP Facility or to any modified version of the use of Cash Collateral.

J. Each of the Prepetition Secured Parties is entitled to receive adequate protection pursuant to sections 361, 363 and 364 of the Bankruptcy Code, as set forth in Paragraph 12 below, for any diminution in the value of such entity's interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale or lease of such collateral, the imposition of the automatic stay, the priming of the Prepetition Liens and the subordination to the Carve-Out (defined below) and the DIP Liens (as herein defined)

(collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

K.  Telephonic, facsimile notice or overnight mail notice of this Final Hearing and the proposed entry of this Final Order has been provided to: (i) the twenty (20) largest unsecured creditors of each Debtor; (ii) the Office of the U.S. Trustee; (iii) the Securities and Exchange Commission; (iv) counsel to the DIP Agent; (v) counsel to the Prepetition Agent; (vi) the Senior Notes Indenture Trustee; (vii) Credit Suisse, as Administrative Agent for the 13.25% pay-in-kind notes due 2015; (viii) counsel to the official unsecured creditors' committee appointed in these Chapter 11 Cases (the "Committee"); (ix) all known parties asserting a lien against the Collateral (as reflected on schedule 8.2 of the DIP Facility); (x) each of the financial institutions listed in the Debtors' Motion For Order Authorizing: (A) Continued Use Of The Debtors' Cash Management System And Procedures; (B) Maintenance And Continued Use Of Existing Bank Accounts; (C) A Waiver Of Certain Operating Guidelines Relating To Bank Accounts; (D) Waiver Of The Requirements Of Section 345 Of The Bankruptcy Code On An Interim Basis; And (E) Continuation Of Intercompany Transactions And According Administrative Expense Status To Claims For Such Transactions; and (xi) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or are required to receive notice under the Bankruptcy Rules (collectively, the "Notice Parties"). Requisite notice of the Motion and the relief requested thereby and this Final Order has been provided in accordance with Bankruptcy Rule 4001, and no other notice need be provided for entry of this Final Order.

L.  The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Final Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.  This Court

concludes that entry of this Final Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

Based on the foregoing, and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

1.      Approval of Final Order.  The Motion is approved on the terms and conditions set forth in this Final Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Final Order shall become effective immediately upon its entry.

2.      Approval of DIP Documents; Authority Thereunder.  The Debtors are hereby authorized to enter into, and execute and deliver, the DIP Documents, including the DIP Agreement, and such additional documents, instruments and agreements as may be required or requested by the DIP Parties to implement the terms or effectuate the purposes of this Final Order and the DIP Documents.

3.      Validity of DIP Documents.  Upon execution and delivery of the DIP Documents, each of the DIP Documents shall constitute, and are hereby deemed to be, the legal, valid and binding obligations of the Debtors party thereto, enforceable against each such Debtor in accordance with its terms.  Any loans advanced under the DIP Agreement have been and will be made to fund the Debtors' working capital and general corporate needs, in each case, in the ordinary course of business to the extent permitted under the DIP Agreement, and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Agreement, the Interim Order, this Final Order and any other orders of this Court (including, without limitation, subject

to Paragraph 15 below, the indefeasible payment in full in cash of the Prepetition Secured Obligations). Except as otherwise expressly provided in this Final Order, no obligation, payment, transfer or grant of security under the DIP Documents or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

4. <u>Authorization to Borrow; Use of Cash Collateral</u>. Upon entry of this Final Order, the Debtors are immediately authorized to borrow from the DIP Lenders under the DIP Facility up to an aggregate principal amount not to exceed $80 million, subject to the terms and conditions set forth in the DIP Documents, and this Final Order. Subject to the terms and conditions of this Final Order, the DIP Documents and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral until the Termination Date.

5. <u>Use of Proceeds; Repayment of Prepetition Secured Obligations</u>. From and after the entry of this Final Order, the Debtors shall use advances of credit under the DIP Facility only for the express purposes specifically set forth in the Interim Order, this Final Order, the DIP Documents and in compliance with the Approved Budget. The Initial Draw, which permitted the Debtors to, among other things, indefeasibly pay in full in cash the Prepetition Secured Obligations (including, without limitation, accrued and unpaid interest, fees, expenses, legal fees, disbursements and other amounts owing under the Prepetition Credit Documents that are contingent and unliquidated and subsequently become liquidated), subject to the reservation of rights contained in Paragraph 15 of this Final Order, is hereby approved on a final basis. Upon the Prepetition Secured Obligations Paydown Date, the Prepetition Secured

Obligations shall be deemed to be indefeasibly paid in full in cash and no longer subject to objection, challenge, recharacterization, disgorgement or recovery.

6.        <u>Payment of Adequate Protection</u>. The Debtors are authorized to use the proceeds of the Loans, in part, to make certain adequate protection payments to the Prepetition Secured Parties, as provided for in Paragraph 12 of this Final Order and the DIP Agreement.

7.        <u>Budget</u>. (a) Attached to the Interim Order as <u>Exhibit B</u> was a 13-week budget (the "<u>Initial Approved Budget</u>") which reflects the Debtors' anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtors expect to incur during each week during the term of the Initial Approved Budget. The Initial Approved Budget may be amended, supplemented or otherwise modified from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors in accordance with the terms and conditions of the DIP Agreement and approved in writing pursuant to the terms of the DIP Agreement by the DIP Parties (each such additional budget, a "<u>Supplemental Approved Budget</u>"), in each case, without further notice, motion or application to, order of, or hearing before this Court;   <u>provided</u>, <u>however</u>, that the Debtors shall provide copies of each Supplemental Approved Budget to the Committee in accordance with section 7(c) below. The aggregate, without duplication, of all items in the Initial Approved Budget and any Supplemental Approved Budgets shall constitute the "Approved Budget".

(b)        <u>Budget Covenants</u>. The Debtors acknowledge and agree that pursuant to the terms of the DIP Documents they are required, among other things, (x) to provide to the DIP Agent, so as actually to be received by 5:00 p.m. (New York time) on the third Business Day of

each week, weekly variance reports for the preceding weekly period and on a cumulative basis from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget, in substantially the same form and detail as delivered on the Closing Date; (y) by 5:00 p.m. (New York time) on the third Business Day of each week from the Closing Date until the DIP Termination Date, to deliver to the DIP Agent an updated, "rolling" 13-week budget which sets forth by line item updated projected receipts and disbursements for the Debtors during the period commencing from the end of the previous week through and including thirteen weeks thereafter; provided that the Debtors shall still be subject to and be governed by the terms of the Approved Budget then in effect and the DIP Parties shall have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto until the date on which such updated budget shall constitute an Approved Budget; and (z) by no later than five (5) business days prior to the end of the period covered by the then applicable Approved Budget, to deliver to the DIP Parties a Supplemental Approved Budget. The Debtors acknowledge and agree that (i) the incurrence or payment by the Debtors of expenses (x) other than amounts in connection with the itemized amounts set forth in the Approved Budget and (y) in excess of the variances permitted by Section 7.11 of the DIP Agreement, or (ii) other violation of the terms and condition of this sub-paragraph (b), shall constitute a "Default" or "Event of Default" (each as defined in the DIP Agreement), as the case may be, as provided under the DIP Agreement.

(c)     Committee Access to Financial Information.  Any financial information that the Debtors are required to provide to the DIP Parties under this Final Order or the DIP Documents (including, but not limited to, the Initial Approved Budget and any Supplemental Approved Budget) also shall be substantially contemporaneously transmitted by the Debtors to

17

counsel for the Committee, provided that the Committee and its counsel and financial advisors shall keep such information confidential in accordance with the terms of the Committee's by-laws or any confidentiality agreement or protective order applicable to the Committee and/or its counsel and financial advisors agreed to by and among the Debtors, the DIP Parties and the Committee and/or its counsel and financial advisors subsequent to the date of this Final Order.

8.        <u>Payment of DIP Fees and Expenses</u>.  The Debtors are hereby authorized and directed to pay upon demand all fees, costs, expenses and other amounts payable under the terms of the DIP Documents and all other reasonable, out-of-pocket fees, costs and expenses of the DIP Parties in accordance with the terms of the DIP Documents (including, without limitation, the reasonable, out-of-pocket prepetition and postpetition fees, costs and expenses of legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Parties, and any other fees set forth in the Fee Letter, including the DIP Equity (to the extent applicable)); <u>provided</u>, <u>however</u>, that the reasonable, out-of-pocket fees, costs and expenses of the DIP Parties in accordance with the terms of the DIP Documents (including, without limitation, the reasonable, out-of-pocket prepetition and postpetition fees, costs and expenses of legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Parties), shall be payable until the date of denial by this Court, if any such date occurs, of the DIP Facility.  None of such fees, costs, expenses or other amounts shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; <u>provided</u>, <u>however</u>, that copies of any such invoices (which invoices may be redacted to the extent necessary, in the DIP Parties' sole and absolute discretion, to delete any information that is confidential or subject to the attorney-client privilege or attorney work product) shall be

provided to the U.S. Trustee and counsel to the Committee when such invoices are provided to the Debtors; and provided further, however, that the U.S. Trustee and the Committee shall have ten (10) days from the receipt of such invoices (absent written agreement by the DIP Parties to extend such 10-day period) to object to such invoices, and the DIP Parties or their professionals (as applicable) shall disgorge any amounts previously paid pursuant to those invoices upon being "so ordered" pursuant to a final order of this Court (which shall have jurisdiction to determine any dispute concerning the invoices). All such unpaid fees, costs, expenses and other amounts owed or payable to the DIP Parties shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Final Order and the DIP Documents.

9.  Indemnification.  Except as otherwise ordered by this Court, the Debtors are hereby authorized to indemnify and hold harmless the DIP Parties, in their capacity as such, and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons, and each of their successors and assigns, in their respective capacity as such, from and against any and all damages, losses, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses (including, without limitation, reasonable attorney's fees, costs and expenses) incurred or required to be paid by an indemnified party of every nature and character arising out of or related to or in connection with the DIP Facility or the DIP Documents or the transactions contemplated thereby and by this Final Order (including, without limitation, the exercise by the DIP Parties of discretionary rights granted under the DIP Facility), to the extent set forth in the DIP Documents and this Final Order, provided, that the Debtors shall not have any obligation to indemnify and hold harmless the DIP Parties under this Paragraph 9 with respect to any matter solely resulting from the fraud,

gross negligence or willful misconduct of the indemnified DIP Party, as determined by a court of competent jurisdiction in a final non-appealable judgment or order. All indemnities of the DIP Parties shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Final Order and the DIP Documents.

10.     DIP Superpriority Claims.  In accordance with Bankruptcy Code section 364(c)(1), the DIP Obligations shall constitute claims (the "DIP Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114 or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code; provided, however, that the DIP Superpriority Claims: (i) shall be subject to the Carve-Out (as defined herein); and (ii) shall not be payable from or have recourse to the proceeds of Avoidance Actions (as defined herein).

11.     DIP Liens.  As security for the DIP Obligations, the DIP Parties are hereby granted (effective upon the date of the Interim Order, without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instrument or otherwise) valid and perfected, and unavoidable security interests in, and liens upon (such security instruments and liens collectively, the "DIP Liens"), any and all present and after-acquired tangible and intangible property and assets of the Debtors and their estates, whether real or personal, of any nature whatsoever, including, without limitation:  (i) a pledge of 100% of the capital stock of each Debtor's domestic subsidiaries, including, without limitation, a pledge by RGCH of 100% of its equity interests in RathGibson; (ii) a pledge of the capital stock (or equivalent equity

interest) of each of the foreign subsidiaries of the Debtors; provided, however, any such pledge in stock (or equivalent equity interest) of a foreign subsidiary of a Debtor shall be limited to 65% of the equity interest in each such foreign subsidiary if, in the judgment of the DIP Lenders, the pledge of more than 65% of such stock would have materially adverse tax consequences to the Debtors; (iii) all cash and cash equivalents; (iv) all causes of action and claims (other than avoidance actions under chapter 5 of the Bankruptcy Code (the "Avoidance Actions")), whether pursuant to federal law or applicable state law, of the Debtors or their estates; and (v) all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing (collectively, the "DIP Collateral"), as follows:

(a)     pursuant to section 364(c)(2) of the Bankruptcy Code, subject to the Carve-Out, a first priority, perfected lien and security interest upon all of the Debtors' right, title and interest in, to and under all DIP Collateral that is not otherwise encumbered by a validly perfected unavoidable security interest or lien on the Petition Date;

(b)     pursuant to section 364(c)(3) of the Bankruptcy Code, subject to the Carve-Out, a junior, perfected lien and security interest (other than as set forth in clause (c) below) upon all of the Debtors' right, title and interest in, to and under all DIP Collateral which is subject to (i) any validly perfected unavoidable security interest or lien in existence as of the Petition Date that is not subject to section 552(a) of the Bankruptcy Code, or (ii) any valid security interest or lien perfected (but not granted) after the Petition Date (to the extent such perfection in respect of a pre-Petition Date

claim is expressly permitted under the Bankruptcy Code) that is not subject to section 552(a) of the Bankruptcy Code; and

(c) pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior, priming, perfected lien and security interest upon all of the Debtors' right, title and interest in, to and under the Prepetition Collateral, subject only to (i) the Carve-Out, and (ii) all valid and perfected prepetition liens on the DIP Collateral other than the Prepetition Liens on the Prepetition Collateral.

12. <u>Prepetition Secured Credit Facility Adequate Protection</u>. As adequate protection of the Prepetition Liens of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such Prepetition Liens in the Prepetition Collateral on account of, among other things: (i) the provisions of this Final Order granting first priority priming liens on such Prepetition Collateral to the DIP Parties; (ii) the Debtors' use of Cash Collateral; (iii) the use, sale or lease of any other Prepetition Collateral; (iv) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code; or (v) otherwise, pursuant to sections 361, 363(c) and 364(d)(1) of the Bankruptcy Code, the Prepetition Secured Parties are hereby granted, solely to the extent of the Diminution in Value of the Prepetition Liens in the Prepetition Collateral from and after the Petition Date and until the date upon which the Prepetition Secured Obligations are paid in full in cash:

(a) the payment of cash interest on a current basis, calculated at the non-default rate under the Prepetition Credit Agreement (without prejudice to the right of the Prepetition Secured Parties to later assert claims for interest at the default rate);

(b) payments in cash, promptly, but in no event later than ten (10) days following receipt by the Debtors of any invoice therefor, of (i) the reasonable fees, costs

and expenses of Stroock & Stroock & Lavan LLP ("Stroock") and Richards, Layton & Finger, P.C. ("RLF") as legal counsel to the Prepetition Lender, and (ii) the reasonable fees, costs, and expenses, including without limitation, legal and other professionals' fees and expenses, whether incurred before or after the Petition Date, of the Prepetition Agent, as required under the Prepetition Credit Documents; provided, however, that none of such fees, costs and expenses of Stroock, RLF or the Prepetition Agent as adequate protection payments hereunder shall be subject to approval by this Court or the U.S. Trustee, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any such invoices (redacted to remove confidential or attorney-client privileged information) shall be provided to the U.S. Trustee and counsel to the Committee upon being provided to the Debtors, and the Committee shall have ten (10) days from the receipt of such invoices (absent written agreement by the Prepetition Secured Parties to extend such 10-day period) to object to such invoices, and the Prepetition Secured Parties or their professionals (as applicable) shall disgorge any amounts previously paid pursuant to those invoices upon being "so ordered" pursuant to a final order this Court (which shall have jurisdiction to determine any dispute concerning the invoices);

(c) continuing valid, binding, enforceable, unavoidable and fully perfected post-petition replacement liens on and security interests in, subject to the Carve-Out and the DIP Liens in the DIP Collateral, the postpetition collateral of the same nature and type as the Prepetition Collateral (other than avoidance actions under chapter 5 of the Bankruptcy Code) to the extent to which the Prepetition Secured Lenders had valid,

binding, enforceable, unavoidable and perfected liens on the Prepetition Collateral (collectively, the "Prepetition Lender Replacement Liens"); and

(d)     superpriority administrative expense claims (the "Prepetition Lender Superpriority Claims") under sections 503 and 507 of the Bankruptcy Code against the Debtors' estates to the extent that the Prepetition Secured Lender Replacement Liens do not adequately protect against the Diminution In Value of the Prepetition Liens on the Prepetition Collateral, which Prepetition Lender Superpriority Claims, if any, shall (subject only to the Carve-Out and the DIP Superpriority Claims, and which shall not be payable from or have recourse to the proceeds of Avoidance Actions) have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, but not limited to, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 and 1114, or otherwise and including those resulting from the conversion of any of the Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code;

provided, however, that in the event the Prepetition Secured Obligations are paid in full in cash, the adequate protection to be provided to the Prepetition Secured Parties pursuant to this Paragraph 12, with the exception of the adequate protection provided for in Paragraph 12(b), shall cease. With respect to the adequate protection to be provided to the Prepetition Secured Parties pursuant to this Paragraph 12(b) after the payment in full in cash of the Prepetition Secured Obligations, such amounts shall continue to be paid to the extent they arise from services provided in connection with any action or investigation regarding the Prepetition Secured Obligation until an action is adjudicated in a manner adverse to the Prepetition Secured

Parties pursuant to a final order. In the event that any portion of the Prepetition Secured Obligations is ordered by this Court to be reinstated or the proceeds of the repayment thereof are disgorged (in either instance solely to the extent that the Prepetition Secured Lenders have valid, binding, enforceable, unavoidable and perfected liens), for so long as such portion of the Prepetition Secured Obligations remains outstanding, the adequate protection provided for in this Paragraph 12 shall be reinstated with respect to such outstanding Prepetition Secured Obligations until the Prepetition Secured Obligations Paydown Date as if such payment or repayment thereof had never occurred (other than with respect to the payment of interest on such amounts for the period from the date of such payment or repayment through, but not including, the date of such reinstatement or disgorgement); provided furthe r, however, that this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to seek additional forms of adequate protection at any time in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective Prepetition Liens in the Prepetition Collateral during the Chapter 11 Cases.

13.    No Waiver of Prepetition Credit Agreement Provisions. Except as otherwise expressly provided in this Final Order, nothing contained in this Final Order shall be deemed a waiver or constitute a consent to the modification of any provision contained in the Prepetition Credit Agreement by the Prepetition Secured Parties, including, but not limited to, the incurrence or issuance of any indebtedness by the Debtors, the incurrence of any lien in connection therewith or the making of any payment by the Debtors; provided, that the Debtors' compliance with the DIP Facility, including the incurrence of obligations thereunder and hereunder, shall not constitute a default under the Prepetition Credit Agreement.

14.     Carve-Out. Upon the first date (the "Carve-Out Event") on which the DIP Agent is entitled to exercise remedies under the DIP Facility due to the occurrence of an Event of Default and provides written notice thereof to the Debtors (the "Carve-Out Event Notice"), to the extent unencumbered funds are not readily available on such date to pay administrative expenses in full, the DIP Liens, DIP Superpriority Claims, Prepetition Secured Lender Superpriority Claims, Prepetition Secured Lender Replacement Liens and Prepetition Liens shall be subject to the payment of (x) any unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Event by the professionals retained by the Debtors or the professionals retained by the Committee in these Chapter 11 Cases (collectively, the "Professionals") to the extent allowed by an order of this Court, plus (y) those fees, costs and expenses incurred by Professionals after the Carve-Out Event and subsequently allowed by order of this Court, provided that the amounts under (x) and (y) shall not in the aggregate exceed $2,500,000, plus (z) fees pursuant to 28 U.S.C. § 1930 and to the Clerk of the Court (collectively, the "Carve-Out"); provided, however, that no portion of the Carve-Out, DIP Facility, DIP Collateral, Prepetition Collateral or Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or the Committee, in connection with: (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Parties, the Prepetition Secured Parties or the Commitment Parties (as defined in the DIP Agreement), including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the DIP Obligations, DIP Superpriority Claims or security interests and liens of the DIP Parties in respect thereof or (b) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense,

counterclaim, or offset to the Prepetition Secured Obligations, Prepetition Lender Superpriority Claims or security interests and liens of the Prepetition Secured Parties in respect thereof; or (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Parties' assertions, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Final Order; provided, further, however, that no more than $100,000 of the proceeds of the DIP Facility or any proceeds of the DIP Collateral or the Cash Collateral may be used to (x) fund an investigation by the Committee into the existence of any causes of action or other type of litigation against the Prepetition Secured Parties with respect to the Prepetition Secured Obligations, or (y) prevent, hinder, or delay any of the DIP Parties' or Prepetition Secured Parties' respective enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred (after the expiration of the requisite notice period, if any, subsequent to such Event of Default to the extent provided for in Paragraph 23 of this Final Order); or using or seeking to use Cash Collateral or, except to the extent permitted by the terms of the DIP Documents and this Final Order, selling or otherwise disposing of DIP Collateral, in each case without the consent of the DIP Parties. After receipt of the Carve-Out Event Notice, the Debtors shall provide notice by facsimile within three (3) Business Days to all Professionals informing them that a Carve-Out Event has occurred and further advising them that the Debtors' ability to pay such Professionals is subject to and limited by the Carve-Out. Notwithstanding the foregoing, so long as a Carve-Out Event has not occurred: (i) the Debtors shall be permitted to pay administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable; and (ii) such payments shall not be applied to reduce the Carve-Out. Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or

expenses by any party and shall not affect the right of the Debtors, DIP Parties, Committee, U.S. Trustee, or any other party-in-interest to object to the allowance and payment or any amounts incurred or requested.

15. <u>Reservation of Certain Third Party Rights</u>. The Committee (or any non-Debtor party-in-interest with standing) shall have a maximum of seventy-five (75) calendar days from the date of the Committee's appointment (or such later date as may be (a) agreed to with the written consent of the Prepetition Agent or Prepetition Lender or (b) so ordered by this Court, each as more specifically set forth below) (the "<u>Investigation Termination Date</u>") to investigate the validity, perfection and/or enforceability of the Prepetition Liens and the Prepetition Secured Obligations, or to assert any other claim or cause of action against the Prepetition Secured Parties. The Investigation Termination Date may be extended: (a) with the consent of the Prepetition Secured Parties, as memorialized in writing by the Committee and either the Prepetition Agent or the Prepetition Lender; or (b) pursuant to an order of this Court finding cause for such extension. If any Committee, or any non-Debtor party-in-interest hereafter vested with authority by this Court (including any chapter 7 trustee that may be appointed or elected prior to the Investigation Termination Date, or thereafter for the duration of any litigation commenced by the filing of a complaint on or prior to the Investigation Termination Date) determines that there may be (i) a challenge to the validity, perfection and/or enforceability of the Prepetition Liens or the Prepetition Secured Obligations, respectively or (ii) any other claim or cause of action against the Prepetition Secured Parties, by the Investigation Termination Date, such Committee or other non-Debtor party-in-interest hereafter (to the extent such other non-Debtor party is vested with authority by this Court) shall file and prosecute a complaint or objection related thereto (each, a "<u>Challenge</u>"), and shall have only until the

Investigation Termination Date to file such objection or otherwise initiate an appropriate action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action. If a Challenge is not filed on or before the Investigation Termination Date (or such other later date as may be extended pursuant to the procedures therefor as set forth above), then: (a) the agreements, acknowledgements and stipulations contained in Paragraph C of this Final Order shall be irrevocably binding on the Debtors, the Committee and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, without further action by any party or this Court, and any Committee and any other party-in-interest and any and all successors-in-interest as to any of the foregoing, shall thereafter be forever barred from bringing any Challenge with respect thereto; (b) the Prepetition Liens of the Prepetition Secured Parties shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition Secured Obligations shall be deemed to be a finally allowed claim for all purposes against each of the Debtors and any subsequent chapter 7 cases, in the amount set forth in Paragraph C, and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (d) the Debtors shall be deemed to have released, waived and discharged the Prepetition Secured Parties, together with their respective officers, directors, employees, agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors, in their capacity as such, from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Prepetition Secured Obligations. The Prepetition Agent shall cooperate in all reasonable requests for information in order to assist the Committee in its investigation under this Paragraph 15. Notwithstanding anything to the contrary herein: (x) if any such Challenge is timely commenced, the stipulations contained in Paragraph C of this Final

Order shall nonetheless remain binding on all parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; (y) the Prepetition Secured Parties reserve all of their rights to contest on any grounds any Challenge; and (z) the Prepetition Secured Parties shall comply with any and all orders of the Bankruptcy Court in connection with a successful Challenge, including any order disgorging amounts paid to the Prepetition Secured Parties; provided, however, that the Prepetition Secured Parties preserve any and all of their rights to appeal and stay any orders of the Bankruptcy Court issued in connection with such successful Challenge.

16.      Protection of DIP Lenders' Rights. So long as there are any Loans or other amounts outstanding, the DIP Lenders have any Commitment (as defined in the DIP Agreement) under the DIP Agreement or any other DIP Obligations are outstanding, the Prepetition Secured Parties shall (i) not take any action to foreclose upon or recover in connection with their respective Prepetition Liens or Prepetition Lender Replacement Liens, other agreements, or operation of law of this Final Order, or otherwise exercise remedies against any DIP Collateral, except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any release of DIP Collateral authorized under the DIP Documents, (iii) not file any further financing statements, trademark filings, copyright filings, patent filings, mortgages, notices of lien or similar instruments, enter into any control agreement, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (iii), the DIP Agent files financing statements or other documents to perfect the liens granted pursuant to this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) not seek to terminate or modify the use of Cash Collateral.

17.         Landlord Agreements. Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtors to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed unenforceable and shall have no force and effect with respect to the transactions granting post-petition liens in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or Prepetition Lender in accordance with the terms of the DIP Documents or this Final Order; provided, however, that the parties listed on Schedule 1 hereto shall have fifteen (15) days from the date hereof (such period, the "Landlord Objection Period") to file an objection to the entry of this Final Order with respect to this Paragraph 17. Upon the expiration of the Landlord Objection Period, if no objections by the parties listed on Schedule 1 are so filed, this Paragraph 17 shall be deemed fully enforceable and binding on such parties; provided, however, that in the event any such party (an "Objecting Landlord") files an objection, this Paragraph 17 shall nevertheless become binding on all such Parties on Schedule 1 other than such Objecting Landlord. If any objections are filed by such parties and such objections are not otherwise resolved consensually, the Debtors shall promptly schedule a hearing on an expedited basis before this Court. For the sake of clarity (and in accordance with Paragraph 31 below), upon its entry, the Final Order, except with respect to this Paragraph 17, shall be deemed fully enforceable and binding on the parties listed on Schedule 1.

18.         Bankruptcy Code Section 506(c) Waiver. The Debtors shall irrevocably waive and shall be prohibited from asserting any surcharge claim, under section 506(c) of the Bankruptcy Code or otherwise, for any costs and expenses incurred in connection

with the preservation, protection or enhancement of, or realization by the DIP Parties or Prepetition Secured Parties upon the DIP Collateral or the Prepetition Collateral (as applicable). In no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to the DIP Collateral or the Prepetition Collateral (as applicable).

19.     <u>Discharge Waiver</u>.  The DIP Obligations and the Prepetition Secured Obligations, evidenced by the DIP Documents and the Prepetition Credit Documents, respectively, shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on or prior to the effective date of such plan of reorganization or sale and the Termination Date, of all DIP Obligations and Prepetition Secured Obligations unless the DIP Parties and the Prepetition Secured Parties (prior to the Prepetition Secured Obligation Paydown Date) have otherwise consented in writing to such plan or sale.

20.     <u>Restrictions on Granting Postpetition Liens</u>.  Unless otherwise ordered by the Court after notice and hearing, other than the Carve-Out, or as otherwise provided in this Final Order, no claim having a priority superior or *pari passu* with those granted by this Final Order or the DIP Documents to the DIP Parties and Prepetition Secured Parties shall be granted or permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Cases, while (i) any portion of the DIP Facility (or refinancing thereof), any Loans or any other DIP

Obligations are outstanding or (ii) the DIP Lenders have any Commitment under the DIP Agreement. Except as expressly permitted by the DIP Documents, the Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security interests or liens in the DIP Collateral (or any portion thereof) to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

21. <u>Return of Inventory</u>. The Debtors shall not, (i) prior to the Prepetition Secured Obligation Paydown Date, without the consent of the Administrative Agent (at the direction of the Requisite Lenders) and Prepetition Secured Parties, and (ii) on and after the Prepetition Secured Obligation Paydown Date, without the consent of the Administrative Agent (at the direction of the Requisite Lenders): (a) enter into any agreement to return any inventory to any of their creditors for application against any prepetition indebtedness under section 546(h) of the Bankruptcy Code; or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise; <u>provided</u>, with respect to (ii) (a) and (b), such consent shall not be required if, such agreement, setoff or recoupment, the aggregate amount of prepetition Indebtedness (as defined in the DIP Credit Agreement), prepetition trade payables and other prepetition claims subject to all such agreements, setoffs and recoupments, since the Petition Date do not exceed $500,000.

22. <u>Automatic Effectiveness of Liens</u>. The DIP Liens and Prepetition Lender Replacement Liens shall not be subject to Challenge and shall attach and become valid, perfected, binding, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors, the DIP Parties or the Prepetition Secured Parties, respectively, and without the necessity of execution by the Debtors, or the filing

or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with a governmental unit (including, without limitation, the U.S. Patent and Trademark Office or the Library of Congress), or other documents or the taking of any other actions. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the DIP Documents and this Final Order. If the DIP Agent hereafter requests that the Debtors execute and deliver to the DIP Agent financing statements, security agreements, pledge agreements, collateral assignments, mortgages, or other instruments and documents considered by the DIP Agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized and directed to execute and deliver such financing statements, security agreements, pledge agreements, mortgages, collateral assignments, instruments, and documents, and the DIP Agent is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the Petition Date. The Prepetition Secured Parties are authorized and directed to execute and deliver all documents and instruments reasonably requested by the DIP Agent to effectuate and implement the terms, transactions and lien priorities contemplated by this Final Order and the DIP Documents.

23.    <u>Automatic Stay; Rights and Remedies Upon Event of Default</u>. Subject to the second sentence of this Paragraph, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefit, privileges, remedies and provisions of this Final Order and the DIP Documents in each case without further notice, motion, application to, order of, or hearing before, this Court. Subject to the provisions of the DIP Agreement and without further order from this Court, the automatic

stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Parties (or any of their respective agents) to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Documents, and to take any or all of the following actions without further notice, motion or application to, order of or hearing before, this Court: (a) immediately terminate the Debtors' right, if any, under this Final Order or the DIP Documents to use Cash Collateral; (b) cease making any Loans to the Debtors; (c) terminate, reduce or restrict any commitment to extend credit to the Debtors, (d) declare all DIP Obligations to be immediately due and payable; (e) freeze monies or balances in the Debtors' accounts; (f) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Agent or any of the DIP Lenders (or any of their respective agents) against the DIP Obligations, or otherwise enforce all rights and remedies against the DIP Collateral in the possession of any of the DIP Lenders for application towards the DIP Obligations; and (g) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Documents or applicable law against the DIP Collateral to effect the repayment of the DIP Obligations; provided, however, that prior to the exercise of any right in clause (e), clause (f) and clause (g) of this Paragraph, the DIP Agent shall be required to provide five (5) Business Days written notice to the Debtors (with a copy to their bankruptcy counsel), counsel to the Committee, DIP Parties and Prepetition Secured Parties, and the U.S. Trustee, as provided for in Section 9.2 of the DIP Agreement. Except as otherwise ordered by this Court, upon entry of the Final Order, no party-in-interest shall have the right to: (i) contest the enforcement of the rights and remedies set forth in this Final Order or the DIP Documents on any basis other than an assertion that no Event of Default has occurred; or (ii) enjoin any such enforcement under section 105 of the Bankruptcy Code or otherwise, or to

seek any injunctive relief inconsistent with the provisions of this Final Order or the DIP Documents. Unless the Court determines during such five (5) Business Days notice period that such Event of Default has not occurred and/or is not continuing, the automatic stay, unless otherwise ordered by this Court, as to all of the DIP Lenders and the Prepetition Lender shall automatically be terminated at the end of such notice period, without further notice or order, and upon expiration of such notice period, the DIP Agent and Prepetition Agent shall be permitted to exercise all rights and remedies set forth in this Final Order, the DIP Agreement, the other DIP Documents, the Prepetition Credit Agreement and the Prepetition Credit Documents, and as otherwise available at law without further notice, motion or application to, order of or hearing before, this Court. The rights and remedies of the DIP Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Parties may have under the DIP Documents or otherwise. The Debtors shall use their commercially reasonable efforts to cooperate with the DIP Parties in their exercise of their rights and remedies, whether against the DIP Collateral or otherwise. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

24.     _Binding Effect_. The provisions of this Final Order shall be binding upon and inure to the benefit of the Debtors, the DIP Parties, the Prepetition Secured Parties, the Senior Notes Parties and their respective successors and assigns. To the extent permitted by applicable law, this Final Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Final Order.

25.     Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Chapter 11 Cases; (ii) converting any of the Chapter 11 Cases to a chapter 7 case; or (iii) dismissing any of the Chapter 11 Cases, and the terms and provisions of this Final Order as well as the DIP Superpriority Claims and the DIP Liens in the DIP Collateral granted pursuant to this Final Order and the DIP Documents (and with respect to the entry of any order as set forth in clause (ii) or (iii) of this Paragraph 25, the Prepetition Lender Replacement Liens and Prepetition Lender Superpriority Claims) shall continue in full force and effect notwithstanding the entry of any such order.  Such claims and liens shall maintain their priority as provided by this Final Order and the DIP Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full in cash and discharged.  In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the DIP Documents unless agreed to by and among the Debtors and the DIP Parties.

26.     Modifications of DIP Documents.  The Debtors and the DIP Parties are hereby authorized to implement, in accordance with the terms of the DIP Documents, any non-material modifications (including without limitation, any change in the number or composition of the DIP Lenders or the DIP Agent) of the DIP Documents without further notice, motion or application to, order of or hearing before, this Court, or any other modifications to the DIP Documents.  Any material modification or amendment to the DIP Documents shall only be permitted pursuant to an order of this Court, after being submitted to this Court upon notice to counsel for any Committee, the U.S. Trustee and the Prepetition Secured Agent (prior to the Prepetition Secured Obligations Paydown Date).

27.     Insurance Policies.   On each insurance policy maintained by the Debtors or which in any way relates to the DIP Collateral: (i) the DIP Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds; and (ii) the DIP Agent, on behalf of the DIP Lenders shall be, and shall be deemed to be, without any further action or notice, named as loss payee.   The Debtors are authorized and directed to take any actions necessary to have the DIP Agent, on behalf of the DIP Lenders, be added as an additional insured or loss payee, as applicable, on each insurance policy maintained by the Debtors or which in any way relates to the DIP Collateral.

28.     Protection Under Section 364(e) of the Bankruptcy Code.   The DIP Parties and the Prepetition Secured Parties have acted in good faith in connection with this Final Order and their reliance on this Final Order is in good faith.   Based on the record of these Chapter 11 Cases, and in accordance with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the DIP Parties, or adequate protection obligations owing to the Prepetition Secured Parties incurred prior to the actual receipt by the DIP Agent or Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any Loans or other advances previously made or any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP Documents with respect to any DIP Obligations, or adequate protection obligations owing to the Prepetition Secured Parties.   Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral, the incurrence of DIP Obligations or the incurrence of adequate protection obligations to the Prepetition Secured Parties, in each case, by the Debtors prior to the earlier of

(i) the entry of the order concerning such reversal, modification, vacation or stay and (ii) the actual receipt by the DIP Agent or Prepetition Agent, as applicable, of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Final Order, and the DIP Parties and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Final Order, and the DIP Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations, and adequate protection obligations owing to the Prepetition Secured Parties (subject to the reservation of rights contained in Paragraph 15 of this Final Order).

29. _Effect of Dismissal of Chapter 11 Cases_. If the Chapter 11 Cases are dismissed, converted or substantively consolidated, then neither the entry of this Final Order nor the dismissal, conversion or substantive consolidation of such Chapter 11 Cases shall affect the rights of the DIP Parties and the Prepetition Secured Parties under their respective DIP Document and Prepetition Credit Documents or this Final Order, and all of the respective rights and remedies thereunder of the DIP Parties and the Prepetition Secured Parties shall remain in full force and effect.

30. _Proofs of Claim_. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Chapter 11 Cases to the contrary, or otherwise, (i) the DIP Parties and the Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases for any claim allowed herein; and (ii) the Senior Notes Indenture Trustee shall be authorized (but not required) to file a master proof of claim against the Debtors (the "Senior Notes Indenture Trustee Master Proof of Claim") on behalf of itself and the Senior Noteholders on account of their prepetition claims arising under the Senior Notes Indenture. If

the Senior Notes Indenture Trustee so files a Senior Notes Indenture Trustee Master Proof of Claim against the Debtors, the Senior Notes Indenture Trustee and each Senior Noteholder, and each of their respective successors and assigns, shall be deemed to have filed proofs of claim in respect of their claims against the Debtors arising under the Senior Notes Indenture, and the claims of the Senior Notes Indenture Trustee and each Senior Noteholder (and their respective successors and assigns) shall be allowed or disallowed as if such entities had filed separate proofs of claim in the Chapter 11 Cases or any successor cases. The Senior Notes Indenture Trustee shall further be authorized to amend, supplement or otherwise modify its respective Senior Notes Indenture Trustee Master Proof of Claim from time to time, to the extent permitted by applicable law. The provisions set forth in this Paragraph 30 and any Senior Notes Indenture Trustee Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest, including, without limitation, the rights of the Senior Notes Indenture Trustee and each Senior Noteholder as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

31. <u>Findings of Fact and Conclusions of Law</u>. Except as provided in Paragraph 17 above, this Final Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable on all parties-in-interest immediately upon the execution thereof.

32. <u>Choice of Law; Jurisdiction</u>. The DIP Facility and DIP Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, including, without limitation,

Sections 5-1401 and 5-1402 of the New York General Obligations Law, and, to the extent applicable, the Bankruptcy Code. Except as otherwise expressly provided in the DIP Agreement, the Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Facility or DIP Documents.

      33.      <u>Controlling Effect of Final Order</u>. To the extent any provision of this Final Order conflicts with any provision of the Motion, the Interim Order, and prepetition agreement or any DIP Document, the provisions of this Final Order shall control.

Dated: August ___, 2009.

                                        _____
                                        Christopher S. Sontchi
                                        United States Bankruptcy Judge

## **Schedule 1**

Gibson Industrial Park LLC
111 Chimney Rock Road
P.O. Box 6812
Bridgewater, NJ  08807

Chart Industries
One Infinity Corporate Centre Dr.
Suite 300
Garfield Heights, OH  44124

Lobo Holdings, Inc. LLC
1146 MacArthur Ave.
Harvery, LA  70059

Texas-Skyline Executive Suites, Ltd
1157 Katy Freeway
Suite 1300
Houston, TX 77079