# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------x

In re                                          :     **Chapter 11**
                                               :
**RathGibson, Inc., et al.,**[1]               :     **Case No. 09-12452 (CSS)**
                                               :     **Jointly Administered**
                 **Debtors.**                  :
                                               :     Objection Deadline: April 5, 2010 at 4:00 p.m. (EST)
                                               :     Hearing Date: April 9, 2010 at 2:00 p.m. (EST)

------------------------------------------------x

## DEBTORS' MOTION FOR AN ORDER: (I)(A) APPROVING DISCLOSURE STATEMENT; (B) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT PLAN; AND (C) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO PLAN AND SALE; AND (II) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") hereby

submit this motion (the "Motion"), pursuant to sections 105, 363, 1125 and 1126 of title 11 of

the United States Code (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3020, 6004 and 6006

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 3017-1(a) and

3017-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), for: entry of an order,

substantially in the form attached hereto as Exhibit 1, (i) approving the Disclosure Statement (as

defined below); (ii) establishing procedures for solicitation and tabulation of votes to accept or

reject the Plan (as defined below), including (a) scheduling the hearing on the confirmation of

the Plan and the sale (the "Sale") of substantially all of the Debtors' assets (as more specifically

defined in the Stalking Horse Agreement (defined below), the "Purchased Assets") free and clear

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

of all liens, claims, interests, charges or other encumbrances (other than permitted encumbrances) (the "Confirmation Hearing"), (b) approving the form and manner of the Solicitation Package (as defined below), (c) establishing the Voting Record Date (as defined below) and approving the procedures for distribution of the Solicitation Packages (as defined below) to holders of Claims and Interests, (d) approving the forms of ballots, (e) establishing the deadline by which claimants must submit ballots, and (f) approving the proposed procedures for vote tabulation; and (iii) establishing the deadline and procedures for filing objections to confirmation of the Plan, which includes objections to the Sale. In support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

## INTRODUCTION[2]

1.       Since the inception of these cases, the Debtors have been endeavoring to formulate a strategy for exiting chapter 11 as expeditiously as possible while achieving the best possible results for their estates, creditors and other stakeholders. Following the solicitation of votes in respect of the Initial Plan, which was submitted by two of the Debtors (RathGibson, Inc. and Greenville Tube Company), the Debtors determined it was appropriate to amend the Initial Plan to, among other things, provide for the inclusion of the two other Debtors (RG Tube Holdings LLC and RGCH Holdings Corp.) and provide for the sale, assumption, assignment and/or transfer of all or substantially all of the Debtors' assets pursuant to the Sale.

2.       To that end, the Debtors have worked with their key constituencies to resolve open issues with a view towards exiting chapter 11 during the second quarter of 2010. After extensive negotiations, the Debtors have filed with this Court concurrently herewith the *Second Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as

---

[2]      Capitalized terms not otherwise defined in this Introduction shall have the meanings ascribed to such terms herein.

amended, modified or supplemented from time to time, the "Plan") and the accompanying *Disclosure Statement for Second Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement").

3.　　The Plan reflects a global settlement (the "Global Settlement") of: (i) various intercompany claims; (ii) the Debtors' dispute with the Ad Hoc RGCH PIK Noteholders Committee; and (iii) issues raised by the Creditors' Committee regarding various matters. The Plan also provides for the Sale, free and clear of all liens, claims, interests, charges or other encumbrances (other than permitted encumbrances), to RathGibson Acquisition Co., LLC (the "Stalking Horse Bidder" or "Purchaser") or such other person or entity that submits the highest or otherwise best bid for the Purchased Assets (as more specifically defined in the Stalking Horse Agreement (defined below), the "Purchased Assets"), in exchange for $93 million in cash and the assumption of certain liabilities of the Debtors. The Sale of the Purchased Assets to the Stalking Horse Bidder (subject to the Debtors' marketing efforts and any higher or otherwise better offers for such assets) is an integral component to the Plan, and confirmation and consummation of the Plan is dependent upon consummation of the Sale. Accordingly, concurrently herewith, the Debtors filed a motion (the "Bid Procedures Motion") (a) seeking, among other things, approval of (i) bid procedures (the "Bid Procedures"),[3] (ii) bid protections, and (iii) assumption, assignment and/or transfer procedures; and (b) scheduling an auction and approving the form and manner of notice thereof. The Sale and the terms of the Stalking Horse Agreement are described more fully in the Bid Procedures Motion and the Disclosure Statement.

---

[3]　　A copy of the Bid Procedures is annexed to the proposed order approving the Bid Procedures Motion as Exhibit A.

DB02:9340113.3　　　　　　　　　　　　　　　　　　　　　　　　　068401.1001

## JURISDICTION

4.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3020, 6004 and 6006 and Local Rules 3017-1(a) and 3017-1(b).

## BACKGROUND

5.     On July 13, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

6.     On July 23, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed a statutory committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in these cases.

7.     The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of Jon M. Smith in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 3].

8.     On the Petition Date, Debtors RathGibson, Inc. and Greenville Tube Company (the "Initial Plan Debtors") filed the *Joint Chapter 11 Plan for RathGibson, Inc. and Greenville Tube Company* [Docket No. 32] and the *Disclosure Statement for Joint Chapter 11 Plan for RathGibson, Inc. and Greenville Tube Company* [Docket No. 33] with the Court.

DB02:9340113.3

068401.1001

9.     On July 31, 2009, the Initial Plan Debtors filed the *Debtors' Motion for Order (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Manner of Solicitation Packages, (B) Approving Form and Manner of Notice of Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; (IV) Approving Rights Offering Procedures, Entry Into and Performance Under Backstop Stock Purchase Agreement, and Authorizing Payment of Fees and Expenses in Connection Therewith; and (V) Granting Related Relief* [Docket No. 118].

10.     On July 14, 2009, the Court entered an *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [Docket No. 53] (the "Bar Date Order"), setting September 2, 2009 at 4:00 p.m. (prevailing Eastern Time) as the General Bar Date (as that term is defined therein) and January 11, 2010 at 4:00 p.m. as the Government Bar Date (as that term is defined therein). Additionally, the Debtors intend to file a motion seeking to establish a bar date for all administrative expense claims incurred from the Petition Date through the date that is approximately thirty-five (35) days after the date on which the order approving such motion (the "Administrative Expense Claim Bar Date Order") is entered by the Court. Further, the Plan provides that all holders of such administrative expense claims that are not subject to the Administrative Expense Claim Bar Date Order must file such administrative expense claims by no later than thirty (30) days following the Effective Date of the Plan. See Plan at § 3.2.

068401.1001

11.     On August 31, 2009, the Court conducted a hearing on, among other things, the Initial Disclosure Statement (defined below).  After the conclusion of the hearing, the Court entered an order approving the Initial Disclosure Statement and establishing solicitation, voting and tabulation procedures in connection with the Initial Plan.  See Docket No. 242.  On September 2, 2009, the Court entered an amended order approving the Initial Disclosure Statement [Docket No. 254] (the "Amended Initial Disclosure Statement Order"), which established October 6, 2009 as the date by which objections to confirmation of the Initial Plan must be filed, and scheduled the confirmation hearing for the Initial Plan for October 16, 2009.[4]

12.     Subsequent to entry of the Amended Initial Disclosure Statement Order, the Debtors determined, in their business judgment, that it was in their estates' best interests to further revise the Initial Plan in order to implement a more efficient tax structure as well as to compromise various disputes and potential disputes with the Ad Hoc PIK Noteholders Committee and the Creditors' Committee.  Ultimately, the Debtors determined that it was in their estates' best interests to pursue the proposed Sale to the Stalking Horse Bidder or such other bidder that submits a higher or otherwise better offer pursuant to the bidding, auction and notice procedures with respect to the Sale (the "Bid Procedures," attached in substantially final form as Exhibit A to the proposed order approving the Bid Procedures (the "Bid Procedures Order")).  Under that certain Asset Purchase Agreement, dated March 8, 2010, by and among the Stalking Horse Bidder and the Debtors (as may be amended, modified, restated or supplemented from time to time and together with all schedules, exhibits, supplements and amendments thereto, the "Stalking Horse Agreement"), the Stalking Horse Bidder has agreed to pay the Debtors $93

---

[4]     On September 4, 2009, the Initial Plan Debtors filed the *First Amended Joint Chapter 11 Plan of RathGibson, Inc. and Greenville Tube Company, dated August 31, 2009* (the "Initial Plan") [Docket No. 260] and the related disclosure statement (the "Initial Disclosure Statement") [Docket No. 261], each of which reflected the Court-approved changes and revisions thereto.

068401.1001

million in cash, subject to downward adjustment, plus the assumption of certain liabilities, in exchange for all or substantially all of the Debtors' assets.

13.     The Plan, which has been filed with the Court concurrently with this Motion, reflects the revised restructuring plan, including the Sale and the settlement of various claims and disputes.  Pursuant to the Plan, the Debtors intend to, *inter alia*, sell substantially all of their assets, make distributions to holders of allowed claims (as defined in section 101(5) of the Bankruptcy Code, the "Claims") and equity interests (the "Interests"), and effect the wind down of the Debtors' estates.

## RELIEF REQUESTED

14.     By this Motion, the Debtors respectfully request entry of an order substantially similar to the form attached hereto as Exhibit 1 (the "Disclosure Statement Order").

15.     Through the proposed Disclosure Statement Order, the Debtors are requesting:

a.     approval of the Disclosure Statement as containing "adequate information" as that term is defined in section 1125(a)(1) of the Bankruptcy Code;

b.     establishment of procedures for solicitation and tabulation of votes to accept or reject the Plan, including:

(i)     scheduling the Confirmation Hearing;

(ii)     approving the form and manner of Solicitation Package;

(iii)     establishing the Voting Record Date and approving procedures for the distribution of the Solicitation Packages;

(iv)     approving the forms of ballots;

(v)     establishing the deadline by which claimants and interest holders must submit ballots; and

(vi)     approving procedures for vote tabulation; and

DB02:9340113.3                                                                 068401.1001

c. establishment of the deadline and procedures for filing objections to confirmation of the Plan.

## BASIS FOR RELIEF REQUESTED

## I. THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AND SHOULD BE APPROVED

16. Section 1125 of the Bankruptcy Code requires a bankruptcy court to approve a written disclosure statement prior to allowing a debtor to solicit acceptances for a chapter 11 plan. See 11 U.S.C. § 1125(b). To approve a disclosure statement, a court must find that the disclosure statement contains "adequate information," which is defined as "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests . . . to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by impaired creditors entitled to vote on the plan. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337 F.3d 314 (3d Cir. 2003) (quoting 11 U.S.C. § 1125(b)).

17. The bankruptcy court has broad discretion to determine the adequacy of information contained in a disclosure statement. See Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); In re Lisanti Foods, Inc., 329 B.R. 491, 507 (D. N.J. 2005); In re River Village Assoc., 181 B.R. 795, 804 (E.D. Pa. 1995). Congress granted bankruptcy courts discretion to facilitate the effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. See H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977); see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D. N.Y. 1988) (holding that the adequacy of a disclosure statement "is to be determined on a case-

specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties").

18.     Here, the Disclosure Statement contains information relating to, among other things: an overview of the Plan (Article VI, § 6.3); the operation of the Debtors' businesses (Article III); the prepetition indebtedness and capital structure of the Debtors (Article III, § 3.3); information regarding pending Claims, including administrative expense claims (Article II, § 2.4); information regarding the treatment of Claims and Interests under the Plan (Article VI); the means for implementing the Plan (Article XIII); alternatives to confirmation and consummation of the Plan (Article VIII); procedures for resolving Claims (Article XIV); information regarding the governance of the post-effective date Debtors (Article VI); the tax consequences of the Plan (Article XII); and information regarding the Sale (Article II).

19.     Thus, the Debtors believe that the Disclosure Statement contains "adequate information" as that phrase is defined in section 1125(a)(1) of the Bankruptcy Code. Accordingly, the Debtors believe that the Disclosure Statement should be approved.

## II.  ESTABLISHMENT OF PROCEDURES FOR SOLICITATION OF THE PLAN

### A.  Scheduling Of Confirmation Hearing

20.     Bankruptcy Rule 3017(c) provides that, "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation." Fed. R. Bankr. P. 3017(c).

21.     In accordance with Bankruptcy Rules 2002(b) and 3017(c), and in view of the Debtors' proposed solicitation schedule outlined herein, the Debtors request that the Confirmation Hearing be scheduled for May 21, 2010, which is 42 days after the date requested for the hearing to consider the Disclosure Statement. The Debtors request authority to adjourn or

DB02:9340113.3                                                                                    068401.1001

continue the Confirmation Hearing from time to time without further notice other than adjournments announced in open Court or as indicated in any notice of agenda for matters scheduled for hearing filed with the Court.

22.     The Debtors submit that the proposed date for the Confirmation Hearing complies with the Bankruptcy Rules and the Local Rules and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

## B.  Approval Of Form And Manner Of Solicitation Package

23.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to creditors and equity security holders upon approval of a disclosure statement.  In accordance therewith, the Debtors propose to transmit or cause to be transmitted by first class mail to parties entitled to vote on the Plan (the "Voting Parties")[5] a solicitation package containing:  (i) written notice (the "Confirmation Hearing Notice"), substantially in the form annexed to the proposed Disclosure Statement Order as Exhibit A, of (a) the Court's approval of the Disclosure Statement, (b) the Voting Deadline (defined below), (c) a summary of the treatment of Claims and Interests under the Plan, (d) the date, time and location of the Confirmation Hearing, and (e) the Confirmation Objection Deadline (defined below); (ii) a copy of the Plan and the Disclosure Statement in .pdf format on a CD-ROM; (iii) the appropriate Ballot (proposed forms of which will be filed with the Court at least ten (10) days prior to the Disclosure Statement Hearing) and a return envelope; (iv) a copy of the letter from the Creditors' Committee indicating its support of the Plan, which letter shall be filed with the Court at least ten (10) days prior to the Disclosure Statement Hearing; and (v) such other information as the Court may direct or approve (collectively, the

---

[5]     The Voting Parties consist of holders of Claims and Interests in Class 3(b) (Rath General Unsecured Claims), Class 4(a) (Greenville General Unsecured Claims), Class 5(a) (RGCH PIK Notes Claims), Class 5(b) (RGCH General Unsecured Claims), Class 6(a) (RG Tube General Unsecured Claims) and Class 6(b) (Existing RG Tube Interests).

"Solicitation Package"). The Debtors also intend to cause the notice of Confirmation Hearing, substantially in the form annexed to the proposed Disclosure Statement Order as Exhibit B, to be published, subject to applicable submission deadlines, once in one or more publications the Debtors deem appropriate, including but not limited to The New York Times (national edition). The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

24.     Further, pursuant to section 1126(f) of the Bankruptcy Code, unimpaired creditors are "conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class . . . is not required." 11 U.S.C. § 1126(f). Accordingly, the Debtors propose they need not be required to transmit a Solicitation Package to the holders of the following Claims who are unimpaired and deemed to have accepted the Plan: Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims) and Class 3(a) (Prepetition Secured Credit Agreement Claims) (collectively, the "Unimpaired Creditors").

25.     In addition, the Debtors propose that they need not be required to transmit Solicitation Packages to holders of Interests in Class 3(c) (Existing Rath Interests), Class 4(c) (Existing Greenville Interests), or Class 5(c) (Existing RGCH Interests) because such holders, while holders of Interests that are impaired under the Plan, are Debtors and proponents of the Plan and have consented to the treatment set forth therein -- thus, they are not entitled to vote on the Plan.

26.     The Debtors propose to mail or cause to be mailed to each of the Unimpaired Creditors at the address to which notices are required to be sent pursuant to Bankruptcy Rule 2002(g), a notice substantially in the form annexed to the proposed Disclosure Statement Order as Exhibit C (the "Non-Voting Creditor Notice"), which will set forth: (i) the non-voting classes;

11

(ii) a summary of the treatment of Claims and Interests under the Plan; (iii) the date and time of the Confirmation Hearing; (iv) the deadline and procedures for filing objections to the Plan; and (v) instructions for obtaining a copy of the Plan, the Disclosure Statement, the Disclosure Statement Order and order approving the Bid Procedures.

### C. Approval of Form and Manner of Confirmation Hearing Notice

27.     As indicated above, as soon as reasonably practicable after approval of the Disclosure Statement, the Debtors will serve by first class mail the appropriate parties either a Confirmation Hearing Notice, together with a Solicitation Package, or a Non-Voting Creditor Notice. The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

### D. Establishment Of Voting Record Date And Approving Procedures For Distribution Of Solicitation Packages

28.     The Debtors propose that the Court establish April 9, 2010, the date of the scheduled hearing to approve the Disclosure Statement as the voting record date (the "Voting Record Date") for the purposes of determining the Claim and Interest holders of the Debtors entitled to receive a Solicitation Package and who may be entitled to vote on the Plan, subject to the disallowance of such creditors' Claims or interest holders' Interests for voting purposes as set forth below, and for the purpose of determining the creditors of the Debtors entitled to receive the Non-Voting Creditor Notice; provided, however, that with respect to transfers of Claims filed pursuant to Bankruptcy Rule 3001, the holder of a Claim as of the Voting Record Date shall be the transferor of such Claim unless the documentation evidencing such transfer was docketed by the Court on or before twenty-one (21) days prior to the Voting Record Date and no timely objection with respect to such transfer was filed by the transferor.

DB02:9340113.3                                                  068401.1001

29. Consistent with the scope of its retention, The Garden City Group, Inc. ("GCG") shall be permitted to inspect, monitor and supervise the solicitation process, to tabulate the ballots and to certify to the Court the results of the balloting (in such capacity GCG shall be referred to as the "Solicitation Agent," the "Tabulation Agent" or the "Balloting Agent").

30. The Debtors have served or will serve notice of the hearing on this Motion and approval of the Disclosure Statement on all parties entitled to receive notice thereof under Bankruptcy Rule 2002.[6] The Debtors expect that a number of such notices will be returned by the United States Postal Service as undeliverable.[7] The Debtors believe that it is costly and wasteful to mail Solicitation Packages to the same addresses from which notices are returned as undeliverable. Therefore, the Debtors seek the Court's approval to dispense with the mailing of Solicitation Packages to the entities listed at such addresses unless the Debtors are provided with an accurate address by such parties prior to the Disclosure Statement Hearing. The Debtors further propose that they may, but shall not be required to, attempt to locate the correct address and prior to the Voting Deadline (as defined below) resend the Solicitation Packages or the Non-Voting Creditor Notices (as applicable) that are returned as undeliverable.

### E. Approval Of Forms Of Ballot And Procedures For Distribution Of Beneficial Holders

31. Bankruptcy Rule 3017(d) provides that ballots for accepting or rejecting the Plan should conform substantially to Official Form No. 14. The Debtors propose to use the ballots (collectively, and including the Master Ballots (as defined below), the "Ballots") substantially in

---

[6]   The Debtors will complete service of the Confirmation Hearing Notice as set forth in section II.(B) of this Motion, *supra*.

[7]   Upon return of an undeliverable notice, the Debtors, through GCG, will perform a review of the notice address with the address set forth on the proof(s) of Claim filed with the Court to confirm that the notice address conforms to the creditor's address set forth in the proof(s) of Claim. To the extent any errors occur, such creditor will be mailed a Solicitation Package as applicable, as soon as practicable.

the forms to be filed with the Court at least ten (10) days prior to the Disclosure Statement Hearing. The proposed forms will be based upon Official Form No. 14, but will be modified to meet the particular requirements of the Debtors' chapter 11 cases and the Plan. The appropriate form of ballot will be distributed to all of the Voting Parties. All ballots will be accompanied by return envelopes addressed to the ballot tabulation center (the "Ballot Tabulation Center") at RGI Ballot Tabulation Center, c/o The Garden City Group, Inc., P.O. Box 9396, Dublin, OH 43017-4296.

32.     In addition, with respect to the Ballots that will be sent to holders of Claims entitled to vote on the Plan in Class 3(b) (solely with respect to those holders of 11.25% senior notes issued by RathGibson only (the "Senior Notes")), Class 4(a) (solely with respect to those holders of guaranty Claims arising under the Senior Notes), and Class 5(a), the Debtors propose to deliver Ballots to record holders of such Claims and Interests, including, without limitation, their representatives (*e.g.,* indenture trustees, brokers, banks, commercial banks, transfer agents, trust companies, dealers, or other agents or nominees) (collectively, the "Voting Nominees" or the "Intermediaries"). Each Voting Nominee will be entitled to receive reasonably sufficient numbers of Solicitation Packages, including a Master Ballot and sufficient beneficial ballots (the "Beneficial Ballots"), to distribute to the beneficial owners of the Claims for whom such Voting Nominee acts (collectively, the "Beneficial Owners"). In addition, upon written request, the Debtors shall reimburse each Voting Nominee's reasonable, actual, documented and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages to the Beneficial Owners of such Claims and the tabulation of the Ballots.

33.     The Debtors propose that the Voting Nominee be required to forward the Solicitation Package to each Beneficial Owner of the securities entitled to vote on the Plan (the

"Voting Securities") for voting and include a return envelope provided by and addressed to the Voting Nominee so that the Beneficial Owner may return the completed Beneficial Ballot to the Voting Nominee so that it is received by the date that is three (3) business days prior to the Voting Deadline or such other deadline as may be established by the Voting Nominee. The Voting Nominee then will summarize the individual votes of its respective Beneficial Owners from their Beneficial Ballots on the master ballot (the "Master Ballot"), in substantially the form to be filed with the Court at least ten (10) days prior to the Disclosure Statement hearing, and then return the Master Ballot as well as the Beneficial Ballots to the Solicitation Agent so that they are received prior to the Voting Deadline.

**F. Establishment Of Deadline For Receipt Of Ballots**

34.     Pursuant to Bankruptcy Rule 3017(c), at the time of or before the approval of the Disclosure Statement, "the court shall fix a time within which the holders of claims and interests may accept or reject the plan." Fed. R. Bankr. P. 3017(c). The Debtors respectfully request that the Court establish **May 11, 2010 at 4:00 p.m. (prevailing Eastern Time)** as the voting deadline (the "Voting Deadline"), which will serve as the deadline by which all ballots, including Master Ballots, accepting or rejecting the Plan shall be received at the Ballot Tabulation Center, unless extended by the Debtors. Ballots must be returned to the Ballot Tabulation Center in the provided return envelope by first class mail, postage prepaid, or by overnight courier, unless otherwise approved in advance by the Debtors in writing. Notwithstanding the foregoing, the Debtors also are seeking authority to extend the Voting Deadline, in their business judgment and as may be necessary or appropriate, for one or more creditors and/or interest holders or Class(es) of Claims and/or Interests.

DB02:9340113.3                                                                                    068401.1001

### G. **Approval Of Procedures For Vote Tabulation**

35.     For purposes of voting on the Plan, with respect to all holders of Claims against or Interests in the Debtors, the Debtors propose that the amount of a Claim or Interest used to tabulate acceptance or rejection of the Plan should be, as applicable:

a.     The Claim amount listed in the Debtors' Schedules, provided that: (i) such Claim is not scheduled as contingent, unliquidated, undetermined or disputed, and (ii) no proof of Claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law).

b.     The noncontingent and liquidated amount specified in a proof of Claim timely filed with the Court or GCG (or otherwise deemed timely filed by the Court under applicable law) to the extent the proof of Claim is not the subject of an objection filed no later than five (5) business days prior to the Voting Deadline (or, if such Claim has been resolved pursuant to a stipulation or order entered by the Court, or otherwise resolved by the Court, the amount set forth in such stipulation or order).

c.     The amount of such Claim temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), provided that a motion is brought, notice is provided and a hearing is held prior to the Confirmation Hearing, in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

d.     Except as otherwise provided in subsection (c) hereof, with respect to ballots cast by alleged creditors whose Claims (i) are not listed on the Debtors' schedule of liabilities or (ii) are listed as disputed, contingent and/or unliquidated on the Debtors' schedule of liabilities, but who have timely filed proofs of Claim in unliquidated or unknown amounts that are not the subject of an objection filed before the commencement of the Confirmation Hearing, such ballots shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, but shall not be counted in determining whether the aggregate Claim amount requirement has been met.

e.     The number of units held by an Interest holder as set forth in the Debtors' books and records.

36.     Additionally, the Debtors seek authorization from this Court to object to any Claim solely for Plan voting purposes by filing a determination motion (the "Determination Motion") with the Court no later than five (5) business days before the Voting Deadline. The

Debtors request that responses, if any, to the Determination Motion be filed no later than five (5) business days prior to the hearing on the Determination Motion, and that the Court conduct a hearing on any Determination Motion at the Confirmation Hearing or such earlier time as may be scheduled by the Court. The Debtors further request that the ruling by the Court on any Determination Motion be considered a ruling with respect to the allowance of the Claim(s) under Bankruptcy Rule 3018 and such Claim(s) would be counted, for voting purposes only, in the amount determined by the Court.

37. If an objection to a Claim requests that such Claim be reclassified and/or allowed in a fixed, reduced amount, such claimant's ballot shall be counted in such reduced amount and/or as the reclassified category, unless such claimant files an Estimation Motion (as defined below).

38. If a creditor casts a ballot and has timely filed a proof of Claim (or has otherwise had a proof of Claim deemed timely filed by the Court under applicable law), but the creditor's Claim is the subject of an objection filed no later than five (5) business days before Voting Deadline, the Debtors request, in accordance with Bankruptcy Rule 3018, that the creditor's ballot not be counted, unless such Claim or Interest is temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), after an Estimation Motion (defined below) is brought by such creditor, notice is provided and a hearing is held prior to the Confirmation Hearing.[8] Notwithstanding the foregoing, if an objection to a Claim requests that such Claim be reclassified and/or allowed in a fixed, reduced amount, such creditor's ballot shall be counted in such reduced amount and/or as the reclassified category.

---

[8] This proposed procedure is consistent with section 1126 of the Bankruptcy Code, which provides that a plan may be accepted or rejected by the holder of a claim allowed under section 502 of the Bankruptcy Code. In turn, section 502(a) of the Bankruptcy Code provides that a filed proof of claim is deemed allowed "unless a party in interest . . . objects." 11 U.S.C. § 502(a).

39. The Debtors further request that the following voting procedures and standard assumptions be used in tabulating the Ballots:

a. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular class will be aggregated as if such creditor held one Claim against the Debtors in such class, and the votes related to such Claims will be treated as a single vote to accept or reject the Plan.

b. Creditors must vote all of their Claims or Interests within a particular Class either to accept or reject the Plan and may not split their vote. Accordingly, an individual ballot or multiple ballots with respect to multiple Claims or multiple Interests within a single Class (as opposed to the Master Ballot) that partially rejects and partially accepts the Plan will not be counted.

c. Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will not be counted.

d. Only ballots that are timely received with signatures will be counted. Unsigned ballots will not be counted.

e. Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will not be counted.

f. Ballots which are illegible, or contain insufficient information to permit the identification of the creditor or Interest holder, will not be counted.

g. Whenever a creditor or Interest holder casts more than one ballot voting the same Claim or Interest, as applicable, prior to the Voting Deadline, the last valid ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and supersede any prior ballots.

h. If a creditor or Interest holder simultaneously casts inconsistent duplicate ballots with respect to the same Claim or Interest, as applicable, such ballots shall not be counted.

i. Each creditor shall be deemed to have voted the full amount of its Claim.

j. Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of ballots shall be determined by the Balloting Agent and the Debtors, which determination shall be final and binding.

DB02:9340113.3

068401.1001

k.  If no creditor or Interest holder in a particular class or classes entitled to vote to accept or reject the Plan votes either to accept or reject the Plan, such class or classes shall be deemed to have accepted the Plan.

40.  In the event any class of Claims or Interests does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing, such class or classes will be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to section 1129(a)(8) of the Bankruptcy Code.

41.  The Debtors additionally request that creditors or Interest holders seeking to have a Claim or Interest temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) be required to file a motion (the "Estimation Motion") for such relief no later than May 4, 2010, and that the Court schedule a hearing on such motion for a date prior to the Confirmation Hearing.

42.  With respect to the tabulation of the Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners, the Debtors propose that the amount that will be used to tabulate acceptance or rejection of the Plan will be the principal amount held by such Voting Nominees and Beneficial Owners as of the Voting Record Date (the "Record Amount"). The Debtors propose that the following additional rules apply to the tabulation of the Master Ballots and Beneficial Ballots cast by Voting Nominees and Beneficial Owners:

a.  Votes cast by Beneficial Owners through a Voting Nominee will be applied against the positions held by such entities in the applicable security or loan as of the Voting Record Date, as evidenced by the record and, if applicable, depository listings. Votes submitted by a Voting Nominee, pursuant to the Master Ballots, will not be counted in excess of the Record Amount of such loans or other securities held by such Voting Nominee.

19

b.    To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, the Balloting Agent, in good faith, will attempt to reconcile discrepancies with the Voting Nominees.

c.    To the extent that overvotes on the Master Ballot are not reconcilable prior to the preparation of the vote certification, the Balloting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable loan or security.

d.    Where a Beneficial Owner holds its Class 3(b) (solely with respect to the Senior Notes), 4(a) (solely with respect to those holders of guaranty Claims arising under the Senior Notes), and Class 5(b) securities or loans through more than one Voting Nominee, it must execute a separate Class 3(b), Class 4(a) or Class 5(b) Ballot, respectively, for each block of securities or loans. However, such holder must vote all of its claims in each Class in the same manner, to either accept or reject the Plan. Accordingly, if such holder returns more than one Ballot to more than one Voting Nominee voting different claims within each Class under the Plan and the Ballots are not voted in the same manner, as reflected on such separate Master Ballots, such votes will not be counted.

43.    In addition, the Debtors propose that, with respect to Interest holders in Class 6(b) (RG Tube Interests), the amount that will be used to tabulate acceptance or rejection of the Plan will be the number of units held by such Interest holders as set forth in the Debtors books and records as of the Voting Record Date.

44.    The proposed procedures are substantially similar to those approved by this Court in connection with the Initial Disclosure Statement and Initial Plan. See Docket No. 254. Further, similar procedures have been approved in other chapter 11 cases. See, e.g., In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. Jan. 26, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Dec. 16, 2008); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Nov. 30, 2008); In re Goody's Family Clothing, Inc., Case No. 08-11133 (CSS) (Bankr. D. Del. Aug. 25, 2008); In re Inland Fiber

<u>Group, LLC</u>, Case No. 06-10884 (KJC) (Bankr. D. Del. Sept. 29, 2006). The Debtors submit that such procedures provide for a fair and equitable voting process.

## III. ESTABLISHMENT OF DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN AND SALE

45.     Bankruptcy Rule 3020(b) provides that objections to confirmation of a proposed chapter 11 plan must be filed and served on the Debtors, the trustee, any official committee appointed under the Bankruptcy Code and on any other entity designated by the bankruptcy court, within a time specified by the bankruptcy court. To comply with the twenty-eight (28) day notice requirement of Bankruptcy Rules 2002(b) and 2002(d) and the solicitation schedule described above, and to permit the Debtors adequate time to respond to objections prior to the Confirmation Hearing, the Debtors propose that May 11, 2010 at 4:00 p.m. (prevailing Eastern Time) be fixed by the Court as the last date for filing and serving written objections, comments or responses to the confirmation of the Plan (the "<u>Confirmation Objection Deadline</u>"). The Debtors further propose that the Court only consider timely filed written objections and that all objections not timely filed and served in accordance with the provisions of this Motion be deemed waived. The Debtors submit that any objections filed should provide proposed language to remedy such objections. Objections to confirmation of the Plan shall be served on (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: Jenette A. Barrow-Bosshart, Esq. and Jessica M.

Ward, Esq.), co-counsel to the Creditors' Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Creditors' Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders; and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders.

46.     The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

## NOTICE

47.     Notice of this Motion will be provided to: (a) the U.S. Trustee; (b) counsel for the Creditors' Committee; (c) counsel to the agent for the prepetition secured lenders; (d) counsel to the Ad Hoc Senior Noteholders Committee and DIP Lenders; and (e) those parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of page intentionally left blank.]*

DB02:9340113.3                                                                                    068401.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the proposed

Disclosure Statement Order, substantially in the form attached hereto as <u>Exhibit 1</u> and grant such

other and further relief as this Court deems just and proper.

Dated: March 8, 2010
       Wilmington, Delaware

            YOUNG CONAWAY STARGATT & TAYLOR, LLP

            Robert S. Brady (No. 2847)
            Matthew B. Lunn (No. 4119)
            Maris J. Finnegan (No. 5294)
            The Brandywine Building
            1000 West Street, 17th Floor
            Wilmington, Delaware 19801
            (302) 571-6600

            -and-

            WILLKIE FARR & GALLAGHER LLP
            Paul V. Shalhoub
            Robin Spigel
            Andrew D. Sorkin
            787 Seventh Avenue
            New York, New York 10019-6099
            Telephone: (212) 728-8000
            Facsimile: (212) 728-8111

            *Counsel to the Debtors and Debtors in Possession*

DB02:9340113.3

068401.1001