# EXHIBIT 1

## Bid Procedures Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x

| | |
|---|---|
| In re | :    **Chapter 11** |
| | : |
| **RathGibson, Inc., et al.,**[1] | :    **Case No. 09-12452 (CSS)** |
| | :    **Jointly Administered** |
| **Debtors.** | : |
| | :    Re: Docket No. _____ |
| | : |

----------------------------------------------------x

## ORDER (I) (A) APPROVING BID PROCEDURES WITH RESPECT TO SALE; (B) APPROVING BID PROTECTIONS WITH RESPECT TO STALKING HORSE BIDDER; (C) APPROVING ASSUMPTION, ASSIGNMENT AND/OR TRANSFER PROCEDURES; AND (D) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors"), for the entry of an order, pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1(c) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"): (i) scheduling the hearing on the approval of the Sale of the Purchased Assets, free and clear of all liens, claims, interests, charges or other encumbrances (other than permitted encumbrances); (ii) approving the Bid Procedures with respect to the Sale, (iii) approving the Bid Protections with respect to the Stalking Horse Bidder, (iv) approving assumption, assignment and/or transfer procedures,

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

[2] Unless otherwise defined herein, all capitalized terms shall have the respective meanings ascribed to them in the Motion.

(v) scheduling the Auction and approving the form and manner of notice thereof; and (vi) granting related relief;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.  See Bankruptcy Rule 7052.

B.     The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  The relief requested in the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Due and proper notice of the Motion and the relief sought therein has been given under the circumstances, such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and no other or further notice is required except as set forth herein with respect to the Auction and Confirmation Hearing.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.     The Debtors' proposed notice of the Auction and the Bid Procedures, in the form of the Notice of Bid Deadline and Auction For Sale of Substantially All of Debtors' Assets (the "Notice of Auction and Sale"), substantially in the form attached hereto as Exhibit B, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction and the Bid Procedures to be employed in connection therewith.

E.     The Debtors' proposed notice of the Assignment and Assumption Procedures, in the form of the Notice of Assumption and Assignment annexed hereto as Exhibit

<u>C</u>, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the proposed assumption and assignment of the Executory Contracts and Unexpired Leases.

F.     The Stalking Horse Agreement was entered into in good faith by the Debtors and the Stalking Horse Bidder, and is the result of an arms-length negotiation between the parties that are each represented by sophisticated legal counsel.

G.     The Debtors have articulated good and sufficient business reasons for this Court to approve the Bid Procedures, including:  (i) the payment of the Bid Protections, if necessary, to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement; (ii) the scheduling of the Bid Deadline, Auction and Confirmation Hearing in connection with the Sale of the Purchased Assets and confirmation of the Plan; and (iii) the establishment of procedures to fix the Cure Costs to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

H.     The Bid Procedures, in substantially the form attached hereto as <u>Exhibit A</u>, are fair, reasonable and appropriate and are designed to maximize the value of the Debtors' estates.

I.     The Bid Procedures and all such steps and expenses incurred in connection with the implementation of the Bid Procedures and this Order shall be deemed reasonable and appropriate and within the sound business judgment of the Debtors pursuant to section 363(b) of the Bankruptcy Code.

068401.1001

J.     The Debtors have demonstrated that the Bid Protections are actual and necessary costs and expenses of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, and commensurate to the real and substantial benefit conferred upon Debtors' estates by the establishment of the Stalking Horse Bidder's bid, which has established a bid standard or minimum for other bidders for the Purchased Assets, thereby ensuring that during the Auction, if any, the Debtors receive the highest or best bid possible for the Purchased Assets.

K.     The entry of this Order is in the best interests of the Debtors and their estates, creditors and interest holders and all other parties in interest herein.

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1.     The Motion is GRANTED as set forth herein.

2.     The Notice of Auction and Sale annexed hereto as <u>Exhibit B</u> is reasonable and appropriate and is hereby approved.

3.     [All objections to the Motion or the relief requested therein with respect to the Bid Procedures (including, without limitation, the Bid Protections), the Assignment and Assumption Procedures and the Notice of Auction and Sale that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied on the merits.]

4.     The Bid Procedures (including, without limitation, the Bid Protections) are approved and shall apply with respect to the Auction, if any, and the proposed Sale of the Purchased Assets.  The Debtors are authorized to take all actions necessary or appropriate to implement the Bid Procedures.

5.     As further described in the Bid Procedures, the deadline for submitting bids for the Purchased Assets (the "Bid Deadline") is [May 12, 2010, at 5:00 p.m.] (prevailing Eastern time).

6.     If the Debtors receive a Qualified Bid (as defined in the Bid Procedures) other than the Stalking Horse Bidder bid prior to the Bid Deadline, an Auction consistent with the Bid Procedures for the sale of the Purchased Assets shall be held at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 on [May 19], 2010, commencing at [10:00 a.m.] (prevailing Eastern Time), provided, however, that the Debtors, in their discretion, shall: (i) have the right to cancel the Auction if no Qualified Bids are received; and (ii) have the right to hold the Auction at another place (which shall be in New York City), date and time, with notice to the Creditors' Committee, all Qualified Bidders and any other invitees. The Debtors will provide notice of the Auction through the Notice of Auction and Sale, which will detail: (i) the Bid Deadline and the terms and conditions of the Sale, and (ii) the date, time and location of the Auction.

7.     Each Qualified Bidder participating at the Auction shall confirm that: (i) it has not engaged in any collusion with respect to the bidding or the Sale, and (ii) its Qualified Bid is a good faith, bona fide offer and it intends to consummate the Proposed Transaction (defined in the Bid Procedures) if selected as the Successful Bidder.

8.     The Auction will be conducted openly.

9.     Bidding at the Auction will be transcribed or videotaped.

10.     The Sale is an integral part of the Plan and shall be considered in connection with confirmation of the Plan at the Confirmation Hearing, which hearing shall be at a date and time to be determined by the Court in connection with the hearing on the Disclosure

DB02:9340058.1                                                                                              068401.1001

Statement and which hearing shall be notice as set forth in any order approving the Disclosure Statement.

11.     On or before five (5) business days after entry of this Bid Procedures Order, the Debtors will cause this Order and the Notice of Auction and Sale to be served by first class mail, postage prepaid, or other method reasonably calculated to provide notice of the Sale and the Auction, upon: (a) the U.S. Trustee; (b)   counsel for the Creditors' Committee; (c) counsel to the agent for the prepetition secured lenders; (d) counsel for the Ad Hoc Senior Noteholders Committee and the DIP Lenders; (e) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (f) all entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in or on the Purchased Assets; (g) the non-Debtor counterparties to the Executory Contracts and Unexpired Leases; (h) the Attorneys General in the State where the Purchased Assets are located; (i) the United States Environmental Protection Agency; (j) any applicable state environmental agency; and (k) all persons who have expressed an interest in acquiring some or all of the Purchased Assets within the last six (6) months.  In addition, the Debtors will serve the Notice of Auction and Sale as part of the solicitation package sent to parties entitled to vote on the Plan.  The Debtors shall also, subject to applicable submission deadlines, publish the Notice of Auction and Sale once in one or more publications the Debtors deem appropriate, including but not limited to The New York Times (national edition).  The foregoing methods of such service shall constitute good and sufficient notice of the Sale of the Purchased Assets, this Order, the Auction, and all proceedings to be held thereon (other than the Disclosure Statement and Confirmation Hearing; notice thereof shall be governed by separate order of the Court).

DB02:9340058.1                                                                                            068401.1001

12.     On or within five (5) business days after the entry of this Order, the Debtors shall serve a notice (the "Notice of Assumption and Assignment"), substantially in the form annexed hereto as Exhibit C, of potential assumption and assignment of the Executory Contracts and Unexpired Leases that are anticipated to be assumed and assigned to the Stalking Horse Bidder (the "Assigned Contracts") on the applicable non-Debtor counterparties.  The Notice of Assumption and Assignment shall set forth the amount, if any, that the Debtors contend is the amount needed to cure any defaults and pecuniary losses with respect to such Assigned Contracts (the "Cure Costs").  To the extent a counterparty to an Executory Contract and Unexpired Lease does not receive an Assumption Notice and is not listed on the Schedule of Rejected Contracts (to be filed as part of the Plan Supplement), the Cure Cost for such executory contract or unexpired lease shall be $0.00.  If the Debtors identify additional Executory Contracts and Unexpired Leases that might be assumed by the Debtors and assigned to the Stalking Horse Bidder, the Debtors will promptly send a supplemental notice of assumption and assignment (the "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such contract or lease.

13.     Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection (the "Cure Cost/Assignment Objection") to:  (a) adequate assurance of future performance by the Purchaser, (b) its scheduled Cure Cost, and/or (c) to the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease to the Purchaser by 5:00 p.m. (prevailing Eastern time) on the later of: (i) [April 15, 2010] and (ii) eight (8) days after service of the Supplemental Notice of Assumption and Assignment (such later date, "Cure Cost/Assignment Objection Deadline") and serves a copy of the Cure Cost/Assignment Objection so as to be received no later than the Cure Cost/Assignment

Objection Deadline on the same day by: (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: Jenette A. Barrow-Bosshart, Esq. and Jessica M. Ward, Esq.), co-counsel to the Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Creditors' Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders (as defined below); and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders (collectively, the "Notice Parties"), then such non-Debtor counterparty shall: (a) be forever barred, estopped and enjoined from (i) disputing the Cure Cost relating to any Executory Contract or Unexpired Lease set forth on the Notice of Assumption or Assignment or, if no Notice of Assumption or Assignment is received and such Executory Contract or Unexpired Lease is not listed on the Schedule of Rejected Contracts and Leases, as $0.00; and (b) be deemed to have consented to the assumption and assignment of such Executory Contract or Unexpired Lease and shall be forever barred and estopped from asserting or claiming against the

DB02:9340058.1                                   068401.1001

Debtors, the Purchaser or any other assignee of the relevant Executory Contract or Unexpired Lease that any additional amounts are due or defaults exist, or conditions to assumption and assignment of such Executory Contract or Unexpired Lease must be satisfied (pursuant to Section 365(b)(1) of the Bankruptcy Code or otherwise).

14.    If a non-Debtor counterparty to an Executory Contract or Unexpired Lease challenges a Cure Cost (a "Cure Dispute") pursuant to a Cure Cost/Assignment Objection, such objection shall be required to specify the Cure Cost proposed by the counterparty to the applicable Executory Contract or Unexpired Lease. To the extent a Cure Dispute relates solely to a Cure Cost, the Debtors shall be entitled to assume and assign the applicable Executory Contract or Unexpired Lease prior to the resolution of the Cure Dispute provided that the Purchaser establishes a reserve containing cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such Executory Contract or Unexpired Lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor, the Debtors may, subject to the terms of the agreement with the Successful Bidder, reject the applicable Executory Contract or Unexpired Lease after such determination.

15.    The Debtors, the Stalking Horse Bidder or the other Successful Bidder, as the case may be, may amend the Schedule of Rejected Contracts and Leases to add any executory contract or unexpired lease listed therein (thereby providing for the rejection of such executory contract or lease) or to delete any executory contract or unexpired lease listed therein (thereby providing for its assumption and assignment) no later than the tenth (10th) business day prior to the Confirmation Hearing (or such later date as is set forth in the Stalking Horse Agreement or such other asset purchase agreement that the Debtors may execute in connection

with the Successful Bid). The Debtors shall notify any non-Debtor party or parties to any such added or deleted Executory Contract or Unexpired Lease of such addition or deletion by written notice mailed within two (2) business days of such determination.

16.     In the event that the Stalking Horse Bidder is not the Successful Bidder for the Purchased Assets, within one (1) business day after the conclusion of the Auction for the Purchased Assets, the Debtors will serve a notice identifying the Successful Bidder to the non-Debtor counterparties to the Executory Contracts and Unexpired Leases that have been identified in such successful bid. In such event, the non-Debtor counterparties to the Executory Contracts and Unexpired Leases shall have until 10:00 a.m. (prevailing Eastern Time) on the date of the Confirmation Hearing (unless the Confirmation Hearing is adjourned to a date that is at least six (6) days after the originally scheduled date of the Confirmation Hearing, in which case such non-Debtor counterparties shall have until 4:00 p.m. (prevailing Eastern Time) on the date that is three (3) business days prior to the Confirmation Hearing) (the "Adequate Assurance Objection Deadline"), to file and serve on the Notice Parties any objection to the assumption, assignment and/or transfer of such Executory Contract and Unexpired Lease solely based on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

17.     The Notice of Assumption and Assignment to be issued in connection with the proposed sale of the Purchased Assets, substantially in the form annexed hereto as Exhibit C, is approved.

18.     The Bid Protections as set forth in the Stalking Horse Agreement are approved. The obligations of the Debtors to pay the Bid Protections to the Stalking Horse Bidder: (i) shall be entitled to administrative expense claim status under sections 503(b)(1)(A)

and 507(a)(2) of the Bankruptcy Code; and (ii) shall not be subordinate to any other administrative expense claim against the Debtors (other than any Carve-Out for professional fees and expenses included in the Final Order: (I) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Grant Senior Liens and Superpriority Administrative Expense Status; (II) Approving Use of Cash Collateral of Prepetition Lender; (III) Granting Adequate Protection to Prepetition Lender; and (IV) Granting Related Relief [Docket No. 159] (as defined therein)). If incurred pursuant to the Stalking Horse Agreement, the Debtors shall, without further notice to or order of this Court, pay such amount(s) to the Stalking Horse Bidder in cash in accordance with the provisions of the Stalking Horse Agreement.

19.     The Expense Amount and section 8.12 of the Stalking Horse Agreement are hereby approved and the Debtors are authorized, without any further Order of this Court, to pay the Expense Amount as set forth therein.

20.     The proposed assumption and assignment of the Assigned Contracts and the Auction shall be conducted solely in accordance with the provisions of this Order, the Bid Procedures and the Assignment and Assumption Procedures, as applicable.

21.     Except as otherwise provided herein and in the Bid Procedures, Local Rule 6004-1(c)(ii) is waived.

22.     Prior to mailing the Notices of Assumption and Assignment, any Supplemental Notices of Assumption of Assignment or the Notice of Auction and Sale, the Debtors may fill in any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order and make such other non-material, non-substantive changes as they deem necessary or appropriate.

DB02:9340058.1                    068401.1001

23.     Any conflict between the terms and provisions of this Order and the APA (as defined in the Plan), shall be resolved in favor of this Order.

24.     The Debtors hereby are authorized and empowered to take such steps and expend such funds as are necessary to implement the terms of this Order.

25.     This Court shall retain jurisdiction over all matters related to or arising from the Motion or the interpretation or implementation of this Order.

Dated: _____, 2010
        Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

## Bid Procedures

# BID PROCEDURES

Set forth below is the general process to be employed by the Debtors with respect to the proposed sale of all or substantially all of the Debtors' assets (the "<u>Purchased Assets</u>"), as contained in the Debtors' motion for entry of, among other things, an order: (A) approving these bid procedures for the sale of the Purchased Assets, (B) approving the Bid Protections (as defined below) with respect to the Stalking Horse, (C) scheduling the Auction (as defined below) and approving the form and manner of notice thereof, (D) approving assumption and assignment procedures and (E) granting related relief (the "<u>Motion</u>").[1]

a. **Assets to Be Sold.** The Debtors are offering the Purchased Assets for sale pursuant to the Plan (the "<u>Plan Sale</u>"). The Debtors shall retain all rights and title to assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court at the Confirmation Hearing (defined below).

b. **The Bidding Process.** The Debtors, in consultation with the Committee, shall: (i) determine whether any person is a Potential Bidder (as defined below); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Debtors' businesses; (iii) receive offers from Qualified Bidders (as defined below); and (iv) negotiate any offer made to purchase the Purchased Assets together or separately by a Qualified Bidder (collectively, the "<u>Bidding Process</u>"). Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any person who is not a Potential Bidder.

c. **Due Diligence for Potential Bidders.** The Debtors shall afford each Potential Bidder reasonable due diligence information. Due diligence access shall be provided upon reasonable request to the Debtors, at the discretion of the Debtors and within their reasonable business judgment. Neither the Debtors nor any of their affiliates (nor any of their respective representatives) are obligated to furnish any information relating to the Purchased Assets to any person except to Potential Bidders (prior to the Bid Deadline (as defined below)). Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Purchased Assets, whether provided by the Debtors or their representatives or any other party. The due diligence period will end on the Bid Deadline. To be a "<u>Potential Bidder</u>", each bidder (other than the Stalking Horse) must have delivered the following:

  i. an executed confidentiality agreement in form and substance satisfactory to the Debtors, which confidentiality agreement, in the aggregate, is no less restrictive to the Potential Bidder than the confidentiality agreement(s) executed by the Stalking Horse, but in no event shall the restriction on disclosure and use of confidential information set forth in the Potential Bidder's confidentiality agreement terminate earlier than

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Stalking Horse Agreement.

twelve (12) months after the date of execution of such confidentiality agreement; and

ii.    the most current audited and the most current unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets, the Financials of the Potential Bidder's equity holder(s) or other financial backer(s), or such other form of financial disclosure and evidence acceptable to the Debtors demonstrating such Potential Bidder's financial ability to: (i) close the proposed transaction contemplated by the Stalking Horse Agreement (the "Proposed Transaction") within the time frame set forth therein; and (ii) provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Potential Bidder; provided that if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal and ability to consummate the Proposed Transaction within the time frame set forth in the Stalking Horse Agreement.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal and ability to consummate and perform obligations in connection with the Plan Sale. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by such Potential Bidder is not a Qualified Bid (as defined below).

d.    **Participation Requirements.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtors in their reasonable business judgment and in consultation with the Committee, in order to participate in the Bidding Process each person that is a Potential Bidder (a "Qualified Bidder") must submit a bid that adheres to the following requirements (a "Qualified Bid"):

i.    The Qualified Bidder is prepared to consummate the transaction contemplated by the Proposed Agreement (as defined below) on or before June 16, 2010. Qualified Bidders must deliver written copies of their bids not later than 5:00 p.m. (prevailing Eastern Time) on May 12, 2010 (the "Bid Deadline") to: (i) Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: William M. Silverman, Esq. and Jenette A. Barrow-Bosshart, Esq.), co-

counsel to the Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse and Requisite DIP Lenders (as defined below); and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse and Requisite DIP Lenders.

ii.   All Qualified Bids must be in the form of an offer letter, which letter states:

      (A)   that such Qualified Bidder offers to purchase all or substantially all of the Purchased Assets upon terms and conditions substantially similar to the Stalking Horse Agreement pursuant to an asset purchase agreement (together with its exhibits and schedules, the "Proposed Agreement"), three copies of which (one hard copy executed by an individual authorized to bind such Qualified Bidder and two electronic versions in Word format (one clean and one blacklined against the Stalking Horse Agreement to show amendments and modifications to the Stalking Horse Agreement)), are to be provided to the Debtors contemporaneously therewith;

      (B)   that such Qualified Bidder is prepared to consummate the transaction set forth in the Proposed Agreement on or before June 16, 2010, following entry of an order of this Court confirming the Plan and approving the Plan Sale to the Successful Bidder (as defined below) (the "Confirmation Order");

      (C)   that the offer shall remain open and irrevocable as provided below; and

      (D)   which of the Debtors' leases and executory contracts are to be assumed and assigned in connection with the consummation of the Qualified Bidder's bid.

iii.   All Qualified Bids shall be accompanied by a deposit into escrow with the Debtors of an amount in cash equal to $10,000,000 (the "Good Faith Deposit").

DB02:9340065.1

068401.1001

iv.    All Qualified Bids shall require cash to be the only form of consideration (for the avoidance doubt, other than assumed liabilities) to be delivered to the Debtors on the Closing Date.

v.    All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtors, in consultation with the Committee, of the Qualified Bidder's ability to: (a) fund the purchase price proposed by the Qualified Bidder with cash on hand or other sources of immediately available funds that are not conditioned on third party approvals or other commitments and (b) otherwise perform all transactions contemplated by the Proposed Agreement.

vi.    All Qualified Bids must provide for funding of all payments required under the Plan.

vii.    All Qualified Bids must be on terms that are not materially more burdensome on the Debtors or conditional than the terms of the Stalking Horse Agreement.

viii.    All Qualified Bids must fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid (including any equity holder or other financial backer if the Qualified Bidder is an entity formed for the purpose of acquiring the Purchased Assets), and the complete terms of any such participation.

ix.    Qualified Bids cannot contain conditions or contingencies of any kind or any other conditions precedent to such party's obligation to acquire the Purchased Assets other than as may be included in the Stalking Horse Agreement, including, without limitation, conditions or contingencies relating to: (i) the obtaining or the sufficiency of financing or (ii) the outcome of due diligence.

x.    All Qualified Bids must provide for adequate working capital financing to finance going concern operations to the extent contemplated, and to provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Qualified Bidder.

xi.    Qualified Bids must contain evidence that the Qualified Bidder has obtained authorization or approval from its Board of Directors (or comparable governing body) with respect to the submission of its bid and execution of the Proposed Agreement and the consummation of the transactions contemplated thereby.

xii.    Qualified Bids must not entitle the Qualified Bidder to any termination or break-up fee, expense reimbursement or similar type of payment.

DB02:9340065.1    068401.1001

Pursuant to the terms and conditions of this section (d), the Debtors shall, in consultation with the Committee, notify the Qualified Bidders by the fourth day prior to the commencement of the Auction, of: (i) the Debtors' determination of, and the identity of, the Qualified Bidders; and (ii) which Qualified Bid represents the then highest or otherwise best bid (the "Starting Qualified Bid"). No later than the fourth day prior to the commencement of the Auction, the Debtors shall distribute copies of the Starting Qualified Bid and all other Qualified Bids to each Qualified Bidder. Notwithstanding anything in these Bid Procedures to the contrary, the Stalking Horse is deemed a Qualified Bidder, and the Stalking Horse Bid (as defined below) shall be deemed a Qualified Bid for all applicable purposes of these Bid Procedures.

e.  **"As Is, Where Is."** The sale of the Purchased Assets shall be on an "as is, where is" basis, "with all faults", and without representations or warranties (express or implied) of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the Stalking Horse Agreement or the Proposed Agreement of the Successful Bidder. Except as otherwise provided in the Stalking Horse Agreement or the Proposed Agreement of the Successful Bidder, all of the Debtors' right, title and interest in and to the Purchased Assets to be acquired shall be sold pursuant to the Plan free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against (collectively, the "Liens"), with such Liens to be satisfied in accordance with the Plan. Each bidder (except for the Stalking Horse (whose acknowledgments and representations are contained in the Stalking Horse Agreement)), shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Stalking Horse Agreement or the Proposed Agreement, as applicable.

f.  **Stalking Horse.** The Stalking Horse has submitted a Qualified Bid in the amount of $93 million pursuant to the Stalking Horse Agreement, which Qualified Bid shall serve as a stalking horse bid (the "Stalking Horse Bid").

g.  **Stalking Horse Bid Protections:** The Debtors have determined that in order to attract the Stalking Horse Bid, it was necessary to: (i) provide a break-up fee in the amount of 3.0% of the Stalking Horse Bid to the Stalking Horse (the "Break-Up Fee"), payable in accordance with the terms of the Stalking Horse Agreement; (ii) provide expense reimbursement in an amount equal to all of the reasonable documented third-party fees and expenses incurred by the Stalking Horse in connection with the transactions contemplated by the Stalking Horse Agreement up to a maximum of $1,000,000 (the "Expense Reimbursement", and together with the Break-Up Fee, the "Bid Protections"); and (iii) provide that any competing Qualified Bids must exceed the aggregate consideration to be paid to or for the benefit of the Debtors' estates as set forth in the Stalking Horse Bid by at least the sum of (x) the Bid Protections (assuming the Expense Reimbursement totaled $1,000,000), and (y) $500,000 (the "Minimum Purchase Price").

The Bid Protections shall be deemed to be a superpriority administrative expense under section 503 of the Bankruptcy Code with priority over any and all administrative expenses against the Debtors under sections 503 and 507 of the Bankruptcy Code (except for the "Carve-Out" under the DIP Credit Agreement, which shall be senior in priority to the Bid Protections). Except for the Stalking Horse, Potential Bidders or Qualified Bidders shall not be allowed any breakup, termination or similar fee or expense reimbursement. All Potential Bidders and Qualified Bidders, by participating in the Bidding Process, waive any right to seek a claim for substantial contribution.

h. **Auction.** If the Debtors receive a Qualified Bid other than the Stalking Horse Bid prior to the Bid Deadline, the Debtors shall conduct an auction (the "Auction") at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 on May 19, 2010 beginning at 11:00 a.m. (prevailing Eastern Time), or such other place (located in New York City) and time as the Debtors shall notify all Qualified Bidders, the Committee and other invitees. Only representatives of the Stalking Horse, the Debtors, the United States Trustee, the Committee, the "Requisite Lenders" under the DIP Credit Agreement (the "Requisite DIP Lenders") and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction. The Debtors, in consultation with the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.,* the amount of time allotted to make overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bid Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine, in consultation with the Committee, is relevant, the Debtors may conduct the Auction in the manner they determine, in consultation with the Committee, will achieve the maximum value for the Purchased Assets. Bidding at the Auction will be transcribed or videotaped.

- Only a Qualified Bidder and its authorized representatives who have submitted a Qualified Bid will be eligible to participate at the Auction. At the Auction, only the Stalking Horse and other Qualified Bidders who have submitted a Qualified Bid will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the Starting Qualified Bid as disclosed to all Qualified Bidders prior to commencement of the Auction and then continue in increments of at least an amount equal to the sum of (i) the Bid Protections (assuming the Expense Reimbursement totaled $1,000,000), and (ii) $500,000. Subsequent overbids shall be made in minimum increments of $500,000, provided that the Debtors, after consultation with the Committee, may reduce such minimum increment amount (but in no event shall such minimum increment amount be reduced to lower than $250,000).

- During the course of the Auction, the Debtors shall, after the submission of each Qualified Bid, promptly inform each participant which Qualified Bid reflects, in the Debtors' view (after consultation with the Committee), the highest or otherwise best offer. To the extent that such Qualified Bid has been determined to be the highest or otherwise best offer entirely or in

part because of the addition, deletion or modification of a provision or provisions in the Stalking Horse Agreement (or related ancillary agreement) or the applicable Proposed Agreement (or related ancillary agreement), other than a provision or provisions related to an increase in the cash purchase price, the Debtors shall provide notice to each participant of the value ascribed by the Debtors to any such added, deleted or modified provision or provisions.

- Each Qualified Bidder participating at the Auction will be required to confirm that: (i) it has not engaged in any collusion with respect to the bidding or the Plan Sale and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Proposed Transaction if selected as the Successful Bidder.

- The Auction may be adjourned as the Debtors, in consultation with the Committee, deem appropriate. Reasonable notice of such adjournment and the time and place (which shall be in New York City) for the resumption of the Auction shall be given to the Stalking Horse, all other Qualified Bidders who have timely submitted Qualified Bids, the United States Trustee and counsel to the Committee and the Requisite DIP Lenders.

- Any overbid made by the Stalking Horse shall be deemed to have been made in an amount equal to the overbid plus the Bid Protections (solely for purposes of determining the highest or otherwise best bid).

- The Debtors shall not close the Auction until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing highest or otherwise best bid.

i.   **Acceptance of Qualified Bids.** At the conclusion of the Auction, (i) the successful bid shall be the bid made pursuant to the order approving these Bid Procedures (the "Approval Order") that represents, in the Debtors' discretion (after consultation with the Committee), the highest or otherwise best offer (the "Successful Bid", and the Qualified Bidder who submitted the Successful Bid, the "Successful Bidder"); and (ii) the Debtors shall announce the identity of the Successful Bidder. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof. Such acceptance by the Debtors is conditioned upon approval by the Bankruptcy Court of the Successful Bid and the entry of the Confirmation Order.

j.   **Irrevocability of Certain Bids.** The Successful Bid shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Successful Bidder; provided, that (i) the last bid of the bidder (the "Second-Highest Bidder") that submits the next highest or otherwise best bid (the "Second-Highest Bid") at the Auction shall be subject to the terms of such Second-Highest Bidder's purchase agreement, irrevocable until the earlier of: (a) twenty (20) days after entry of the Confirmation Order approving

the Successful Bid; and (b) the date of closing of the sale to the Successful Bidder or the Second-Highest Bidder (the "Outside Back-up Date"), and (ii) subject to the terms of such Second-Highest Bidder's purchase agreement, the Good Faith Deposit of the Second-Highest Bidder shall be returned within two (2) business days of the Outside Back-up Date. The identity of the Second-Highest Bidder and the amount and material terms of the Second-Highest Bid shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder. Following the entry of the Confirmation Order, if the Successful Bidder fails to consummate the Plan Sale because of a breach or failure to perform on the part of the Successful Bidder, the Second-Highest Bidder will be deemed to have the new Successful Bid (which will be the Second-Highest Bid), and the Debtors will be authorized to consummate the Plan Sale with the Second-Highest Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder subject to the terms of, and the limitations and restrictions set forth in, the Proposed Agreement or the Stalking Horse Agreement (as the case may be) of the Successful Bidder.

k.    **The Confirmation Hearing.** After the conclusion of the Auction, and the solicitation of the Plan, the Bankruptcy Court shall conduct a hearing (the "Confirmation Hearing")[2] to confirm the Plan and approve the Plan Sale. At the Confirmation Hearing, the Debtors will seek entry of the Confirmation Order, among other things: (i) confirming the Plan; (ii) authorizing and approving the Plan Sale to the Successful Bidder, as determined by the Debtors in accordance with these Bid Procedures, pursuant to the terms and conditions set forth in the Stalking Horse Agreement if the Stalking Horse is the Successful Bidder or the Proposed Agreement submitted by the Successful Bidder if the Stalking Horse is not the Successful Bidder (in each case, as any such agreement may be modified prior to, during or after the Auction with the agreement of the Debtors); and (iii) exempting the sale and conveyance of the Purchased Assets from any transfer tax, stamp tax or similar tax pursuant to section 1146(a) of the Bankruptcy Code. The Debtors also will seek the inclusion of certain findings in the Confirmation Order regarding the Auction, including, among other things, that: (a) the Auction was conducted and the Successful Bidder was selected in accordance with these Bid Procedures; (b) the Auction was fair in substance and procedure; and (c) consummation of the Plan Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors, the Debtors' estates and their creditors. The Confirmation Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court.

l.    **Return of Good Faith Deposit.** Except as otherwise provided in this paragraph with respect to any Successful Bid and the Second-Highest Bid, if any, the Good Faith Deposits of all Qualified Bidders shall be returned upon or within two (2) business days after the Auction. The Good Faith Deposit of the Successful Bidder shall be held until

---

[2]    The Debtors have requested by separate motion that the Bankruptcy Court set the Confirmation Hearing on May 21, 2010 at 1:00 p.m. prevailing Eastern Time.

the closing of the Plan Sale and applied in accordance with the Successful Bid. The Good Faith Deposit of the Second-Highest Bidder shall be returned as set forth in section (j) above. If a Successful Bidder fails to consummate an approved Plan Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Debtors subject to the terms of, and the limitations and restrictions set forth in, the Proposed Agreement or the Stalking Horse Agreement (as the case may be) of the Successful Bidder, and the Debtors shall be free to consummate the Plan Sale with the Second-Highest Bidder without the need for an additional hearing or Order of the Bankruptcy Court.

m. **Modifications.** At or before the Confirmation Hearing, the Bankruptcy Court, or, consistent with the purposes of these Bid Procedures to obtain the highest or otherwise best offer for the Purchased Assets, the Debtors, in consultation with the Committee, may impose such other terms and conditions as it or they may determine to be in the best interests of the Debtors' estates, their creditors and other parties in interest.

n. **Reservation of Rights.** In addition to their rights set forth in sections (h) and (l) above, the Debtors may modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Plan Sale of the Purchased Assets if, in their reasonable business judgment, in consultation with the Committee and the Stalking Horse, such modifications would be in the best interests of the Debtors' estates and promote an open and fair bidding process. The Debtors may: (i) determine, in their reasonable business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with the Committee, in connection with the bidding process and these Bid Procedures; and (iii) reject at any time before entry of the Confirmation Order approving a Qualified Bid, any bid that, in consultation with the Committee, is: (w) inadequate or insufficient; (x) not in conformity with the requirements of the Plan, the Bankruptcy Code, these Bid Procedures or the terms and conditions of the Plan Sale; (y) contrary to the best interests of the Debtors, their estates, their creditors and other parties in interest; or (z) subject to any due diligence, financing condition or other contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Purchased Assets other than, in any such case, as may be included in the Stalking Horse Agreement. Nothing in these Bid Procedures shall, or shall be deemed to: (1) amend, modify, limit or otherwise affect the terms or conditions of the Stalking Horse Agreement, the Final DIP Order, the DIP Facility documents, or the rights and remedies of the parties thereunder or under applicable bankruptcy law; or (2) except for their consent to the Stalking Horse Agreement, constitute the consent of the Requisite DIP Lenders to any other sale or disposition of their respective collateral.

o. **Expenses.** Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved, unless otherwise provided for in the Plan or agreed to by the Debtors in accordance with the DIP Facility documents and the orders approving the same, or the terms of the Stalking Horse

Agreement or Proposed Agreement, as applicable. Notwithstanding the foregoing, the Stalking Horse may recover the Bid Protections under the Stalking Horse Agreement.

p.   **Highest Or Otherwise Best Bid.** Whenever these Bid Procedures refer to the highest or otherwise best offer, as compared to the bid of the Stalking Horse, the Debtors may, in their discretion, consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the number, type and nature of any changes to the Stalking Horse Agreement requested by the Qualified Bidder, and whether such bid is for different assets than those proposed to be purchased by the Stalking Horse or on different terms from those contained in the Stalking Horse Agreement; (b) the extent to which such requested modifications to the Stalking Horse Agreement are likely to delay the closing of the Proposed Transaction and the cost to the Debtors of any such delay; (c) the total consideration to be received by the Debtors; (d) the likelihood of the Qualified Bidder's ability to timely close the Plan Sale; and (e) the net benefit to the Debtors' estates, taking into account the Stalking Horse's rights to the Bid Protections.

DB02:9340065.1

068401.1001

**EXHIBIT B**

**Notice of Auction and Sale**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
In re                                           :       Chapter 11
                                                :
RathGibson, Inc., et al.,¹                      :       Case No. 09-12452 (CSS)
                                                :
                              Debtors.          :       Jointly Administered
                                                :
                                                :       Auction:
                                                :       Sale Objection Deadline:  To Be Set Forth in Notice of
                                                :       Confirmation Hearing
                                                :       Sale Hearing: To Be Set Forth in Notice of
                                                :       Confirmation Hearing
-------------------------------------------------------x
```

## NOTICE OF BID DEADLINE AND AUCTION FOR SALE
## OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On March 8, 2010, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") entered into an Asset Purchase Agreement by and between RathGibson Acquisition Co., LLC (the "Stalking Horse Bidder") and the Debtors, dated as of March 8, 2010 (the "Stalking Horse Purchase Agreement").  On March 8, 2010, the Debtors filed a motion (the "Motion") for entry of an order, among other things: (i) approving certain bid procedures (the "Bid Procedures") with respect to the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Purchased Assets") either to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement, or to such other person or entity who submits a higher or otherwise better offer (a "Successful Bidder") in accordance with the Bid Procedures; (ii) approving certain bid protections with respect to the Stalking Horse Bidder; (iii) approving certain assumption, assignment and/or transfer procedures; and (iv) scheduling an auction in connection with the Sale of the Purchased Assets (the "Auction") and approving the form and manner of notice thereof.

2.      The Debtors are seeking to sell the Purchased Assets to the Purchaser or such other Successful Bidder in conjunction with the proposed *Second Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").²  Approval of the Sale to either the Purchaser or such other Successful Bidder may result in, among other things, the assumption, assignment and/or transfer by the Debtors of certain executory contracts and unexpired leases.  If you are a party to an executory contract or unexpired lease with the Debtors, you should receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or unexpired lease.

3.      On March [__], 2010, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order granting the Motion (the "Bid Procedures Order").  Pursuant to the Bid Procedures Order, if the Debtors receive any Qualified Bids (as defined in the Bid Procedures), the Auction shall take place on **May 19, 2010 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019.  Only parties that have submitted a Qualified Bid in accordance with the Bid Procedures, attached to the Bid Procedures Order as Exhibit A, by no later than **May 12, 2010 at 5:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline") may participate at the Auction.  Any party that wishes to take part in this process and submit a bid for the Purchased Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bid Procedures.

---

¹       The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses:  (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683).  The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

²       All capitalized terms used but not specifically defined herein shall have the meanings ascribed to them in the Plan.

4. By motion, dated March 8, 2010, the Debtors are seeking, among other things, (i) approval of the disclosure statement related to the Plan and (ii) a hearing date for confirmation of the Plan, including approval of the Sale. A separate notice (the "Notice of Confirmation and Sale Hearing" and, together with this notice, the "Notices") of the confirmation hearing on the Plan (the "Confirmation Hearing"), *which hearing includes approval of the Sale*, will be mailed to all known creditors and parties in interest once the disclosure statement is approved by the Bankruptcy Court. At the Confirmation Hearing, which will be held before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801, in conjunction with the confirmation of the Plan, the Court will consider the Sale of the Purchased Assets to the Stalking Horse Bidder or such other Successful Bidder free and clear of all liens, claims, interests, charges or other encumbrances (other than permitted encumbrances). The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at such hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court.

5. Objections, if any, to the Sale (other than with respect to cure amounts, assignment and adequate assurance, which are subject to a separate notice) will be required to be filed and served as set forth in the Notice of Confirmation and Sale Hearing.

6. The Notices are subject to the fuller terms and conditions of the Plan, the order approving the Disclosure Statement, the Bid Procedures Order and the Bid Procedures, which shall each control in the event of any conflict with the Notices and the Debtors encourage parties in interest to review such documents in their entirety. The Bid Procedures Order is on file with the clerk of the Bankruptcy Court, and copies of the same may be obtained by parties in interest free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.rathrestructuring.com). Copies of the Bid Procedures Order are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. In addition, copies of the Bid Procedures Order may be obtained free of charge by request to Troy Bollman (tbollman@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website. Parties interested in receiving more information regarding the Sale of the Purchased Assets, subject to any necessary confidentiality agreement, may make a written request to: (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 (Attn: Robin Spigel, Esq.), co-counsel to the Debtors; or (ii) Jefferies & Company Inc., 520 Madison Avenue, New York, NY 10022 (Attn: Leon Szlezinger).

Dated: _____, 2010
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
Maris J. Finnegan (No. 5294)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

-and-

WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub
Robin Spigel
Andrew D. Sorkin
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

Counsel to the Debtors and Debtors in Possession

# EXHIBIT C

## Notice of Assumption and Assignment

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

```
------------------------------------------------------ x     Chapter 11
In re                                                  :
                                                       :     Case No. 09-12452 (CSS)
RathGibson, Inc., et al.,¹                             :
                                                       :     Jointly Administered
                              Debtors.                 :
                                                       :     Assumption Objection
------------------------------------------------------ x     Deadline:  April 15, 2010 at 5:00 p.m. (EST)
```

### NOTICE OF ASSUMPTION, ASSIGNMENT AND/OR TRANSFER

    **PLEASE TAKE NOTICE** that on March [\_\_], 2010, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order") in the chapter 11 cases of the above-captioned debtors and debtors in possession (the "Debtors") approving, among other things, the fixing of cure costs (the "Cure Costs") related to the assumption, assignment and/or transfer of certain executory contracts, unexpired leases, and other agreements (the "Assigned Contracts"), including your agreement(s) with the Debtors identified on Exhibit A annexed hereto in connection with the sale (the "Sale") of all or substantially all of the Debtors' assets (the "Purchased Assets"). The Debtors will assume, assign and/or transfer the Assigned Contracts to RathGibson Acquisition Co., LLC (the "Stalking Horse Bidder") under the terms of the Asset Purchase Agreement by and between RathGibson Acquisition Co., LLC and the Debtors, dated as of March 8, 2010, or to such other person or entity that submits a higher or otherwise better offer (a "Successful Bidder") for the Purchased Assets under the bid procedures (the "Bid Procedures")² approved by the Bankruptcy Court and in conjunction with confirmation of the proposed *Second Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").

    **PLEASE TAKE FURTHER NOTICE** that the Debtors believe that any and all defaults (other than the filing of these chapter 11 cases) and the actual pecuniary losses from such defaults under your agreement(s), if any, with the Debtors identified on Exhibit A annexed hereto can be cured by the payment of the Cure Cost(s) listed on Exhibit A hereto.

    **PLEASE TAKE FURTHER NOTICE** that any objections by a non-Debtor counterparty to an Assigned Contract (the "Cure Cost/Assignment Objection") to:  (a) adequate assurance of future performance under the Assigned Contract by the Stalking Horse Bidder or other Successful Bidder; (b) the scheduled Cure Cost; and/or (c) the proposed assumption, assignment and/or transfer of such Assigned Contract to the Stalking Horse Bidder or other Successful Bidder, must be in writing and set forth with specificity the nature of the objection and the Cure Cost that the objecting party believes should be paid in connection with the assumption of the Assigned Contract (the "Claimed Cure Cost").  If the Debtors identify additional Assigned Contracts that might be assumed and assigned, the Debtors shall promptly send a supplemental notice of assumption and assignment (the "Supplemental Notice of Assumption and Assignment") to the applicable counterparties to such contracts or leases.  If a counterparty to an Assigned Contract does not receive this

---

¹    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). The debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

²    A copy of the Bid Procedures are attached to the Bid Procedures Order as Exhibit 1.

notice or a Supplemental Notice of Assumption and Assignment and is not listed on the Schedule of Rejected Contracts and Leases (which shall be filed as part of the Plan supplement three (3) business days prior to the deadline to vote to accept or reject the Plan), the Cure Cost for such Executory Contract and Unexpired Lease will be $0.00.

PLEASE TAKE FURTHER NOTICE that the Debtors or the Stalking Horse Bidder may amend the Schedule of Rejected Contracts and Leases to add any Executory Contract or Unexpired Lease listed therein (thereby providing for the rejection of such Executory Contract or Unexpired Lease) or to delete any Executory Contract or Unexpired Lease listed therein (thereby providing for its assumption and assignment) no later than the tenth (10th) business day (or such later date as is set forth in the APA (as defined in the Plan)) prior to the hearing on confirmation of the Plan (the "Confirmation Hearing"). The Debtors shall notify any non-Debtor party or parties to any such added or deleted Executory Contract or Unexpired Lease of such addition or deletion by written notice mailed within two (2) business days of such determination.

PLEASE TAKE FURTHER NOTICE that to be considered a timely Cure Cost/Assignment Objection, the Cure Cost/Assignment Objection must be filed with the Bankruptcy Court and served so as to be actually received by the following parties by **5:00 p.m. (prevailing Eastern time)** on the later of: **(i) April 15, 2010, or (ii) eight (8) days after service of the Supplemental Notice of Assumption and Assignment** (the "Cure Cost/Assignment Objection Deadline"): (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: Jenette A. Barrow-Bosshart, Esq. and Jessica M. Ward, Esq.), co-counsel to the Official Committee of Unsecured Creditors; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Creditors' Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse Bidder; and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse Bidder.

PLEASE TAKE FURTHER NOTICE that if a Cure Cost/Assignment Objection is timely filed, a hearing with respect to that objection shall be held before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801, at the Confirmation Hearing; provided, that if a timely Cure Cost/Assignment Objection is received, and such objection relates solely to the Cure Cost for such contract or lease (a "Cure Dispute"), the Debtors shall be entitled to assume and assign the applicable Assigned Contract prior to the resolution of the Cure Dispute provided that the Stalking Horse Bidder or such other Successful Bidder establishes a reserve containing cash in an amount equal to the Claimed Cure Amount (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the Debtors, the Debtors may reject the applicable executory contract or unexpired lease after such determination.

PLEASE TAKE FURTHER NOTICE that any non-Debtor counterparty to an Assigned Contract who fails to file and serve an objection in accordance with these procedures shall: (a) be forever barred, estopped and enjoined from (i) disputing the Cure Cost relating to any Assigned Contract set forth in this notice or a Supplemental Notice of Assumption and Assignment or, if no such notice is received and such Assigned Contract is not listed on the Schedule of Rejected Contracts and Leases, a Cure Cost of $0.00 and (ii) asserting any claim against the applicable Debtor arising under section 365(b)(1) of the Bankruptcy Code other than as set forth in this notice or a Supplemental Notice of Assumption and Assignment or, if no such notice is received and such Assigned Contract is not listed (specifically or by category) on the Schedule of

Rejected Contracts and Leases, a claim in the amount of $0.00; and (b) be deemed to have consented to the assumption and assignment of such Assigned Contract and shall be forever barred and estopped from asserting or claiming against the Debtors, the Stalking Horse Bidder or any other assignee of the relevant Assigned Contract that any additional amounts are due or defaults exist, or conditions to assumption and assignment of such Assigned Contract must be satisfied (pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise).

**PLEASE TAKE FURTHER NOTICE** that in the event that the Stalking Horse Bidder is not the successful bidder for the Purchased Assets, within one (1) business day after the conclusion of the Auction for the Purchased Assets, the Debtors shall serve a notice identifying the Successful Bidder to the non-Debtor counterparties to the Assigned Contracts that have been identified in such successful bid. In such event, the non-Debtor counterparties to the Executory Contracts and Unexpired Leases shall have until 10:00 a.m. (prevailing Eastern Time) on the date of the Confirmation Hearing (unless the Confirmation Hearing is adjourned to a date that is at least six (6) days after the originally scheduled date of the Confirmation Hearing, in which case such non-Debtor counterparties shall have until 4:00 p.m. (prevailing Eastern Time) on the date that is three (3) business days prior to the Confirmation Hearing) (the "Adequate Assurance Objection Deadline"), to file and serve on the Notice Parties any objection to the assumption, assignment and/or transfer of such Assigned Contract solely based on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, by motion, dated March 8, 2010, the Debtors are seeking, among other things, (i) approval of the disclosure statement related to the Plan and (ii) scheduling a Confirmation Hearing (which shall include approval of the Sale and the assumption and assignment of the Assigned Contracts). A separate notice of the Confirmation Hearing will be mailed to all known creditors and parties in interest once the disclosure statement related to the Plan is approved by the Bankruptcy Court. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at such hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court.

Dated: March [__], 2010
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Robert S. Brady (No. 2847)
Matthew B. Lunn (No. 4119)
Maris J. Finnegan (No. 5294)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WILLKIE FARR & GALLAGHER LLP
Paul V. Shalhoub
Robin Spigel
787 Seventh Avenue
New York, New York 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Co-Counsel to the Debtors and Debtors in Possession*