# EXHIBIT 2

## Summary of Stalking Horse Agreement

# RATHGIBSON - ASSET PURCHASE AGREEMENT SUMMARY

This summary is based on the draft Asset Purchase Agreement (the "APA"), dated as of March 8, 2010, by and among RathGibson Acquisition Co., LLC (the "Purchaser"), RG Tube Holdings LLC, RGCH Holdings Corp., RathGibson, Inc. and Greenville Tube Company (collectively, the "Sellers"). This summary is qualified in its entirety by the APA.

| Transaction | Sale of substantially all of the assets of the Sellers to the Purchaser, but excluding certain non-operating assets. |
|---|---|
| | Assumption by the Purchaser of only the following liabilities (and all other types of liabilities will remain obligations of the Sellers): <br>• post-closing liabilities arising under assumed contracts and assumed benefit/employment plans, to the extent they relate to events occurring after the closing; <br>• cure costs with respect to any assumed contracts; <br>• post-closing liabilities with respect to transferred employees, to the extent they relate to events occurring after the closing; <br>• unused vacation, accrued compensation and medical benefits with respect to transferred employees; <br>• certain COBRA liabilities for current and former employees; <br>• contractual warranty claims for products/services sold post-petition but pre-closing; <br>• all liabilities arising out of the post-closing conduct of the business, to the extent they relate to events or matters that first occur or exist after the closing; <br>• all post-petition trade payables; <br>• subject to receiving consent for the assignment of the IRB loan agreement, all liabilities for the payment of money under the IRB loan agreement; <br>• certain pre-petition payables (including trade payables) and all post-petition ordinary course non-trade operating liabilities (such as rent, insurance premiums, etc.); <br>• all inter-company payables (note that the Purchaser is also acquiring the corresponding inter-company receivables); and <br>• certain state tax obligations, which would reduce the cash portion of the purchase price. |
| **Purchase Price and Adjustments to Purchase Price** <br><br> (Section 1.3 and Article 2) | Aggregate consideration for the sale of assets will include a cash purchase price (as it may be adjusted) of $93,000,000 and the assumption of the liabilities described above. <br><br> The cash purchase price is subject to downward adjustment at closing in the event that (i) the Sellers' net working capital on the closing date is less than the target net working capital of $71,800,000 and (ii) the Purchaser pays or is obligated to pay cure costs under assumed contracts that exceed the amount of cure costs scheduled by the Sellers as |

DB02:9344607.1

068401.1001

| | |
|---|---|
| | of the execution date of the APA.

Additionally, the Purchaser will be entitled to reserve a portion of the cash purchase price in the event that any of the cure costs for any assumed contracts remain in dispute as of the Closing Date and if the Purchaser assumes certain state tax payment obligations. In the event that any disputed cure cost results in a cure cost higher than that scheduled by the Sellers, the Purchaser can retain the amount of the increase in cure costs from the reserved portion of the cash purchase price. Upon resolution of all disputed cure cost amounts, the Purchaser shall pay any remaining reserve amounts to the Sellers. |
| **Escrow** (Section 2.2) | $7,500,000 of the purchase price shall be deposited in escrow in the amounts of $5,000,000 at signing and $2,500,000 no later than two (2) business days after the Approval Order is entered by the Bankruptcy Court.

The escrow deposit will serve as security for post closing working capital adjustments, to satisfy costs and expenses relating to certain Nonassignable Assets, to satisfy the Sellers' tax indemnification obligations and for amounts owed to either the Purchaser or the Sellers as a result of the termination of the APA in certain circumstances. |
| **Termination** (Section 3.4) | The APA may be terminated as follows:
- by mutual written consent of the Sellers and the Purchaser prior to Closing;
- by either party if the Closing has not been consummated by July 31, 2010, unless the requesting party is in material breach or violation of the APA;
- by either party if consummation of the transactions contemplated by the APA would violate any law or is prohibited by a governmental body;
- by the Purchaser if any Seller's Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or if a trustee or examiner is appointed in any such Chapter 11 Case;
- by the Purchaser if (i) the Approval Motion is not filed with the Bankruptcy Court within one (1) Business Day after the Execution Date, (ii) the Approval Order shall not have been entered by the Bankruptcy Court by April 9, 2010 or (iii) following entry of the Approval Order, the Approval Order shall (A) fail to be in full force and effect, (B) have been reversed, (C) have been stayed and such stay shall continue to be in effect for more than fifteen days, or (D) have been modified or amended in any manner adverse to the Purchaser without the Purchaser's prior written consent;
- by the Purchaser if the Sellers fail to use commercially reasonable efforts to require that Qualified Bids are due no later than May 19, 2010;
- by the Purchaser if the Sellers fail to have held and closed the Auction on or prior to May 28, 2010, provided that the Purchaser shall not have the right to terminate the APA if no Qualified Bids other than the Stalking Horse Bid are received pursuant to the Bid Procedures;
- by the Purchaser if (i) the Confirmation Order shall not have been entered by the Bankruptcy Court by June |

| | |
|---|---|
| | 1, 2010 or (ii) following entry of the Confirmation Order, the Confirmation Order shall (A) fail to be in full force and effect, (B) have been reversed, (C) have been stayed and such stay shall continue to be in effect for more than fifteen days, or (D) have been modified or amended in any manner adverse to the Purchaser without the Purchaser's prior written consent;<br><br>• by either party if any Seller has entered into, or shall have publicly announced its intention to enter into an agreement in principle, letter of intent, memorandum of understanding, definitive agreement or other arrangement, with any Person (other than the Purchaser or its Affiliates) with respect to any Alternative Transaction except in the event that entering into such agreement or document, or such announcement, relates to an Alternative Transaction with the Successful Bidder and the Purchaser is the Second-Highest Bidder;<br><br>• automatically upon consummation of an Alternative Transaction;<br><br>• by the Purchaser if there is a Material Adverse Effect;<br><br>• by either party if (a) the other shall have breached or failed to perform any of its representations, warranties, covenants or other agreements contained in the APA, or if any representation or warranty shall have become untrue, and (b) any such occurrence would result in a failure of any condition set forth in Sections 9.3(a)-(c) or 9.2(a)-(b), as applicable, of the APA and is not curable or able to be performed, or, if curable or able to be performed, is not cured or performed prior to the earlier of (x) the Outside Date and (y) twenty (20) days after written notice of such breach, failure or occurrence is delivered to the breaching party;<br><br>• by the Sellers if all of the conditions set forth in Section 9.1, Section 9.2 and Section 9.3 of the APA have been satisfied or waived and the Purchaser fails to deliver any portion of the Closing Date Purchase Price (other than the Deposit, the Aggregate Reserve Amount and the Aggregate Alleged Tax Liability Amount);<br><br>• by the Purchaser if all of the conditions set forth in Section 9.1, Section 9.2 and Section 9.3 of the APA have been satisfied or waived and the Sellers fail to consummate the transactions contemplated by the APA; and<br><br>• by the Purchaser if the Sellers fail to pay the Expense Amount, which failure continues for five (5) Business Days after the Expense Amount was initially due. |
| **Break-Up Fee; Tail; Reimbursement Amount**<br><br>**(Section 3.6)** | The Sellers shall pay a Break-Up Fee equal to 3.0% of the Pre-Adjusted Purchase Price as liquidated damages in the event that:<br><br>• either party terminates the APA in connection with entry into or announcement of an Alternative Transaction (subject to certain exceptions);<br>• Purchaser terminates after closing conditions have been satisfied or waived but the Sellers fail to consummate; or<br>• an Alternative Transaction is consummated.<br><br>In the event that the APA is terminated for any of the following reasons and the Sellers, within six (6) months of the effective date of such termination, enter into a binding written definitive agreement with respect to an Alternative |

DB02:9344607.1    068401.1001

| | |
|---|---|
| | Transaction with any Person other than the Purchaser or its Controlling Affiliates, the Sellers shall pay the Break-Up Fee:<br><br>- closing does not occur by the Outside Date;<br>- issues relating to the Approval Motion and the Approval Order;<br>- the Sellers fail to use commercially reasonable efforts to require that Qualified Bids be timely due;<br>- the Auction is not held and closed by the specified date;<br>- issues relating to the Confirmation Order;<br>- the Sellers' breach or failure to perform their agreements under the APA; and<br>- the Sellers' failure to pay the Expense Amount, which failure goes uncured for 5 business days.<br><br>The Sellers shall pay the Reimbursement Amount, up to a maximum amount of $1,000,000, for the Purchaser's fees and expenses in the event that the APA is terminated pursuant to the events listed above giving rise to the payment of the Break-Up Fee, and also in the following situations: the APA is terminated as a result of a legal bar, the Chapter 11 Cases being dismissed or converted or a Material Adverse Effect having occurred. The Reimbursement Amount is exclusive of the Expense Amount.<br><br>In the event that the Sellers terminate the APA for either of the following reasons, the Sellers will be entitled to the disbursement of the escrow deposit, including all interest and other earnings accrued and earned thereon, as liquidated damages:<br><br>- the Purchaser breaches or fails to perform its agreements under the APA; or<br>- all of the conditions set forth in Section 9.1, Section 9.2 and Section 9.3 of the APA have been satisfied or waived and the Purchaser fails to deliver any portion of the Closing Date Purchase Price (other than the Deposit, the Aggregate Reserve Amount and the Aggregate Alleged Tax Liability).<br><br>Disbursement of the deposit held in escrow as described above shall be the Sellers' sole remedy against the Purchaser. |
| **Employees**<br><br>**(Section 6.1)** | With certain limited exceptions, the Purchaser shall offer at will employment to all employees of the Sellers. Such employment shall be at substantially the same hourly wage rate or salary level (excluding performance-based or incentive compensation, bonuses and equity-based compensation) and position in effect immediately prior to closing, except with respect to Assumed Employment Contracts and New Employment Contracts, which terms shall govern the employment of such transferred employees. |
| **Competing Bids and Auction**<br><br>**(Section 7.2)** | Between the Execution Date and the entry of the Approval Order, the Sellers shall not, directly or indirectly, (i) solicit, initiate, encourage or discuss any proposal or offer relating to any Alternative Transaction; (ii) furnish any information or facilitate or seek an Alternative Transaction or (iii) seek or support the Bankruptcy Court approval of a motion or order inconsistent with the APA. However, the Bid Procedures provide that the Sellers will have a marketing period of between 4 and 8 weeks and the ability to conduct in Auction as a means of attracting competing bids. |

- 4 -

| | |
|---|---|
| **Affirmative Interim Operating Covenants** (Section 8.1(a)) | The Sellers must:<br>• conduct the Business and operate and maintain their assets and properties in the Ordinary Course of Business;<br>• maintain and keep their properties and Equipment in good repair, working order and condition (normal wear and tear excepted);<br>• maintain in full force and effect the Insurance Policies;<br>• use commercially reasonable best efforts to preserve the goodwill of and relationships with governmental bodies, customers, suppliers, vendors, distributors and other parties having business dealings with the Sellers in connection with the Business and comply with all applicable Laws and preserve assets; and<br>• with respect to compliance with Environmental Laws, continue with any required remedial activities to address any Release or threatened Release of Hazardous Materials and operate and maintain its assets and properties in material compliance with Environmental Laws. |
| **Negative Interim Operating Covenants** (Section 8.1(b)) | Without consent from the Purchaser, or as required by law or the courts, the Sellers must not, among other things:<br>• acquire any material assets other than in the Ordinary Course of Business;<br>• sell, lease, transfer or assign any material assets or properties other than sales of Inventory in the Ordinary Course of Business or the disposition of obsolete or immaterial assets;<br>• accelerate, terminate (other than at its stated expiry date), extend, modify or amend in any material respect or cancel any Material Contract;<br>• impose, suffer or create any Encumbrance (other than Permitted Encumbrances) upon any assets or properties;<br>• incur or make any capital expenditures, except to the extent permitted by the DIP Credit Agreement;<br>• create, incur, assume or guarantee any Indebtedness, except Indebtedness (other than Indebtedness for borrowed money) in the Ordinary Course of Business;<br>• agree to any change in the rate of compensation, commission, bonus or other direct or indirect remuneration to or in respect of, any executive officers, directors or Significant Employees, other than the payment of bonuses and increases in base compensation made in the Ordinary Course of Business;<br>• fail to make any planned capital expenditures or capital additions when and as contemplated by the 2011 Capital Budget;<br>• make any material addition to or modification of any Seller Plan, other than (x) contributions to any Seller Plan made in the Ordinary Course of Business or (y) the extension of coverage to employees of such Seller who became eligible after the Execution Date;<br>• terminate any executive officer, director or Significant Employee of such Seller, unless such termination is for cause; |

| | |
|---|---|
| | - make any distributions or dividends of the assets or properties of the Sellers (other than Excluded Assets) in respect of outstanding securities of the Sellers;
- fail to manage working capital of the Business in the ordinary course of business since the Filing Date (including by failing to replenish Inventory in the normal and customary manner consistent with past practices and taking any action or failing to take any action that has the effect of accelerating sales to customers or other revenues, receivables or collections from customers or other Persons that would otherwise be expected to take place or be incurred at a later date, or postpone the payment of any accounts payable);
- institute, settle or agree to settle any litigation, proceeding or other Action before any court or other governmental body
- make any material changes in policies or practices relating to selling practices, returns, discounts or other terms of sale of the products and/or services of the Business, or in respect of the payment of trade accounts payable or other similar Liabilities incurred in connection with the Business;
- make any material change in the nature of the Business;
- amend or change any of the Seller Organizational Documents; or
- make any distributions intended to be made under the Plan or make any payments or other distributions in respect of the claims, expenses or other items that fall within certain scheduled categories, except as permitted pursuant to the Bankruptcy Code or an order entered by the Bankruptcy Court. |
| **Expense Amount**<br><br>(Section 8.12) | No later than 2 business days following entry of the Bid Procedures Order, the Sellers shall pay an amount up to $1,750,000 in cash to cover fees and disbursements of the Purchaser's and its Affiliates' counsel through the date of entry of the Bid Procedures Order. |
| **Closing Conditions**<br><br>(Article 9) | <u>Mutual</u><br>- No legal restraint or prohibition preventing the consummation of the transactions.
- Receipt of requisite consents, filings or approvals of regulatory and other governmental bodies.
- Bankruptcy Court shall have entered the Approval Order and the Confirmation Order, with each such order being a Final Order.<br><br><u>Conditions Precedent to the Sellers' Obligations</u><br>- Each of (i) the representations and warranties of the Purchaser that are not qualified as to "materiality" or "material adverse effect" shall be true and correct in all material respects and (ii) the representations and warranties of the Purchaser that are qualified as to "materiality" or "material adverse effect" shall be true and correct, in each case, at and as of the Execution Date and at and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date), and the Sellers shall have received an officer's certificate to that effect. |

DB02:9344607.1    068401.1001

- The Purchaser shall have performed and complied in all material respects with all obligations and agreements required by the APA and the Sellers shall have received an officer's certificate to that effect.
- Delivery of all closing deliverables by the Purchaser.
- Evidence of all necessary limited liability company action by the Purchaser in connection with the transactions contemplated by the APA, including resolutions or a written consent approving the transactions and an incumbency certificate.

Conditions Precedent to the Purchaser's Obligations

- Each of (i) the representations and warranties of each Seller that are not qualified as to "materiality" or "Material Adverse Effect" shall be true and correct in all material respects and (ii) the representations and warranties of each Seller that are qualified as to "materiality" or "Material Adverse Effect" shall be true and correct in all respects, in each case, at and as of the Execution Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date), and the Purchaser shall have received an officer's certificate to that effect.
- Each of (i) the representations and warranties of each Seller set forth in Section 4.1 (Corporate Organization and Qualification), Section 4.3 (Authority Relative to this Agreement), Section 4.5(r) (Absence of Certain Developments - MAE), Section 4.10 (Brokers and Finders), and Section 4.11(a) (Title to Assets) shall be true and correct in all respects and (ii) the other representations and warranties of each Seller in this Agreement shall be true and correct in all respects (without regard to "materiality" or "Material Adverse Effect" qualifiers) except where such failure would not, individually or in the aggregate, have a Material Adverse Effect, in each case, at and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date), and the Purchaser shall have received an officer's certificate to that effect.
- The Sellers shall have performed and complied in all material respects with all obligations and agreements required by the APA and the Purchaser shall have received an officer's certificate to that effect.
- Delivery of all closing deliverables by the Sellers.
- Receipt of all scheduled consents, approvals, orders and/or Permits (as applicable), or evidence of the making or filing of the scheduled registrations, declarations, notifications and/or filings (as applicable).
- The Plan and Disclosure Statement, each as approved by the Bankruptcy Court, shall be in form and substance acceptable to the Purchaser (it being understood and agreed that copies of the Plan and Disclosure Statement provided to the Purchaser on the Execution Date are in form and substance satisfactory to the Purchaser).
- The conditions to each of confirmation and the Effective Date set forth in the Plan shall have been satisfied or waived and the Effective Date shall have occurred.
- Each Seller that holds a seller's permit under the Laws of the State of Wisconsin shall have delivered such permit to the Wisconsin Department of Revenue for cancellation.

|  | |
|---|---|
| | - The Sellers must have an aggregate amount of $19,000,000 in cash on hand.
- No Material Adverse Effect since the date of the APA. |
| **Tax**<br><br>(Section 11.1) | The Sellers shall indemnify and hold harmless the Purchaser from any claims, charges, interest or penalties imposed in connection with Transfer Taxes, which indemnification may be satisfied out of the escrow account. |
| **Specific Performance** | The Purchaser has the right to specific performance and may seek a court order requiring the Sellers to perform their obligations under the APA if all of the conditions have been satisfied or waived and the Sellers choose not to perform. The Sellers do not have a similar right to specific performance and have as their sole remedy for Purchaser's breach of its obligations the is the liquidated damages provision described above. |

DB02:9344607.1

068401.1001