# Exhibit 3

**Waiver, Consent and Amendment No. 1 to APA**

# WAIVER, CONSENT AND AMENDMENT NO. 1
# TO ASSET PURCHASE AGREEMENT

WAIVER, CONSENT AND AMENDMENT NO. 1 TO ASSET PURCHASE AGREEMENT (as amended, supplemented, amended and restated or otherwise modified from time to time, this "<u>Amendment</u>"), dated as of March 26, 2010 (the "<u>Effective Date</u>"), by and among (a)(i) RG Tube Holdings LLC, a Delaware limited liability company ("<u>RG Tube</u>"), (ii) RGCH Holdings Corp., a Delaware corporation ("<u>RGCH</u>"), (iii) RathGibson, Inc., a Delaware corporation ("<u>RathGibson</u>"), and (iv) Greenville Tube Company, a Delaware corporation ("<u>Greenville</u>" and, together with RG Tube, RGCH and RathGibson, each a "<u>Seller</u>" and, collectively, the "<u>Sellers</u>"), and (b) RathGibson Acquisition Co., LLC, a Delaware limited liability company (together with its successors and permitted assigns, the "<u>Purchaser</u>"). The Sellers and the Purchaser are sometimes referred to herein, each a "<u>Party</u>" and, collectively, the "<u>Parties</u>".

## W I T N E S S E T H:

WHEREAS, the Parties entered into an Asset Purchase Agreement, dated as of March 8, 2010 (as amended, supplemented, amended and restated or otherwise modified from time to time, the "<u>Purchase Agreement</u>");

WHEREAS, the Sellers have requested that the Purchaser grant certain waivers, consents and approvals, and agree to amend the Purchase Agreement in certain respects; and

WHEREAS, the Purchaser is willing to grant such consents, waivers and approvals, and amend the Purchase Agreement as requested by the Sellers on the terms set forth herein.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein, the Parties hereby agree as follows:

1. <u>Defined Terms</u>. Unless otherwise defined herein, terms used herein and defined in the Purchase Agreement are used herein as defined in the Purchase Agreement.

2. <u>Waivers and Consents</u>.

(a) Effective as of the Effective Date, the Purchaser hereby grants all waivers and consents that may be necessary or required under Section 8.1 of the Purchase Agreement to permit RathGibson to pledge up to $250,000 of cash and/or cash equivalents (the "<u>Wells LC Cash Collateral</u>") to Wells Fargo Bank, National Association ("<u>Wells Fargo</u>") as collateral for reimbursement obligations related to one or more irrevocable standby letters of credit (collectively, the "<u>Wells Letters of Credit</u>") issued by Wells Fargo for the account of RathGibson and for the benefit of certain beneficiaries from time to time that are necessary or required for the operation of the Business in the ordinary course, including, without limitation, that certain Wells Letter of Credit issued by Wells Fargo for the account of RathGibson and for the benefit of Avalon Risk Management Insurance Agency, LLC in the original face amount of $50,000. The Sellers hereby acknowledge and agree that its rights, title and interest with respect to the Wells LC Cash Collateral (to the extent not used to satisfy reimbursement obligations under the Wells

Letters of Credit) shall constitute a Purchased Asset and shall be subject to the terms of the Purchase Agreement.

(b)     Effective as of the Effective Date, the Purchaser hereby waives any and all right to terminate the Purchase Agreement under Section 3.4(e)(ii) of the Purchase Agreement; provided, that the Bid Procedures Order in the form attached hereto as Annex A (with such changes thereto that are approved by the Purchaser in its discretion, the "Entered BPO") is entered by the Bankruptcy Court by 11:59 p.m. (New York City time) on April 9, 2010. The Sellers hereby understand, acknowledge and agree that (i) the Entered BPO is not acceptable to the Purchaser, (ii) absent the waiver by the Purchaser set forth in this Section 2(b), the Purchaser would have the right to terminate the Purchase Agreement pursuant to Section 3.4(e)(ii) of the Purchase Agreement, and (iii) the willingness of the Purchaser to (w) execute and deliver this Amendment, (x) grant the waiver set forth in this Section 2(b), (y) not terminate the Purchase Agreement on account of the Bid Procedures Order being entered in the form of the Entered BPO, which is unacceptable to the Purchaser and (z) proceed with the transactions contemplated by the Purchase Agreement on the terms set forth therein, is expressly conditioned upon, and being done in reliance upon, the right of the Purchaser to receive a return of the Deposit and payment of the Break-Up Fee and the Reimbursement Amount as set forth in, and subject to, Section 3.6(b) of the Purchase Agreement. Without limiting the generality of Section 6(a) of this Amendment, the Sellers further acknowledge and agree that the waiver by the Purchaser set forth in this Section 2(b) of the Purchaser's right to terminate the Purchase Agreement shall not operate or be construed as a further or continuing waiver of its right to terminate the Purchase Agreement pursuant to any provision of the Purchase Agreement (other than Section 3.4(e)(ii) of the Purchase Agreement as described, and subject to the limitations set forth, in this Amendment), all of which rights are hereby reserved in full.

3.     Amendments. Each of the Parties hereby agrees that, effective upon the Effective Date, the Purchase Agreement shall be amended as follows:

(a)     Section 3.3 of the Purchase Agreement shall be amended by (i) deleting the "and" at the end of Section 3.3(c), (ii) deleting the period at the end of Section 3.3(d) and inserting "; and" in lieu thereof, and (iii) adding a new Section 3.3(e) to read as follows:

"(e)     immediately after giving effect to the transfer and delivery of the Purchased Assets pursuant to Section 1.1, $500,000 to Purchaser's Counsel, solely in its capacity as counsel to certain holders of the Senior Notes, in respect of fees and disbursements of Purchaser's Counsel incurred in connection with the representation of such holders in the Chapter 11 Cases, which shall be paid to Purchaser's Counsel pursuant to Section 8.12."

(b)     Section 3.4(e) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"(e)     by the Purchaser, if (i) the Approval Motion is not filed with the Bankruptcy Court within one (1) Business Day after the Execution Date, (ii) the Approval Order shall not have been entered by the Bankruptcy Court by 11:59 p.m. (New York City time) on April 9, 2010 or (iii) following entry of the

2

Approval Order, the Approval Order shall (A) fail to be in full force and effect, (B) have been reversed, (C) have been stayed and such stay shall continue to be in effect for more than fifteen (15) days, or (D) have been modified or amended in any manner adverse to the Purchaser without the prior written consent of the Purchaser;"

(c) Section 3.4(i) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"(i) by the Purchaser or the Sellers, if any Seller has entered into, or shall have publicly announced its intention (including by means of any filings made with the Bankruptcy Court or any other Governmental Body) to enter into, an agreement in principle, letter of intent, memorandum of understanding, definitive agreement or other arrangement, whether binding or non-binding, or whether subject to terms and conditions, with any Person (other than the Purchaser or its Affiliates) with respect to any Alternative Transaction except, subject to the terms of the Bid Procedures, in the event that entering into such agreement or document, or such announcement, relates to an Alternative Transaction with the Successful Bidder and the Purchaser is the Second-Highest Bidder; provided, however, that the Purchaser shall have the right to terminate this Agreement pursuant to this Section 3.4(i) (x) on or at any time after the twentieth (20th) day following the date which is twenty (20) days after the date of the entry of the Confirmation Order unless the Purchaser becomes the Successful Bidder on or prior to such date and/or (y) immediately following the conclusion of the Confirmation Hearing if the Purchaser is not the Successful Bidder and the Bankruptcy Court has not approved or does not approve, as applicable, payment by the Sellers to the Purchaser of the Break-Up Fee and the Reimbursement Amount as an administrative expense under section 503 of the Bankruptcy Code (or other applicable Law) prior to or in connection with the Confirmation Hearing;"

(d) Section 3.4(p) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"(p) by the Purchaser, if the Sellers fail to pay the Expense Amount within five (5) Business Days after the payment of the Expense Amount is approved by the Bankruptcy Court."

(e) Section 3.6(b) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"(b) If (i) the Purchaser or the Sellers, as applicable, terminate this Agreement pursuant to Section 3.4(i), (ii) the Purchaser terminates this Agreement pursuant to Section 3.4(o) or (iii) this Agreement terminates automatically pursuant to Section 3.4(j), then (A) the Purchaser shall be entitled to disbursement of the Deposit (including, for the avoidance of doubt, all interest and other earnings accrued and earned thereon) from the Escrow Account and (B)

the Sellers shall pay to the Purchaser a fee in the amount of three percent (3.0%) of the Pre-Adjusted Purchase Price (the "Break-Up Fee") as liquidated damages. In the event this Agreement is terminated pursuant to Section 3.4(b), Section 3.4(c), Section 3.4(d), Section 3.4(e), Section 3.4(f), Section 3.4(g), Section 3.4(h), Section 3.4(i), Section 3.4(j), Section 3.4(k), Section 3.4(l), Section 3.4(o) or Section 3.4(p), then (x) the Sellers shall reimburse the Purchaser for all of the Purchaser's reasonable documented third party or out-of-pocket fees and expenses (including reasonable documented attorneys' fees and disbursements) incurred in connection with the negotiation, execution and consummation of this Agreement and the transactions contemplated hereby in a maximum amount of $1,000,000 (exclusive of the Expense Amount) (the "Reimbursement Amount"), and (y) to the extent the Purchaser is not already entitled to disbursement of the Deposit pursuant to the immediately preceding sentence, the Purchaser shall be entitled to disbursement of the Deposit (including, for the avoidance of doubt, all interest and other earnings accrued and earned thereon). In the event this Agreement is terminated pursuant to Section 3.4(b), Section 3.4(e), Section 3.4(f), Section 3.4(g), Section 3.4(h), Section 3.4(l), or Section 3.4(p), if within six (6) months after the effective date of any such termination any Seller enters into a binding written definitive agreement with any Person, other than the Purchaser or its Controlling Affiliates, with respect to any Alternative Transaction, the Sellers shall pay the Break-Up Fee to the Purchaser as liquidated damages. In the event this Agreement is terminated pursuant to Section 3.4(a), the Purchaser shall be entitled to disbursement of the Deposit (including, for the avoidance of doubt, all interest and other earnings accrued and earned thereon) from the Escrow Account. The parties expressly agree and acknowledge that it would be extremely difficult or impracticable to ascertain the actual damages that would be incurred by the Purchaser in the event of a termination of this Agreement pursuant to the Sections of this Agreement referenced above in this Section 3.6(b) and that the return of the Deposit and the payment of the Break-Up Fee and the Reimbursement Amount, as and if applicable pursuant to this Section 3.6(b), represent the parties' reasonable estimate of the damages that would be incurred by the Purchaser in the event of any such termination of this Agreement. The parties further expressly agree and acknowledge that the right of the Purchaser to receive the Break-Up Fee and the Reimbursement Amount, and the obligation of the Sellers to pay the Break-Up Fee and the Reimbursement Amount, pursuant to this Section 3.6(b) shall be subject to the approval by the Bankruptcy Court, and the Purchaser shall be entitled to seek approval by the Bankruptcy Court of the payment by the Sellers of the Break-Up Fee and the Reimbursement Amount as an administrative expense under section 503 of the Bankruptcy Code (or other applicable Law) and the Sellers shall use their commercially reasonable efforts to support the Purchaser's request for such approval (including, without limitation, filing supporting affidavits, motions and pleadings on behalf of the Sellers, and providing testimony of the Sellers if reasonably requested by the Purchaser, and using commercially reasonable efforts to cause its advisors to file supporting affidavits, motions and pleadings and to provide testimony if reasonably requested by the

Purchaser), shall take such commercially reasonable actions reasonably requested by the Purchaser to facilitate the obtaining of such approval. If the payment by the Sellers of the Break-Up Fee and/or the Reimbursement Amount to the Purchaser is approved by the Bankruptcy Court, then, without limiting or prejudicing the Purchaser's rights under Section 12.10 (all of such rights being hereby reserved and unaffected by the terms of this Section 3.6(b) unless this Agreement is validly terminated in accordance with Section 3.4), the Purchaser's right to receive the Deposit and, if the Break-Up Fee and/or the Reimbursement Amount is approved by the Bankruptcy Court, the Break-Up Fee and/or the Reimbursement Amount (whichever is approved) pursuant to this Section 3.6(b) and, to the extent provided in Section 3.6(d), any Collection Costs, shall be the sole and exclusive remedy available to the Purchaser and its Affiliates against the Sellers and the other Seller Parties for any loss or damage suffered as a result of the failure of the transactions contemplated by this Agreement and/or the Ancillary Agreements to be consummated or for a breach or failure to perform under this Agreement or otherwise and upon payment of such amounts, none of the Seller Parties shall have any further Liability relating to or arising out of this Agreement or the transactions contemplated by this Agreement (all such further Liabilities being hereby fully waived, released and forever discharged). The parties expressly agree and acknowledge that the right of the Purchaser to receive a return of the Deposit and payment of the Break-Up Fee and the Reimbursement Amount as set forth in this Section 3.6(b) (and not the right of the Purchaser to seek approval from the Bankruptcy Court of such right), is actually necessary to preserve the value of the Sellers' estates."

(f) The second sentence of Section 3.6(d) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"In the event that this Agreement is terminated pursuant to Section 3.4 and the Sellers are required, pursuant to a final non-appealable order of the Bankruptcy Court, to pay to the Purchaser the Break-Up Fee and/or the Reimbursement Amount, then the Sellers shall pay such approved amount(s) to the Purchaser in cash, by wire transfer of immediately available funds to an account designated by the Purchaser, within two (2) Business Days following the effective date of any such termination; provided, however, that in the event that the Sellers are required to pay the Break-Up Fee pursuant to the third sentence of Section 3.6(b), the Sellers shall pay the Break-Up Fee within two (2) Business Days following the date any Seller enters into the binding written definitive agreement described in such third sentence of Section 3.6(b)."

(g) Section 7.1(a) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"(a) No later than the close of business on the date that is one (1) Business Day following the Execution Date, the Sellers shall file with the Bankruptcy Court the Approval Motion. To the extent approved by the Bankruptcy Court, the Break-Up Fee, the Reimbursement Amount, the Collection

5

Costs and the Expense Amount shall constitute allowed administrative claims against the Sellers' estates under section 503 of the Bankruptcy Code. The Sellers shall comply in all material respects with, and take no actions inconsistent with, all of the terms and conditions contained in the Approval Order (including, without limitation, the Bid Procedures and the Assumption and Assignment Procedures) including the occurrence of the events by the dates and the times set forth therein, all of which are expressly incorporated herein by reference."

(h) Section 8.12 of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"8.12 Expenses. If (x) this Agreement is terminated pursuant to Section 3.4 (other than a termination pursuant to Section 3.4(a), Section 3.4(b), Section 3.4(c), Section 3.4(m) or Section 3.4(n)) or (y) the Purchaser is the Second-Highest Bidder, the Purchaser shall be entitled to seek approval by the Bankruptcy Court of the payment by the Sellers, as an administrative expense under section 503 of the Bankruptcy Code (or other applicable Law), of an amount up to $1,750,000 (exclusive of the Reimbursement Amount) (the "Expense Amount") in respect of the reasonable documented fees and disbursements of the Purchaser's Counsel, in its capacity as counsel to the Purchaser and in its capacity as counsel to certain holders of the Senior Notes, incurred by the Purchaser or any of its Affiliates or any such holders of Senior Notes through (and including) the date on which the Bankruptcy Court enters the Bid Procedures Order in connection with (a) the negotiation, preparation, documentation, execution, delivery, implementation and/or consummation of this Agreement and the transactions contemplated hereby and (b) the restructuring of the Sellers and the negotiation, preparation, documentation, execution, delivery, implementation, filing and/or consummation of the Chapter 11 Cases and the Plan, the Disclosure Statement and all related agreements, pleadings, motions filings and documents. The Sellers shall use commercially reasonable efforts to support the Purchaser's request for such approval and shall take such commercially reasonable actions reasonably requested by the Purchaser to facilitate the obtaining of such approval (including, without limitation, filing supporting affidavits, motions and pleadings on behalf of the Sellers, and providing testimony of the Sellers if reasonably requested by the Purchaser, and using commercially reasonable efforts to cause its advisors to file supporting affidavits, motions and pleadings and to provide testimony if reasonably requested by the Purchaser). The Purchaser agrees that if the Closing occurs, the Purchaser shall, on the Closing Date, use cash that is a Purchased Asset to pay $500,000 of fees and disbursements of the Purchaser's Counsel, solely in its capacity as counsel to certain holders of the Senior Notes, that are incurred prior to the date the Bid Procedures Order is entered by the Bankruptcy Court in connection with such Purchaser's Counsel's representation of such holders in the Chapter 11 Cases."

(i) Section 9.3(j) of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

"(j) on the Closing Date, the Sellers shall have an aggregate amount of cash on hand in an amount not less than $20,750,000 (excluding the RG Tube/RGCH Cash Amount and including the IRB Payoff Cash Amount), less the Expense Amount to the extent paid by the Sellers to the Purchaser on or prior to the Closing Date (other than a payment made by delivering the Purchased Assets to the Purchaser at the Closing); and"

(j) The definition of "Base Net Working Capital Value" set forth in Section 10.1 of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

""Base Net Working Capital Value" means $73,550,000, less the Expense Amount to the extent paid by the Sellers to the Purchaser on or prior to the Closing Date (other than a payment made by delivering the Purchased Assets to the Purchaser at the Closing)."

(k) The definition of "Bid Procedures Order" set forth in Section 10.1 of the Purchase Agreement shall be amended and restated in its entirety to read as follows:

""Bid Procedures Order" means an order of the Bankruptcy Court in the form of Annex A attached to Amendment No. 1 to APA or such other form as the Purchaser may approve in its discretion as it relates to any of the Specified Matters."

(l) Section 10.1 of the Purchase Agreement is amended by adding the following new defined term in appropriate alphabetical order:

""Amendment No. 1 to APA" means Waiver, Consent and Amendment No. 1 to Asset Purchase Agreement, dated as of March 26, 2010, by and among the Sellers and the Purchaser, as amended, supplemented, amended and restated or otherwise modified from time to time."

""Senior Notes" means RathGibson's 11.25% senior notes due 2014, as amended, supplemented, amended and restated, modified, increased, replaced, reissued or extended from time to time."

4. Acknowledgment. The Sellers understand, acknowledge and agree that the willingness of the Purchaser to (w) execute and deliver this Amendment, (x) grant the waiver set forth in Section 2(b) of this Amendment, (y) not terminate the Purchase Agreement on account of the Bid Procedures Order being unacceptable to the Purchaser as set forth in (and subject to the conditions set forth in) Section 2(b) of this Amendment and (z) proceed with the transactions contemplated by the Purchase Agreement on the terms set forth therein, is expressly conditioned upon, and being done in reliance upon, the right of the Purchaser to receive, a return of the Deposit and payment of the Break-Up Fee and the Reimbursement Amount as set forth in, and subject to the terms of, Section 3.6(b) of the Purchase Agreement, as amended by this Amendment.

5. Effectiveness. The waivers, consents, amendments and acknowledgments set forth in this Amendment shall become effective as of the Effective Date.

6. Miscellaneous.

(a) Except as expressly provided herein, this Amendment shall not, by implication or otherwise, alter, modify, amend or in any way affect any of the obligations, covenants or rights (including, without limitation, rights to terminate the Purchase Agreement) contained in the Purchase Agreement, all of which are ratified and confirmed in all respects by the Parties and shall continue in full force and effect.

(b) Each reference to the Purchase Agreement hereafter made in any document, agreement, instrument, notice or communication shall mean and be a reference to the Purchase Agreement amended and modified hereby.

(c) THIS AMENDMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH FEDERAL BANKRUPTCY LAW, TO THE EXTENT APPLICABLE, AND WHERE STATE LAW IS IMPLICATED, THE LAWS OF THE STATE OF NEW YORK SHALL GOVERN, WITHOUT GIVING EFFECT TO THE CHOICE OF LAW PRINCIPLES THEREOF (EXCEPT SECTIONS 5-1401 AND 5-1402 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.

(d) The Section captions herein are for convenience of reference only, do not constitute part of this Amendment and shall not be deemed to limit or otherwise affect any of the provisions hereof.

(e) This Amendment, together with the Purchase Agreement and the Ancillary Agreements, constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings among the Parties with respect to such subject matter.

(f) For the convenience of the Parties, this Amendment may be executed and delivered (by facsimile or PDF signature) in any number of counterparts, each such counterpart being deemed to be an original instrument, and all such counterparts shall together constitute the same agreement.

(g) If any term, condition or other provision of this Amendment is invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other terms, conditions and provisions of this Amendment shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in a manner adverse to any Party. Upon such determination that any term, condition or other provision is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Amendment so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the fullest extent possible.

(h) The words "include," includes" and "including," when used herein shall be deemed in each case to be followed by the words "without limitation" (regardless or whether such words or similar words actually appear). Any reference in this Amendment to gender shall include all genders, and words imparting the singular number only shall include the plural and

vice versa. The words such as "herein," "hereinafter," "hereof" and "hereunder" refer to this Amendment as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

(i) The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Amendment and, therefore, waive the application of any Law, regulation, holding or rule of construction providing that ambiguities in an agreement or other document shall be construed against the party drafting such agreement or document.

[Remainder of Page Intentionally Left Blank.]

IN WITNESS WHEREOF, each Party has caused this Amendment to be duly executed and delivered as of the date first above written.

**SELLERS:**

**RATHGIBSON, INC.**

By: /s/ Michael Schwartz
Name: Michael Schwartz
Title: President, CEO and COO

**GREENVILLE TUBE COMPANY**

By: /s/ Michael Schwartz
Name: Michael Schwartz
Title: President

**RG TUBE HOLDINGS LLC**

By: /s/ Michael Schwartz
Name: Michael Schwartz
Title: President and CEO

**RGCH HOLDINGS CORP.**

By: /s/ Michael Schwartz
Name: Michael Schwartz
Title: President and CEO

[Signature Page to Waiver, Consent and Amendment No. 1 to Asset Purchase Agreement]

**PURCHASER:**

**RATHGIBSON ACQUISITION CO., LLC**

By: _/s/ John E. Foley_
Name:
Title: