# EXHIBIT A

# Bid Procedures

# BID PROCEDURES

Set forth below is the general process to be employed by the Debtors with respect to the proposed sale of all or substantially all of the Debtors' assets (the "Purchased Assets").

a. **Assets to Be Sold.** The Debtors are offering the Purchased Assets for sale pursuant to the Plan (the "Plan Sale"). The Debtors shall retain all rights and title to assets that are not subject to a bid accepted by the Debtors and approved by the Bankruptcy Court[1] at the Confirmation Hearing (defined below).

b. **The Bidding Process.** The Debtors, in consultation with the Committee, shall: (i) determine whether any person is a Potential Bidder (as defined below); (ii) coordinate the efforts of Potential Bidders in conducting their respective due diligence investigations regarding the Debtors' businesses; (iii) receive offers from Qualified Bidders (as defined below); and (iv) negotiate any offer made to purchase the Purchased Assets together or separately by a Qualified Bidder (collectively, the "Bidding Process"). Neither the Debtors nor their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Purchased Assets to any person who is not a Potential Bidder.

c. **Due Diligence for Potential Bidders.** The Debtors shall afford each Potential Bidder reasonable due diligence information. Due diligence access shall be provided upon reasonable request to the Debtors, at the discretion of the Debtors and within their reasonable business judgment. Neither the Debtors nor any of their affiliates (nor any of their respective representatives) are obligated to furnish any information relating to the Purchased Assets to any person except to Potential Bidders (prior to the Bid Deadline (as defined below)). Potential Bidders are advised to exercise their own discretion before relying on any information regarding the Purchased Assets, whether provided by the Debtors or their representatives or any other party. The due diligence period will end on the Bid Deadline. To be a "Potential Bidder", each bidder (other than the Stalking Horse) must have delivered the following:

   i. an executed confidentiality agreement in form and substance satisfactory to the Debtors, which confidentiality agreement, in the aggregate, is no less restrictive to the Potential Bidder than the confidentiality agreement(s) executed by the Stalking Horse, but in no event shall the restriction on disclosure and use of confidential information set forth in the Potential Bidder's confidentiality agreement terminate earlier than twelve (12) months after the date of execution of such confidentiality agreement; and

   ii. the most current audited and the most current unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the motion (the "Motion") to approve, among other things, these bid procedures [Docket No. 573] or the Stalking Horse Agreement.

Purchased Assets, the Financials of the Potential Bidder's equity holder(s) or other financial backer(s), or such other form of financial disclosure and evidence acceptable to the Debtors demonstrating such Potential Bidder's financial ability to: (i) close the proposed transaction contemplated by the Stalking Horse Agreement (the "Proposed Transaction") within the time frame set forth therein; and (ii) provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Potential Bidder; provided that if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal and ability to consummate the Proposed Transaction within the time frame set forth in the Stalking Horse Agreement.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal and ability to consummate and perform obligations in connection with the Plan Sale. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by such Potential Bidder is not a Qualified Bid (as defined below).

d. **Participation Requirements.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtors in their reasonable business judgment and in consultation with the Committee, in order to participate in the Bidding Process each person that is a Potential Bidder (a "Qualified Bidder") must submit a bid that adheres to the following requirements (a "Qualified Bid"):

   i. The Qualified Bidder is prepared to consummate the transaction contemplated by the Proposed Agreement (as defined below) on or before June 16, 2010. Qualified Bidders must deliver written copies of their bids not later than 5:00 p.m. (prevailing Eastern Time) on May 12, 2010 (the "Bid Deadline") to: (i) Willkie Farr & Gallagher LLP, 787 7th Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: William M. Silverman, Esq. and Jenette A. Barrow-Bosshart, Esq.), co-counsel to the Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse and Requisite DIP

Lenders (as defined below); and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse and Requisite DIP Lenders.

ii. All Qualified Bids must be in the form of an offer letter, which letter states:

(A) that such Qualified Bidder offers to purchase all or substantially all of the Purchased Assets upon terms and conditions substantially similar to the Stalking Horse Agreement pursuant to an asset purchase agreement (together with its exhibits and schedules, the "Proposed Agreement"), three copies of which (one hard copy executed by an individual authorized to bind such Qualified Bidder and two electronic versions in Word format (one clean and one blacklined against the Stalking Horse Agreement to show amendments and modifications to the Stalking Horse Agreement)), are to be provided to the Debtors contemporaneously therewith;

(B) that such Qualified Bidder is prepared to consummate the transaction set forth in the Proposed Agreement on or before June 16, 2010, following entry of an order of this Court confirming the Plan and approving the Plan Sale to the Successful Bidder (as defined below) (the "Confirmation Order");

(C) that the offer shall remain open and irrevocable as provided below; and

(D) which of the Debtors' leases and executory contracts are to be assumed and assigned in connection with the consummation of the Qualified Bidder's bid.

iii. All Qualified Bids shall be accompanied by a deposit into escrow with the Debtors of an amount in cash equal to $10,000,000 (the "Good Faith Deposit").

iv. All Qualified Bids shall require cash to be the only form of consideration (for the avoidance doubt, other than assumed liabilities) to be delivered to the Debtors on the Closing Date.

v. All Qualified Bids shall exceed the aggregate consideration to be paid to or for the benefit of the Debtors' estates as set forth in the Stalking Horse Bid by at least $4.29 million (the "Minimum Purchase Price"), which represents the sum of: (i) a break-up fee, subject to Bankruptcy Court approval, in the amount of 3.0% of the Stalking Horse Bid to the Stalking

-3-

Horse (the "Break-Up Fee"); (ii) an expense reimbursement, subject to Bankruptcy Court approval, in an amount equal to all of the reasonable documented third-party fees and expenses incurred by the Stalking Horse in connection with the transactions contemplated by the Stalking Horse Agreement up to a maximum of $1,000,000 (the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections");[2] and (iii) $500,000.[3]

vi. All Qualified Bids shall be accompanied by satisfactory evidence, in the opinion of the Debtors, in consultation with the Committee, of the Qualified Bidder's ability to: (a) fund the purchase price proposed by the Qualified Bidder with cash on hand or other sources of immediately available funds that are not conditioned on third party approvals or other commitments and (b) otherwise perform all transactions contemplated by the Proposed Agreement.

vii. All Qualified Bids must provide for funding of all payments required under the Plan.

viii. All Qualified Bids must be on terms that are not materially more burdensome on the Debtors or conditional than the terms of the Stalking Horse Agreement.

ix. All Qualified Bids must fully disclose the identity of each entity that will be bidding for the Purchased Assets or otherwise participating in connection with such bid (including any equity holder or other financial backer if the Qualified Bidder is an entity formed for the purpose of acquiring the Purchased Assets), and the complete terms of any such participation.

x. Qualified Bids cannot contain conditions or contingencies of any kind or any other conditions precedent to such party's obligation to acquire the Purchased Assets other than as may be included in the Stalking Horse Agreement, including, without limitation, conditions or contingencies relating to: (i) the obtaining or the sufficiency of financing or (ii) the outcome of due diligence.

xi. All Qualified Bids must provide for adequate working capital financing to finance going concern operations to the extent contemplated, and to

---

[2] The $4.29 million is and shall be deemed additional consideration regardless of whether the Bid Protections are awarded to the Stalking Horse Bidder.

[3] It is the Debtors intention to utilize the additional consideration in the amount of the proposed Bid Protections to, subject to a final, non appealable order of the Bankruptcy Court, pay the Bid Protections to the Stalking Horse Bidder. For the reasons set forth in the Motion, the Debtors and the Creditors' Committee support, and intend to continue to support, the payment, subject to Bankruptcy Court approval, of the Bid Protections to the Stalking Horse Bidder.

provide adequate assurance of future performance to counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Qualified Bidder.

    xii. Qualified Bids must contain evidence that the Qualified Bidder has obtained authorization or approval from its Board of Directors (or comparable governing body) with respect to the submission of its bid and execution of the Proposed Agreement and the consummation of the transactions contemplated thereby.

    xiii. Qualified Bids must not entitle the Qualified Bidder to any termination or break-up fee, expense reimbursement or similar type of payment.

All Proposed Agreements, other than the Stalking Horse Agreement, must include a provision stating that the: (a) Base Net Working Capital Value (as defined in the Stalking Horse Agreement) and (b) Debtors' aggregate amount of cash on hand on the Closing Date, each will be reduced in the amount, if any, awarded to the Stalking Horse Bidder in respect of all or a portion of the Expense Amount pursuant to a final, non-appealable order of the Bankruptcy Court.

Pursuant to the terms and conditions of this section (d), the Debtors shall, in consultation with the Committee, notify the Qualified Bidders by the fourth day prior to the commencement of the Auction, of: (i) the Debtors' determination of, and the identity of, the Qualified Bidders; and (ii) which Qualified Bid represents the then highest or otherwise best bid (the "<u>Starting Qualified Bid</u>"). No later than the fourth day prior to the commencement of the Auction, the Debtors shall distribute copies of the Starting Qualified Bid and all other Qualified Bids to each Qualified Bidder. Notwithstanding anything in these Bid Procedures to the contrary, the Stalking Horse is deemed a Qualified Bidder, and the Stalking Horse Bid (as defined below) shall be deemed a Qualified Bid for all applicable purposes of these Bid Procedures.

e. **"As Is, Where Is."** The sale of the Purchased Assets shall be on an "as is, where is" basis, "with all faults", and without representations or warranties (express or implied) of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the Stalking Horse Agreement or the Proposed Agreement of the Successful Bidder. Except as otherwise provided in the Stalking Horse Agreement or the Proposed Agreement of the Successful Bidder, all of the Debtors' right, title and interest in and to the Purchased Assets to be acquired shall be sold pursuant to the Plan free and clear of all liens, claims, charges, security interests, restrictions and other encumbrances of any kind or nature thereon and there against (collectively, the "<u>Liens</u>"), with such Liens to be satisfied in accordance with the Plan. Each bidder (except for the Stalking Horse (whose acknowledgments and representations are contained in the Stalking Horse Agreement)), shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or Purchased Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the

completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Stalking Horse Agreement or the Proposed Agreement, as applicable.

f. **Stalking Horse.** The Stalking Horse has submitted a Qualified Bid in the amount of $93 million pursuant to the Stalking Horse Agreement, which Qualified Bid shall serve as a stalking horse bid (the "Stalking Horse Bid").

g. **[Intentionally Omitted].**

h. **Auction.** If the Debtors receive a Qualified Bid other than the Stalking Horse Bid prior to the Bid Deadline, the Debtors shall conduct an auction (the "Auction") at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019 on May 19, 2010 beginning at 11:00 a.m. (prevailing Eastern Time), or such other place (located in New York City) and time as the Debtors shall notify all Qualified Bidders, the Committee and other invitees. Only representatives of the Stalking Horse, the Debtors, the United States Trustee, the Committee, the "Requisite Lenders" under the DIP Credit Agreement (the "Requisite DIP Lenders") and any Qualified Bidders who have timely submitted Qualified Bids shall be entitled to attend the Auction. The Debtors, in consultation with the Committee, may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make overbids) for conducting the Auction, so long as such rules are not inconsistent with these Bid Procedures. Based upon the terms of the Qualified Bids received, the number of Qualified Bidders participating in the Auction, and such other information as the Debtors determine, in consultation with the Committee, is relevant, the Debtors may conduct the Auction in the manner they determine, in consultation with the Committee, will achieve the maximum value for the Purchased Assets. Bidding at the Auction will be transcribed or videotaped.

- Only a Qualified Bidder and its authorized representatives who have submitted a Qualified Bid will be eligible to participate at the Auction. At the Auction, only the Stalking Horse and other Qualified Bidders who have submitted a Qualified Bid will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the Starting Qualified Bid as disclosed to all Qualified Bidders prior to commencement of the Auction. Subsequent overbids shall be made in minimum increments of $500,000, provided that the Debtors, after consultation with the Committee, may reduce such minimum increment amount (but in no event shall such minimum increment amount be reduced to lower than $250,000); and provided further, that if the Starting Qualified Bid is the Stalking Horse Bid, then the first subsequent overbid shall be at least the Minimum Purchase Price.

- During the course of the Auction, the Debtors shall, after the submission of each Qualified Bid, promptly inform each participant which Qualified Bid reflects, in the Debtors' view (after consultation with the Committee), the highest or otherwise best offer. To the extent that such Qualified Bid

has been determined to be the highest or otherwise best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the Stalking Horse Agreement (or related ancillary agreement) or the applicable Proposed Agreement (or related ancillary agreement), other than a provision or provisions related to an increase in the cash purchase price, the Debtors shall provide notice to each participant of the value ascribed by the Debtors to any such added, deleted or modified provision or provisions.

- Each Qualified Bidder participating at the Auction will be required to confirm that: (i) it has not engaged in any collusion with respect to the bidding or the Plan Sale and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Proposed Transaction if selected as the Successful Bidder.

- The Auction may be adjourned as the Debtors, in consultation with the Committee, deem appropriate. Reasonable notice of such adjournment and the time and place (which shall be in New York City) for the resumption of the Auction shall be given to the Stalking Horse, all other Qualified Bidders who have timely submitted Qualified Bids, the United States Trustee and counsel to the Committee and the Requisite DIP Lenders.

- The Debtors shall not close the Auction until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-existing highest or otherwise best bid.

i. **Acceptance of Qualified Bids.** At the conclusion of the Auction, (i) the successful bid shall be the bid made pursuant to the order approving these Bid Procedures (the "Approval Order") that represents, in the Debtors' discretion (after consultation with the Committee), the highest or otherwise best offer (the "Successful Bid", and the Qualified Bidder who submitted the Successful Bid, the "Successful Bidder"); and (ii) the Debtors shall announce the identity of the Successful Bidder. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (a) such bid is declared the Successful Bid at the Auction, and (b) definitive documentation has been executed in respect thereof. Such acceptance by the Debtors is conditioned upon approval by the Bankruptcy Court of the Successful Bid and the entry of the Confirmation Order.

j. **Irrevocability of Certain Bids.** The Successful Bid shall remain irrevocable in accordance with the terms of the purchase agreement executed by the Successful Bidder; provided, that (i) the last bid of the bidder (the "Second-Highest Bidder") that submits the next highest or otherwise best bid (the "Second-Highest Bid") at the Auction shall be subject to the terms of such Second-Highest Bidder's purchase agreement, irrevocable until the earlier of: (a) twenty (20) days after entry of the Confirmation Order approving the Successful Bid; and (b) the date of closing of the sale to the Successful Bidder or the Second-Highest Bidder (the "Outside Back-up Date"), and (ii) subject to the terms of such Second-Highest Bidder's purchase agreement, the Good Faith Deposit of the

-7-

Second-Highest Bidder shall be returned within two (2) business days of the Outside Back-up Date; and provided further, that in accordance with the Stalking Horse Agreement, the Stalking Horse shall have no obligation to serve as the Second-Highest Bidder (and its bid shall not be irrevocable under this section (j)) if the Bankruptcy Court does not approve the payment to the Stalking Horse of the Bid Protections prior to or in connection with the Confirmation Hearing. The identity of the Second-Highest Bidder and the amount and material terms of the Second-Highest Bid shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder. Following the entry of the Confirmation Order, if the Successful Bidder fails to consummate the Plan Sale because of a breach or failure to perform on the part of the Successful Bidder, the Second-Highest Bidder will be deemed to have the new Successful Bid (which will be the Second-Highest Bid), and the Debtors will be authorized to consummate the Plan Sale with the Second-Highest Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder subject to the terms of, and the limitations and restrictions set forth in, the Proposed Agreement or the Stalking Horse Agreement (as the case may be) of the Successful Bidder.

k. **The Confirmation Hearing.** After the conclusion of the Auction, and the solicitation of the Plan, the Bankruptcy Court shall conduct a hearing (the "Confirmation Hearing")[4] to confirm the Plan and approve the Plan Sale. At the Confirmation Hearing, the Debtors will seek entry of the Confirmation Order, among other things: (i) confirming the Plan; (ii) authorizing and approving the Plan Sale to the Successful Bidder, as determined by the Debtors in accordance with these Bid Procedures, pursuant to the terms and conditions set forth in the Stalking Horse Agreement if the Stalking Horse is the Successful Bidder or the Proposed Agreement submitted by the Successful Bidder if the Stalking Horse is not the Successful Bidder (in each case, as any such agreement may be modified prior to, during or after the Auction with the agreement of the Debtors); and (iii) exempting the sale and conveyance of the Purchased Assets from any transfer tax, stamp tax or similar tax pursuant to section 1146(a) of the Bankruptcy Code. The Debtors also will seek the inclusion of certain findings in the Confirmation Order regarding the Auction, including, among other things, that: (a) the Auction was conducted and the Successful Bidder was selected in accordance with these Bid Procedures; (b) the Auction was fair in substance and procedure; and (c) consummation of the Plan Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors, the Debtors' estates and their creditors. The Confirmation Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date in open court.

l. **Return of Good Faith Deposit.** Except as otherwise provided in this paragraph with respect to any Successful Bid and the Second-Highest Bid, if any, the Good Faith Deposits of all Qualified Bidders shall be returned upon or within two (2) business days

---

[4] The Debtors have requested by separate motion that the Bankruptcy Court set the Confirmation Hearing on May 21, 2010 at 1:00 p.m. prevailing Eastern Time.

after the Auction. The Good Faith Deposit of the Successful Bidder shall be held until the closing of the Plan Sale and applied in accordance with the Successful Bid. The Good Faith Deposit of the Second-Highest Bidder shall be returned as set forth in section (j) above. If a Successful Bidder fails to consummate an approved Plan Sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies and/or causes of action that may be available to the Debtors subject to the terms of, and the limitations and restrictions set forth in, the Proposed Agreement or the Stalking Horse Agreement (as the case may be) of the Successful Bidder, and the Debtors shall be free to consummate the Plan Sale with the Second-Highest Bidder without the need for an additional hearing or Order of the Bankruptcy Court.

m. **Modifications.** At or before the Confirmation Hearing, the Bankruptcy Court, or, consistent with the purposes of these Bid Procedures to obtain the highest or otherwise best offer for the Purchased Assets, the Debtors, in consultation with the Committee, may impose such other terms and conditions as it or they may determine to be in the best interests of the Debtors' estates, their creditors and other parties in interest.

n. **Reservation of Rights.** In addition to their rights set forth in sections (h) and (m) above, the Debtors may modify these Bid Procedures or impose, at or prior to the Auction, additional terms and conditions on the proposed Plan Sale of the Purchased Assets if, in their reasonable business judgment, in consultation with the Committee and the Stalking Horse, such modifications would be in the best interests of the Debtors' estates and promote an open and fair bidding process. The Debtors may: (i) determine, in their reasonable business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; (ii) consult with the Committee, in connection with the bidding process and these Bid Procedures; and (iii) reject at any time before entry of the Confirmation Order approving a Qualified Bid, any bid that, in consultation with the Committee, is: (w) inadequate or insufficient; (x) not in conformity with the requirements of the Plan, the Bankruptcy Code, these Bid Procedures or the terms and conditions of the Plan Sale; (y) contrary to the best interests of the Debtors, their estates, their creditors and other parties in interest; or (z) subject to any due diligence, financing condition or other contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the Purchased Assets other than, in any such case, as may be included in the Stalking Horse Agreement. Nothing in these Bid Procedures shall, or shall be deemed to: (1) amend, modify, limit or otherwise affect the terms or conditions of the Stalking Horse Agreement, the Final DIP Order, the DIP Facility documents, or the rights and remedies of the parties thereunder or under applicable bankruptcy law; or (2) except for their consent to the Stalking Horse Agreement, constitute the consent of the Requisite DIP Lenders to any other sale or disposition of their respective collateral.

o. **Expenses.** Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved, unless otherwise provided for in the Plan or agreed to by the Debtors in accordance with the DIP Facility

documents and the orders approving the same, or the terms of the Stalking Horse Agreement or Proposed Agreement, as applicable. Notwithstanding the foregoing, the Stalking Horse may seeks orders of the Bankruptcy Court approving payment by the Debtors of the Bid Protections and/or the Expense Amount under the Stalking Horse Agreement.

p. **Highest Or Otherwise Best Bid.** Whenever these Bid Procedures refer to the highest or otherwise best offer, as compared to the bid of the Stalking Horse, the Debtors may, in their discretion, consider the following factors in addition to any other factors that the Debtors deem appropriate: (a) the number, type and nature of any changes to the Stalking Horse Agreement requested by the Qualified Bidder, and whether such bid is for different assets than those proposed to be purchased by the Stalking Horse or on different terms from those contained in the Stalking Horse Agreement; (b) the extent to which such requested modifications to the Stalking Horse Agreement are likely to delay the closing of the Proposed Transaction and the cost to the Debtors of any such delay; (c) the total consideration to be received by the Debtors; (d) the likelihood of the Qualified Bidder's ability to timely close the Plan Sale; and (e) the net benefit to the Debtors' estates.

DB02:9340065.2

068401.1001