# EXHIBIT A

## Confirmation Hearing Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re : Chapter 11
:
RathGibson, Inc., et al.,[1] : Case No. 09-12452 (CSS)
:
                    Debtors. : Jointly Administered
:
: Objection Deadline: May 11, 2010 at 4:00 p.m.
: Hearing Date: May 21, 2010 at 1:00 p.m.

-------------------------------------------------------------x

**NOTICE OF: (I) APPROVAL OF DISCLOSURE STATEMENT; (II) DEADLINE FOR
VOTING ON PLAN, (III) HEARING TO CONSIDER CONFIRMATION OF PLAN,
INCLUDING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS; AND
(IV) DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

       1.      YOUR VOTE IS BEING SOLICITED IN CONNECTION WITH THE THIRD AMENDED JOINT CHAPTER 11 PLAN FOR RATHGIBSON, INC., ET AL. (INCLUDING ALL EXHIBITS THERETO AND AS MAY BE AMENDED, MODIFIED OR SUPPLEMENTED FROM TIME TO TIME AS PERMITTED BY THE BANKRUPTCY COURT, THE "PLAN").[2] YOU SHOULD CAREFULLY REVIEW THE MATERIAL SET FORTH IN THE DISCLOSURE STATEMENT ENCLOSED HEREWITH (AND IN THE EXHIBITS ATTACHED THERETO) IN ORDER TO MAKE AN INDEPENDENT DETERMINATION AS TO WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

### APPROVAL OF DISCLOSURE STATEMENT

      2.      By Order dated April 7, 2010, (the "Disclosure Statement Order"), the Bankruptcy Court approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

### DEADLINE FOR VOTING ON THE PLAN

      3.      By the Disclosure Statement Order, the Bankruptcy Court established **May 11, 2010, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline") as the deadline by which ballots accepting or rejecting the Plan must be received, except as such deadline may be extended by the Debtors. To be counted, your original ballot (which is enclosed herewith) must actually be **received** on or before the Voting Deadline by The Garden City Group, Inc. (the "Balloting Agent") at the following address: RGI Bankruptcy Administration, c/o The Garden City Group, Inc., P.O. Box 9396, Dublin, Ohio 43017; or by overnight or hand delivery, or courier to: RGI Bankruptcy Administration, c/o The Garden City Group, Inc., 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017. Ballots cast by facsimile, email or other electronic transmission will not be counted unless approved in advance by the Debtors in writing.

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

[2]    All capitalized terms used but not specifically defined herein shall have the meaning ascribed to them in the Plan.

## EXCULPATION, INJUNCTIONS AND RELEASES

4. The following is a summary of the release, injunction and exculpation provisions set forth in the Plan and is qualified in its entirety by the provisions in the Plan. Section 12.5 of the Plan provides that, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors will be permanently enjoined from, among other things, (i) commencing or continuing any action against or affecting the Debtors or their property, (ii) enforcing any judgment or order against the Debtors or their property, (iii) creating, perfecting or otherwise enforcing any encumbrance against the Debtors or their property, (iv) acting or proceeding in any manner that does not comply with the Plan, and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Section 12.6 of the Plan provides, among other things, that (i) each holder of a Claim or Interest that votes to accept the Plan and (ii) all other holders of Claims or Interests, to the fullest extent permitted by law, will be deemed to release all claims against the Released Parties based on any act, event or other occurrence taking place on or prior to the Effective Date; provided, however, that such releases will not apply to any holder of a Claim or Interest that "opts out" of such releases in a timely submitted Ballot. Section 12.7 of the Plan provides that none of the Released Parties will have or incur any liability to any party in interest for any act or omission in connection with or arising out of the Debtors' restructuring. Section 12.8 of the Plan provides that the Confirmation Order will permanently enjoin the commencement or prosecution of any claims or liabilities released pursuant to the Plan.

## CONFIRMATION HEARING

5. On **May 21, 2010 at 1:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, a hearing (the "Confirmation Hearing") will be held before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801 to consider confirmation of the Plan, *including the proposed sale of substantially all of the Debtors' assets contemplated thereby* (the "Sale"). The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court. The Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Plan and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

6. Any objection, comment or response to confirmation of the Plan, *including approval of the Sale*, as well as any supporting memoranda must: (a) be in writing; (b) provide proposed language to remedy any objection asserted; (c) be filed with the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801, together with proof of service, and served on the following parties: (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: Jenette A. Barrow-Bosshart, Esq. and Jessica M. Ward, Esq.), co-counsel to the Creditors' Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders; and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse Bidder, Ad Hoc Senior Noteholders Committee and the DIP Lenders, so as to be **received** on or before **May 11, 2010 at 4:00 p.m. (prevailing Eastern Time)**. Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court.

2

Dated: April 7, 2010
      Wilmington, Delaware

                             YOUNG CONAWAY STARGATT & TAYLOR, LLP

                             Robert S. Brady (No. 2847)
                             Matthew B. Lunn (No. 4119)
                             Maris J. Finnegan (No. 5294)
                             The Brandywine Building
                             1000 West Street, 17th Floor
                             Wilmington, Delaware 19801
                             (302) 571-6600

                             -and-

                             WILLKIE FARR & GALLAGHER LLP
                             Paul V. Shalhoub
                             Robin Spigel
                             Andrew D. Sorkin
                             787 Seventh Avenue
                             New York, New York 10019-6099
                             Telephone: (212) 728-8000
                             Facsimile: (212) 728-8111

                             *Counsel to the Debtors and Debtors in Possession*

DB02:9466635.2

068401.1001

# EXHIBIT B

## Publication Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| RathGibson, Inc., et al., | ) | Case No. 09-12452 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF HEARING TO CONSIDER CONFIRMATION OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN FOR RATHGIBSON, INC. _ET AL._ AND RELATED PROCEDURES AND DEADLINES

By Order dated April 7, 2010, (the "Disclosure Statement Order"), the Bankruptcy Court approved the _Disclosure Statement for Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al._ (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and authorized RathGibson, Inc., Greenville Tube Company, RG Tube Holdings LLC and RGCH Holdings Corp. (collectively, the "Debtors") to solicit votes with regard to the acceptance or rejection of the _Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al._ (as may be further amended, modified or supplemented, the "Plan").

On **May 21, 2010 at 1:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, a hearing (the "Confirmation Hearing") will be held before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801 to consider confirmation of the Plan, including the proposed sale of substantially all of the Debtors' assets contemplated thereby (the "Sale"). The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court.

The Disclosure Statement Order established **May 11, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline") as the deadline by which ballots accepting or rejecting the Plan must be received, except as such deadline may be extended by the Debtors. To be counted, your original ballot must actually be received on or before the Voting Deadline by The Garden City Group, Inc. (the "Balloting Agent") at the following address: RGI Bankruptcy Administration, c/o The Garden City Group, Inc., P.O. Box 9396, Dublin, Ohio 43017; or by overnight or hand delivery, or courier to: RGI Bankruptcy Administration, c/o The Garden City Group, Inc., 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017. Ballots cast by facsimile, email or other electronic transmission will not be counted unless approved in advance by the Debtors in writing.

_The following is a summary of the releases, injunction and exculpation provisions contained in the Plan and is qualified in its entirety by the provisions in the Plan. Section 12.5 of the Plan provides that, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all_

*Persons who have held, hold, or may hold Claims[1] against or Interests in the Debtors will be permanently enjoined from, among other things, (i) commencing or continuing any action against or affecting the Debtors or their property, (ii) enforcing any judgment or order against the Debtors or their property, (iii) creating, perfecting or otherwise enforcing any encumbrance against the Debtors or their property, (iv) acting or proceeding in any manner that does not comply with the Plan, and (v) commencing or continuing any action that does not comply with or is inconsistent with the Plan. Section 12.6 of the Plan provides, among other things, that (i) each holder of a Claim or Interest that votes to accept the Plan and (ii) all other holders of Claims or Interests, to the fullest extent permitted by law, will be deemed to release all claims against the Released Parties based on any act, event or other occurrence taking place on or prior to the Effective Date; provided, however, that such releases will not apply to any holder of a Claim or Interest that "opts out" of such releases in a timely submitted Ballot. Section 12.7 of the Plan provides that none of the Released Parties will have or incur any liability to any party in interest for any act or omission in connection with or arising out of the Debtors' restructuring. Section 12.8 of the Plan provides that the Confirmation Order will permanently enjoin the commencement or prosecution of any claims or liabilities released pursuant to the Plan.*

Any objection, comment or response to confirmation of the Plan, *including approval of the Sale*, (including any supporting memoranda) must: (a) be in writing; (b) provide proposed language to remedy any objection asserted; (c) be filed with the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801, together with proof of service, and served on the following parties: (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: Jenette A. Barrow-Bosshart, Esq. and Jessica M. Ward, Esq.), co-counsel to the Creditors' Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders; and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse Bidder, Ad Hoc Senior Noteholders Committee and the DIP Lenders, so as to be received on or before **May 11, 2010 at 4:00 p.m. (prevailing Eastern Time)**. Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court.

The Disclosure Statement, Plan, Disclosure Statement Order and the Bid Procedures Order may be obtained (a) free of charge (i) on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (www.rathrestructuring.com), or (ii) by request to Troy Bollman (tbollman@ycst.com); or (b) for a charge (x) through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or (y) at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website (a PACER password is required). Copies of the Disclosure Statement also are available for inspection

---

[1]     Capitalized terms not otherwise defined herein have the meanings given to them in the Plan.

during regular business hours at the Office of the Clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801.

Dated: April 7, 2010

                             YOUNG CONAWAY STARGATT & TAYLOR, LLP
                             The Brandywine Building
                             1000 West Street, 17th Floor
                             Wilmington, Delaware 19801
                             (302) 571-6600

                             -and-

                             WILLKIE FARR & GALLAGHER LLP
                             787 Seventh Avenue
                             New York, New York 10019-6099
                             Telephone: (212) 728-8000

                             Co-Counsel to the Debtors and Debtors in Possession

DB02:9466647.2                                                  068401.1001

# EXHIBIT C

## Non-Voting Creditor Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x

In re                                   :   **Chapter 11**
                                        :
**RathGibson, Inc., et al.,**[1]        :   **Case No. 09-12452 (CSS)**
                                        :
    **Debtors.**    :   **Jointly Administered**
                                        :
                                        :   **Objection Deadline:  May 11, 2010 at 4:00 p.m.**
                                        :   **Hearing Date:  May 21, 2010 at 1:00 p.m.**

---------------------------------------------------------x

## NOTICE OF:  (I) APPROVAL OF DISCLOSURE STATEMENT; (II) HEARING TO CONSIDER CONFIRMATION OF PLAN, INCLUDING SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS; AND (III) DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN

TO:    ALL UNIMPAIRED CREDITORS OF THE DEBTORS AND CREDITORS OR INTEREST HOLDERS OF THE DEBTORS NOT ENTITLED TO VOTE ON THE PLAN AND OTHER PARTIES IN INTEREST.

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

### APPROVAL OF THE DISCLOSURE STATEMENT

1.    By Order dated April 7, 2010, (the "Disclosure Statement Order"), the Bankruptcy Court approved the *Disclosure Statement for Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.    On **May 21, 2010 at 1:00 p.m. (prevailing Eastern Time),** or as soon thereafter as counsel may be heard, a hearing (the "Confirmation Hearing") will be held before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom 6, Wilmington, Delaware 19801 to consider confirmation of the *Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan").[2] At the Confirmation Hearing, the Debtors intend to seek approval of the sale of substantially all of the Debtors' assets (the "Sale") in accordance with the terms of the Plan. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court. The Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Plan and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

---

[1]    The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

[2]    All capitalized terms used but not specifically defined herein shall have the meaning ascribed to them in the Plan.

## ENTITLEMENT TO VOTE ON THE PLAN

3.      In accordance with the terms of the Plan and the Bankruptcy Code, holders of claims against and equity interests in the Debtors that are impaired by and receiving a distribution under the Plan are entitled to vote on the Plan. Holders of claims that are unimpaired by the Plan are deemed to have accepted the Plan and are not entitled to vote on the Plan. April 7, 2010 was established by the Bankruptcy Court as the record date for determining the creditors and interest holders entitled to vote on the Plan.

4.      Holders of claims in the following classes are unimpaired under the Plan: Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims) and Class 3(a) (Prepetition Secured Credit Agreement Claims).[3] In addition, holders of interests in Class 3(c) (Existing Rath Interests), Class 4(c) (Existing Greenville Interests), and Class 5(c) (Existing RGCH Interests) are deemed to have accepted the Plan because such interest holders are proponents of the Plan, and are not entitled to vote on the Plan.

5.      You are receiving this notice because you are an unimpaired creditor or an equity holder of the Debtors and not entitled to vote on the Plan.

## SUMMARY OF PLAN TREATMENT OF CLAIMS AND INTERESTS

6.      The Plan proposes to modify the rights of certain creditors and equity holders of the Debtors. The Plan establishes the following classes of Claims and Interests with the following treatment:

| Class | Description | Treatment |
|---|---|---|
| Unclassified | DIP Claims | Holders of Allowed DIP Claims will be paid in full in Cash. |
| Unclassified | Administrative Expense Claims | Each holder of an Allowed Administrative Expense Claim shall receive, unless such holder agrees to different treatment, Cash in an amount equal to such Allowed Claim; provided, however, that any Administrative Expense Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Administrative Expense Claim. |
| Unclassified | Fee Claims | Each holder of an Allowed Fee Claim for which a Fee Application has been approved by the Bankruptcy Court shall receive Cash in an amount so approved. |
| Unclassified | U.S. Trustee Fees | Each of the Debtors shall pay all outstanding U.S. Trustee Fees of such Debtor on an ongoing basis on the later of: (i) the Effective Date; and (ii) the date such U.S. Trustee Fees become due. |
| Unclassified | Priority Tax Claims | Unless such holder agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the applicable Debtor's option, either: (a) Cash in an amount equal to the amount of such Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (plus any interest due, calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that any Priority Tax Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse |

---

[3]      GE Capital Franchise Finance Corporation ("**GE Capital**") has objected to entry of the Disclosure Statement Order on the grounds that GE Capital's Class 2 Claim is impaired and, therefore, GE Capital should be entitled to vote on the Plan. In resolution of GE Capital's objection, GE Capital will have the opportunity to vote on the Plan on a provisional basis.

DB02:9474227.1

068401.1001

| Class | Description | Treatment |
|-------|-------------|-----------|
| | | against the Debtors or the Plan Administrator or any of their property on account of such Priority Tax Claim. |
| Class 1 | Priority Non-Tax Claims | Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to different treatment and after the date a Priority Non-Tax Claim becomes an Allowed Claim, on, or as soon thereafter as is reasonably practicable, the Initial Distribution Date, the holder of such Allowed Priority Non-Tax Claim shall receive Cash from the applicable Debtor in an amount equal to such Claim; provided, however, that any Priority Non-Tax Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Priority Non-Tax Claim. |
| Class 2 | Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment and after the date an Other Secured Claim becomes an Allowed Claim, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the Initial Distribution Date, each holder of such Allowed Other Secured Claim shall receive, at the election of the Debtors: (i) Cash in an amount equal to such Allowed Claim; (ii) such other treatment that will render the Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code; or (iii) the return of property securing such Allowed Other Secured Claim; provided, however, that any Other Secured Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Other Secured Claim. |
| Class 3(a) | Prepetition Secured Credit Agreement Claims | To the extent not already paid in full prior to the Effective Date pursuant to the terms of DIP Orders or otherwise, on the Effective Date, or as soon as practicable thereafter, the Allowed Prepetition Secured Credit Agreement Claims shall be paid in an aggregate amount equal to (i) $52,747,405.02 plus (ii) any accrued and unpaid interest at the non-default contract rate under the Prepetition Secured Credit Agreement as of the Effective Date, except to the extent such interest is otherwise provided in the Plan to be paid or satisfied, plus (iii) unpaid professional fees and expenses, as provided for in the Prepetition Secured Credit Agreement and the DIP Orders plus (iv) all other Obligations as defined in the Prepetition Secured Credit Agreement, in complete and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Claims. |
| Class 3(b) | Rath General Unsecured Claims | Except to the extent that a holder of an Allowed Rath General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of five (5) Business Days after the Ordinary Course of Business Trade Claims Bar Date and the next Interim Distribution Date immediately following the date that a Rath General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed Rath General Unsecured Claim shall receive its Pro Rata Share of the Class 3(b) Distribution; provided, however, that any Rath General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Rath General Unsecured Claim. |
| Class 3(c) | Existing Rath Interests | Existing Rath Interests shall be cancelled and holders of Existing Rath Interests shall not be entitled to any distribution under the Plan. |
| Class 4(a) | Greenville General Unsecured Claims | Except to the extent that a holder of an Allowed Greenville General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the next Interim Distribution Date immediately |

- 3 -

| Class | Description | Treatment |
|---|---|---|
| | | following the date that a Greenville General Unsecured Claim becomes an Allowed Claim, each holder of an Allowed Greenville General Unsecured Claim shall receive its Pro Rata Share of the Class 4(a) Distribution; provided, however, that any Greenville General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Greenville General Unsecured Claim. |
| Class 4(b) | Existing Greenville Interests | Existing Greenville Interests shall be cancelled and holders of Existing Greenville Interests shall not be entitled to any distribution under the Plan. |
| Class 5(a) | RGCH PIK Notes Claims | Each holder of an Allowed RGCH PIK Notes Claim shall receive in exchange for, such Claim its Pro Rata Share of the Class 5(a) Distribution; provided, however, holders of Allowed RGCH PIK Notes Claims shall not receive or retain any distribution under the Plan on account of their RGCH PIK Notes Claims if Class 5(a) votes to reject the Plan. |
| Class 5(b) | RGCH General Unsecured Claims | Except to the extent that a holder of an Allowed RGCH General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the next Interim Distribution Date immediately following the date that a RGCH General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed RGCH General Unsecured Claim shall receive its Pro Rata Share of the Class 5(b) Distribution; provided, however, that any RGCH General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such RGCH General Unsecured Claim. |
| Class 5(c) | Existing RGCH Interests | Existing RGCH Interests shall be cancelled and holders of Existing RGCH Interests shall not be entitled to any distribution under the Plan. |
| Class 6(a) | RG Tube General Unsecured Claims | Except to the extent that a holder of an Allowed RG Tube General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the next Interim Distribution Date immediately following the date that a RG Tube General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed RG Tube General Unsecured Claim shall receive its Pro Rata Share of the Class 6(a) Distribution; provided, however, that any RG Tube General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such RG Tube General Unsecured Claim. |
| Class 6(b) | Existing RG Tube Interests | Each holder of an Allowed Existing RG Tube Interest shall receive its Pro Rata Share of $25,000 in Cash. |

## EXCULPATION, INJUNCTIONS AND RELEASES

7.    The Plan contains the exculpation, injunction and release provisions set forth below:

- 4 -

*A.* *Exculpation and Limitation of Liability.*

Under Section 12.7 of the Plan, none of the Released Parties shall have or incur any liability to any holder of any Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation, the negotiation, implementation and execution of the Plan, the Chapter 11 Cases, the APA, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except, gross negligence, or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.

*B.* *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Sections 12.6 and 12.7 of the Plan. Such injunction shall extend to successors of the Debtors and their respective properties and interests in property.

*C.* *Injunction.*

Section 12.5 of the Plan provides that except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor, (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor, (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law, and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; *provided, however,* that nothing contained in the Plan shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plan.

By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Allowed Interest will be deemed to have specifically consented to the Injunctions set forth in section 12.5 of the Plan.

*D.* *Releases.*

1. *Releases by the Debtors.* Section 12.6(a) of the Plan provides that, for good and valuable consideration, the adequacy of which is confirmed by the Plan, and except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtors, in their individual capacities and as debtors in possession, shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder, including the APA and all ancillary documents thereto) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the parties released pursuant to Section 12.6 of the Plan, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates, whether directly, indirectly, derivatively or in any representative or any other capacity; provided, however, that the foregoing is not intended to release any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities of or owed

- 5 -

*to the Debtors with respect to money borrowed from or owed to the Debtors by the current and former directors, officers and employees of the Debtors, as set forth in the Debtors' books and records.*

        2.        *Releases by Holders of Claims and Interests.* *Section 12.6(b) of the Plan provides that, except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date: (i) each holder of a Claim or Interest that voted to accept the Plan; and (ii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims and Interests, in consideration for the obligations of the Debtors under the Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, and each Person (other than the Debtors) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to have consented to the Plan for all purposes and the restructuring embodied therein and deemed to forever release, waive and discharge all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan, including, without limitation, the APA) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Sale, the transactions contemplated by the Stalking Horse Agreement, the Plan or the Disclosure Statement; provided, however, that the foregoing releases shall not apply to any holder of a Claim or Interest if such holder "opts out" of the releases provided in Section 12.6(b) of the Plan in a timely submitted Ballot.*

        3.        *Inapplicability of Releases.* *Notwithstanding anything to the contrary contained in the Plan: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in Section 12.6 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code, or (y) any criminal laws of the United States or any state, city or municipality; and (ii) the releases set forth in Section 12.6 of the Plan shall not release any (x) Debtor's claims, right, or Causes of Action for money borrowed from or owed to a Debtor or its Subsidiary by any of its directors, officers or former employees as set forth in such Debtors' or Subsidiary's books and records, (y) claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives, and (z) Person's fraud, gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court, for matters with respect to the Debtors and their Subsidiaries and/or affiliates.*

        *Notwithstanding anything to the contrary contained in the Plan, nothing in the Plan: (i) discharges, releases, or precludes any (a) environmental liability that is not a Claim; (b) environmental claim of the United States that first arises on or after the Confirmation Date, or (c) other environmental claim or liability that is not otherwise dischargeable under the Bankruptcy Code; (ii) releases the Debtors from any environmental liability that a Debtor may have as an owner or operator of real property owned or operated by a Debtor on or after the Confirmation Date; (iii) releases or precludes any environmental liability to the United States on the part of any Persons other than the Debtors; or (iv) enjoins the United States from asserting or enforcing any liability described in this paragraph; provided, that the holder of a Claim in respect of any such environmental liability that is an Assumed Liability shall have no recourse against the Debtors or the Plan Administrator or any of their property with respect to such Assumed Liability.*

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

        8.        Any objection, comment or response to confirmation of the Plan, *including approval of the Sale*, (including any supporting memoranda) must: (a) be in writing; (b) provide proposed language to remedy any objection asserted; (c) be filed with the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801, together with proof of service, and served on the following parties: (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq. and Robin Spigel, Esq.), co-counsel to the Debtors; (ii) Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Robert S. Brady, Esq. and Matthew B. Lunn, Esq.), co-counsel to the Debtors; (iii) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane Leamy, Esq.); (iv) Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169 (Attn: Jenette A. Barrow-Bosshart, Esq. and Jessica M. Ward, Esq.), co-counsel to the Creditors' Committee; (v) Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, Delaware 19899 (Attn: Henry J. Jaffe, Esq. and John H. Schanne II, Esq.), co-counsel to the Committee; (vi) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038 (Attn: Kristopher M. Hansen, Esq. and Jayme T. Goldstein, Esq.), co-counsel to the Stalking Horse Bidder, the Ad Hoc Senior Noteholders Committee and the DIP Lenders; and (vii) Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington,

DB02:9474227.1

068401.1001

Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.), co-counsel to the Stalking Horse Bidder, Ad Hoc Senior Noteholders Committee and the DIP Lenders, so as to be **received** on or before **May 11, 2010 at 4:00 p.m. (prevailing Eastern Time)**. Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court.

9.     The Disclosure Statement, Plan, and Disclosure Statement Order are on file with the Clerk of the Bankruptcy Court, and copies of the same may be obtained by parties in interest free may be obtained (a) free of charge (i) on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (www.rathrestructuring.com), or (ii) by request to Troy Bollman (tbollman@ycst.com); or (b) for a charge (x) through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or (y) at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website (a PACER password is required).

Dated:   April 7, 2010
         Wilmington, Delaware

                                        YOUNG CONAWAY STARGATT & TAYLOR, LLP


                                        _____
                                        Robert S. Brady (No. 2847)
                                        Matthew B. Lunn (No. 4119)
                                        Maris J. Finnegan (No. 5294)
                                        The Brandywine Building
                                        1000 West Street, 17th Floor
                                        Wilmington, Delaware 19801
                                        (302) 571-6600

                                        -and-

                                        WILLKIE FARR & GALLAGHER LLP
                                        Paul V. Shalhoub
                                        Robin Spigel
                                        Andrew D. Sorkin
                                        787 Seventh Avenue
                                        New York, New York 10019-6099
                                        Telephone: (212) 728-8000
                                        Facsimile: (212) 728-8111

                                        *Counsel to the Debtors*
                                        *and Debtors in Possession*