## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| RathGibson, Inc., <u>et al.</u>, | ) | Case No. 09-12452 (CSS) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

---

## THIRD AMENDED JOINT CHAPTER 11 PLAN FOR RATHGIBSON, INC., <u>ET AL.</u>

---

Dated: Wilmington, Delaware
      April 7, 2010

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**
Co-Counsel for Debtors
and Debtors In Possession
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

**WILLKIE FARR & GALLAGHER LLP**
Co-Counsel for Debtors
and Debtors In Possession
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

# TABLE OF CONTENTS

Page

ARTICLE I.     DEFINITIONS AND INTERPRETATION ........................................................1

ARTICLE II.    RESOLUTION OF CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES .........................................................................................15

2.1.    Settlement of Certain Inter-Creditor Issues. ...................................................15
2.2.    Intercompany Claims. ......................................................................................15

ARTICLE III.   ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS .......................................16

3.1.    DIP Claims........................................................................................................16
3.2.    Administrative Expense Claims........................................................................16
3.3.    Fee Claims. .......................................................................................................18
3.4.    U.S. Trustee Fees. .............................................................................................19
3.5.    Priority Tax Claims...........................................................................................19

ARTICLE IV.    CLASSIFICATION OF CLAIMS AND INTERESTS .................................20

4.1.    Classification of Claims and Interests...............................................................20
4.2.    Unimpaired Classes of Claims..........................................................................21
4.3.    Impaired Classes of Claims and Interests. ........................................................21
4.4.    Separate Classification of Other Secured Claims. ............................................21

ARTICLE V.     TREATMENT OF CLAIMS AND INTERESTS .........................................22

5.1.    Priority Non-Tax Claims (Class 1). ..................................................................22
5.2.    Other Secured Claims (Class 2)........................................................................22
5.3.    Prepetition Secured Credit Agreement Claims (Class 3(a)). ............................23
5.4.    Rath General Unsecured Claims (Class 3(b))....................................................24
5.5.    Existing Rath Interests (Class 3(c)). .................................................................24
5.6.    Greenville General Unsecured Claims (Class 4(a))...........................................24
5.7.    Existing Greenville Interests (Class 4(b)).........................................................25
5.8.    RGCH PIK Notes Claims (Class 5(a))..............................................................25
5.9.    RGCH General Unsecured Claims (Class 5(b)). ...............................................25
5.10.   Existing RGCH Interests (Class 5(c)).............................................................26
5.11.   RG Tube General Unsecured Claims (Class 6(a)).............................................26
5.12.   Existing RG Tube Interests (Class 6(b))...........................................................26

ARTICLE VI.    ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS .......................................................................................................27

6.1.    Class Acceptance Requirement..........................................................................27

i

6.2. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown." ........................................................................................27
6.3. Elimination of Vacant Classes. ..............................................................27
6.4. Voting Classes; Deemed Acceptance by Non-Voting Classes. .....................27

ARTICLE VII. MEANS FOR IMPLEMENTATION ..............................................27

7.1. Sale of the Purchased Assets...................................................................27
7.2. Plan Funding. .........................................................................................28
7.3. Continued Corporate Existence and Vesting of Assets. ..................28
7.4. Cancellation of Credit Agreements, Existing Securities and Agreements. ...........................................................................................29
7.5. Corporate Governance. ..........................................................................30
7.6. Plan Administrator. ................................................................................30
7.7. Wind Down of the Debtors' Estates. .....................................................31
7.8. Bar Date for Prepetition Ordinary Course Trade Claims.................32
7.9. Assumed Liabilities. ...............................................................................33
7.10. Cancellation of Certain Existing Security Interests. ......................33
7.11. Officers and Boards of Directors. ........................................................34
7.12. Corporate Action. ...................................................................................34
7.13. Satisfaction of Prepetition Secured Lender Guaranty Claims. ........35
7.14. RG Tube Cash. ........................................................................................35
7.15. Additional Transactions Authorized Under this Plan. ....................35
7.16. Comprehensive Settlement of Claims and Controversies................35
7.17. Non-Substantive Consolidation. ..........................................................35

ARTICLE VIII. DISTRIBUTIONS ........................................................................36

8.1. Distributions...........................................................................................36
8.2. No Postpetition Interest on Claims. .....................................................36
8.3. Date of Distributions. .............................................................................36
8.4. Distribution Record Date. ......................................................................36
8.5. Disbursing Agent. ...................................................................................37
8.6. Delivery of Distribution...........................................................................37
8.7. Unclaimed Property. ...............................................................................38
8.8. Reserve Accounts....................................................................................38
8.9. Distribution of RG Tube Cash. ..............................................................38
8.10. Satisfaction of Claims and Interests.....................................................39
8.11. Manner of Payment Under Plan.............................................................39
8.12. Fractional Cents and De Minimis Distributions. ..............................39
8.13. No Distribution in Excess of Amount of Allowed Claim.................39
8.14. Setoffs and Recoupments.......................................................................39
8.15. Rights and Powers of Disbursing Agent. ............................................40
8.16. Withholding and Reporting Requirements. .......................................40
8.17. Cooperation with Disbursing Agent. ...................................................40

ARTICLE IX.      PROCEDURES FOR RESOLVING CLAIMS ..............................................41

9.1.      Objections to Claims.........................................................................41
9.2.      Amendment to Claims. .....................................................................41
9.3.      Disputed Claims and Disputed Interests. .........................................42
9.4.      Estimation of Claims; Certain Reserves. .........................................42
9.5.      Directors' and Officers' Claims........................................................43
9.6.      No Recourse......................................................................................43
9.7.      Expenses Incurred On or After the Effective Date. .........................43

ARTICLE X.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES.......................44

10.1.      General Treatment. ...........................................................................44
10.2.      Claims Based on Rejection of Executory Contracts or Unexpired
Leases................................................................................................45
10.3.      Cure of Defaults for Assumed Executory Contracts and Unexpired
Leases................................................................................................45
10.4.      Compensation and Benefit Programs................................................46
10.5.      Post-Petition Contracts and Leases...................................................47

ARTICLE XI.      CONDITIONS PRECEDENT TO CONSUMMATION OF THE
PLAN ...............................................................................................47

11.1.      Conditions Precedent to Confirmation..............................................47
11.2.      Conditions Precedent to the Effective Date. .....................................47
11.3.      Waiver of Conditions Precedent and Bankruptcy Rule 3020(e)
Automatic Stay..................................................................................48
11.4.      Effect of Failure of Conditions. .......................................................48

ARTICLE XII.      EFFECT OF CONFIRMATION ....................................................49

12.1.      Binding Effect...................................................................................49
12.2.      Vesting of Assets. .............................................................................49
12.3.      Term of Pre-Confirmation Injunctions or Stays. ..............................49
12.4.      Injunction Against Interference With Plan. .......................................49
12.5.      Injunction. .........................................................................................49
12.6.      Releases.............................................................................................50
12.7.      Exculpation and Limitation of Liability. ..........................................52
12.8.      Injunction Related to Releases and Exculpation...............................52
12.9.      Termination of Subordination Rights and Settlement of Related
Claims. ..............................................................................................52
12.10.      Retention of Causes of Action/Reservation of Rights. .....................53
12.11.      No Successor Liability.......................................................................53

ARTICLE XIII.      RETENTION OF JURISDICTION .................................................53

ARTICLE XIV.  MISCELLANEOUS PROVISIONS..................................................................55

14.1.      Surrender of Instruments.....................................................................55
14.2.      Exemption from Certain Transfer Taxes. ........................................55
14.3.      Retiree Benefits..................................................................................56
14.4.      Dissolution of Creditors' Committee.................................................56
14.5.      Termination of Professionals. ...........................................................56
14.6.      Amendments. ......................................................................................56
14.7.      Revocation or Withdrawal of this Plan.............................................57
14.8.      Allocation of Plan Distributions Between Principal and Interest. ...................57
14.9.      Severability. .......................................................................................57
14.10.     Governing Law. ..................................................................................58
14.11.     Section 1125(e) of the Bankruptcy Code...........................................58
14.12.     Inconsistency.......................................................................................58
14.13.     Avoidance and Recovery Actions.......................................................58
14.14.     Successors and Assigns.......................................................................58
14.15.     Time. ...................................................................................................59
14.16.     Exhibits. ..............................................................................................59
14.17.     Notices. ...............................................................................................59
14.18.     Filing of Additional Documents. .......................................................60
14.19.     Reservation of Rights..........................................................................60

RathGibson, Inc., Greenville Tube Company, RGCH Holdings Corp. and RG Tube Holdings LLC, the Debtors in the above-captioned cases, propose the following third amended joint chapter 11 plan for the resolution of the Claims against and Interests in the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of this Plan, and certain related matters including, among other things, certain tax matters, the Sale and the consideration to be issued and/or distributed under this Plan. Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Fed. R. Bankr. P. 3019 and Sections 14.6 and 14.7 hereof, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation.

The only Persons that are entitled to vote on this Plan are the holders of Rath General Unsecured Claims, Greenville General Unsecured Claims, RGCH General Unsecured Claims, RGCH PIK Notes Claims, RG Tube General Unsecured Claims and Existing RG Tube Interests. Such Persons are encouraged to read the Plan and the Disclosure Statement and their respective exhibits and schedules in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement and the respective schedules and exhibits attached thereto and referenced therein have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

### A.    *Definitions*.

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1.    *Ad Hoc RGCH PIK Noteholders Committee*** means that certain ad hoc committee of certain holders of RGCH PIK Notes.

**1.2.    *Ad Hoc RGCH PIK Noteholders Committee Advisors*** means, in their respective capacity as such, Kasowitz, Benson, Torres & Friedman LLP and Bifferato Gentilotti LLC, as counsel to the Ad Hoc RGCH PIK Noteholders Committee.

**1.3.    *Ad Hoc RGCH PIK Noteholders Committee Fee Claims*** means all Claims for the reasonable documented fees and expenses of the Ad Hoc RGCH PIK Noteholders Committee Advisors, without any requirement for the filing of retention or fee applications in the Chapter 11 Cases, in an aggregate amount of all such fees and expenses not to exceed $75,000.

---

[1] All capitalized terms used but not defined herein have the meanings set forth in Article I herein.

**1.4.** *Ad Hoc Senior Noteholders Committee* means that certain ad hoc committee of certain holders of Senior Notes.

**1.5.** *Ad Hoc Senior Noteholders Committee Advisors* means, in their respective capacity as such, Stroock & Stroock & Lavan LLP and Richards, Layton & Finger P.A., as counsel to the Ad Hoc Senior Noteholders Committee, and any financial advisor that may be retained by the Ad Hoc Senior Noteholders Committee.

**1.6.** *Ad Hoc Senior Noteholders Committee Fee Claims* means all Claims for: (a) the reasonable documented fees and expenses of the Ad Hoc Senior Noteholders Committee Advisors, without any requirement for the filing of retention applications or fee applications in the Chapter 11 Cases; and (b) reasonable documented out-of-pocket expenses incurred by members of the Ad Hoc Senior Noteholders Committee.

**1.7.** *Administrative Expense Claims* means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code (other than a Fee Claim or U.S. Trustee Fees) for the period from the Petition Date to the Effective Date, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; (b) any payment to be made under this Plan to cure a default on an assumed executory contract or unexpired lease; (c) all Senior Notes Indenture Trustee Claims, without any requirement for filing fee applications in the Chapter 11 Cases; (d) the Ad Hoc Senior Noteholders Committee Fee Claims, without any requirement for filing fee applications in the Chapter 11 Cases; (e) the RGCH PIK Notes Agent Claims, without any requirement for filing fee applications in the Chapter 11 Cases; and (f) the Ad Hoc RGCH PIK Noteholders Committee Fee Claims, without any requirement for filing fee applications in the Chapter 11 Cases.

**1.8.** *Administrative Expense Claims Bar Date* means, as applicable, (a) such deadline for filing certain Administrative Expense Claims that arose after the Petition Date through February 28, 2010, as established by and in accordance with the Administrative Expense Claims Bar Date Order, and (b) such deadline as established pursuant to Section 3.2(a) of this Plan and the Confirmation Order.

**1.9.** *Administrative Expense Claims Bar Date Order* means the Order, dated April 7, 2010, entered by the Bankruptcy Court establishing May 14, 2010 as the last day to file certain Administrative Expense Claims against the Debtors arising during the period July 13, 2009 through and including February 28, 2010.

**1.10.** *Allowed Claim* or Allowed [_____] Claim (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been sought within the applicable period of limitation fixed by this Plan or applicable law, except to the extent the Debtors object to the enforcement of such Claim or, if an action to dispute, deny, equitably subordinate or otherwise limit recovery with respect thereto, or

alter priority thereof, has been sought, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, indenture or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

1.11.   *Allowed Interest* or Allowed RG Tube Interest means an Existing RG Tube Interest that is a unit registered in such limited liability company interest register as may be maintained by or on behalf of RG Tube, except to the extent the Debtors object to the enforcement of such Interest or, if so objected to, to the extent such Interest has been Allowed (whether in whole or in part) by a Final Order.

1.12.   *APA* means either: (i) the Stalking Horse Agreement; or (ii) such other asset purchase agreement that the Debtors may execute with such other Person that submits the highest or otherwise best bid for the Purchased Assets at the Auction in accordance with the Bid Procedures Order and that is approved by the Bankruptcy Court.

1.13.   *Assets* means all of the right, title and interest of the Debtors in and to property of whatever type or nature (real, personal, mixed, intellectual, tangible or intangible).

1.14.   *Assigned Contracts* has the meaning set forth in Section 10.3 of this Plan.

1.15.   *Assumed Liabilities* has the meaning given to such term in the APA.

1.16.   *Assumption Notice* has the meaning set forth in Section 10.3 of this Plan.

1.17.   *Auction* means the auction for the Purchased Assets to be held in accordance with the Bid Procedures Order.

1.18.   *Backstop Equity Investors* means those Persons party to that certain Backstop Agreement, dated as of August 21, 2009, that was filed with the Bankruptcy Court, or any of their respective successors or permitted assigns thereunder; provided, however, in the event the Backstop Equity Investors do not waive the "break-up fee" under that certain Backstop Purchase Agreement, dated August 21, 2009, all references to Backstop Equity Investors in the Plan shall be deemed struck and of no force and effect.

1.19.   *Ballot* means the form distributed to holders of impaired Claims entitled to vote on the Plan on which is to be indicated the acceptance or rejection of the Plan approved by the Bankruptcy Court.

1.20.   *Bankruptcy Code* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

**1.21.** ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or any other court exercising competent jurisdiction over the Chapter 11 Cases or any proceeding therein.

**1.22.** ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Cases, and any Local Rules of the Bankruptcy Court.

**1.23.** ***Bar Date*** means the deadline for filing proofs of Claim that arose on or prior to the Petition Date, as established by the Bar Date Order.

**1.24.** ***Bar Date Order*** means that certain Order, dated July 14, 2009, entered by the Bankruptcy Court establishing: (i) with respect to all Persons other than governmental units (as defined in section 101(27) of the Bankruptcy Code), September 2, 2009, and (ii) with respect to governmental units, January 11, 2010, in both cases, as the last date to assert Claims against the Debtors that arose prior to or on the Petition Date.

**1.25.** ***Bid Procedures*** means the bid procedures for the Sale, as set forth in the Bid Procedures Order.

**1.26.** ***Bid Procedures Order*** means that certain Order, dated March 26, 2010, entered by the Bankruptcy Court approving, among other things, the Bid Procedures set forth in the Stalking Horse Agreement.

**1.27.** ***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.28.** ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.29.** ***Causes of Action*** means any and all actions, causes of action (including avoidance actions), suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and Claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

**1.30.** ***Chapter 11 Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on the Petition Date in the Bankruptcy Court and styled *In re RathGibson, Inc., et al*., No. 09-12452 (CSS) (Jointly Administered).

**1.31.** ***Claim*** means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against any Debtor.

**1.32.** ***Claims Agent*** means The Garden City Group, Inc., or any other Person approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. §156(c).

**1.33.** ***Class*** means each category of Claims or Interests established under Article IV of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.34.** ***Class 3(b) Distribution*** means the aggregate amount of Cash or other funds of the Debtors available for payment of Allowed Rath General Unsecured Claims, after: (i) first, payment in full of Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Other Secured Claims; (ii) second, funding of the Wind Down Account; and (iii) third, allocation of the remainder of the Purchase Price attributable to RathGibson after payment of the amounts required to satisfy (i) and (ii).

**1.35.** ***Class 4(a) Distribution*** means the aggregate amount of Cash or other funds of the Debtors available for payment of Allowed Greenville General Unsecured Claims, after: (i) first, payment in full of Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Other Secured Claims; (ii) second, funding of the Wind Down Account; and (iii) third, allocation of the remainder of the Purchase Price attributable to Greenville after payment of the amounts required to satisfy (i) and (ii).

**1.36.** ***Class 5(a) Distribution*** means Cash in the amount of $300,000, to be distributed solely from the RG Tube Cash.

**1.37.** ***Class 5(b) Distribution*** means the aggregate amount of Cash, up to .2% of the total amount of Allowed Class 5(b) Claims, to be distributed solely from the RG Tube Cash in accordance with section 8.9 of this Plan.

**1.38.** ***Class 6(a) Distribution*** means Cash in the amount of $310,000, to be distributed solely from the RG Tube Cash.

**1.39.** ***Class 6(b) Distribution*** means Cash in the amount of $25,000, to be distributed solely from the RG Tube Cash.

**1.40.** ***Collateral*** means any property or interest in property of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.41.** ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.42.** ***Confirmation Hearing*** means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.43.** ***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**1.44.** *Creditors' Committee* means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases in accordance with section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

**1.45.** *Cure Costs* has the meaning set forth in Section 10.3 of this Plan.

**1.46.** *Cure Dispute* has the meaning set forth in Section 10.3 of this Plan.

**1.47.** *Cure Schedule* has the meaning set forth in Section 10.3 of this Plan.

**1.48.** *Debtor(s)* means, individually or collectively, RathGibson, Greenville, RGCH and RG Tube, before and after the Effective Date, as the context requires.

**1.49.** *DIP Administrative Agent* means Wilmington Trust FSB, solely in its capacity as administrative agent under the DIP Credit Agreement, or any other administrative agent appointed pursuant to Section 12.6 therein.

**1.50.** *DIP Claims* means all Claims held by the DIP Administrative Agent and/or the DIP Lenders arising under or pursuant to the Final DIP Order and the DIP Credit Documents, including, without limitations, Claims for the fees, reasonable and documented expenses, costs and other charges of the DIP Administrative Agent and the DIP Lenders (including those of their respective counsel and advisors).

**1.51.** *DIP Credit Agreement* means that certain Secured Super-Priority Debtor in Possession Multiple Draw Term Loan Agreement dated as of July 16, 2009, among RathGibson, as borrower, Greenville and RGCH, as guarantors, the DIP Lenders, and the DIP Administrative Agent, as amended, supplemented or otherwise modified from time to time.

**1.52.** *DIP Credit Documents* means, collectively: (a) the DIP Credit Agreement; (b) the DIP Orders; and (c) all documents and instruments executed in connection therewith (excluding that certain Plan Support Agreement, dated as of July 13, 2009, entered into by and among the Debtors and certain holders of Senior Notes Claims, as amended, supplemented or otherwise modified from time to time).

**1.53.** *DIP Lenders* means, collectively, and as of the relevant time, those lenders that are party to the DIP Credit Agreement.

**1.54.** *DIP Orders* means the Interim DIP Order and the Final DIP Order.

**1.55.** *Disallowed* means a finding of the Bankruptcy Court in a Final Order, or provision in the Plan providing, that a Disputed Claim shall not be an Allowed Claim.

**1.56.** *Disbursing Agent* means, for purposes of making distributions under the Plan, the Debtors or a designee thereof (including the Plan Administrator).

**1.57.** *Disclosure Statement* means the disclosure statement that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including all exhibits and schedules annexed thereto or referred to therein).

**1.58.** *Disclosure Statement Hearing* means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.59.** *Disputed Claim* means, as of any relevant date, any Claim, or any portion thereof: (a) that is not an Allowed Claim or Disallowed Claim as of the relevant date; or (b) for which a proof of Claim has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

**1.60.** *Disputed Interests* means, as of any relevant date, any Interest, or any portion thereof: (a) that is not an Allowed Interest or Disallowed Interest as of the relevant date; or (b) for which a proof of Interest has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

**1.61.** *Distribution Date* means: (a) the Initial Distribution Date; (b) any Interim Distribution Date; or (c) the Final Distribution Date, as the context requires.

**1.62.** *Distribution Record Date* means, with respect to all Classes, the third (3rd) Business Day after the date the Confirmation Order is entered by the Bankruptcy Court or such other date as shall be established by the Bankruptcy Court in (a) the Confirmation Order or, (b) upon request of the Debtors, a separate order of the Bankruptcy Court.

**1.63.** *DTC* means the Depository Trust Company.

**1.64.** *Effective Date* means the first Business Day on which all conditions to the Effective Date set forth in Section 11.2 hereof have been satisfied or waived, and no stay of the Confirmation Order is in effect.

**1.65.** *Estate* means each estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

**1.66.** *Excluded Assets* has the meaning given to such term in the APA.

**1.67.** *Existing Greenville Interests* means the Interests in Greenville outstanding immediately prior to the Effective Date.

**1.68.** *Existing Rath Interests* means the Interests in RathGibson outstanding immediately prior to the Effective Date.

**1.69.** *Existing RG Tube Interests* means the Interests in RG Tube outstanding immediately prior to the Effective Date.

**1.70.** *Existing RGCH Interests* means the Interests in RGCH outstanding immediately prior to the Effective Date.

**1.71.** *Fee Claim* means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases.

**1.72.** *Final Distribution Date* means the first Business Day 20 days (or such longer or shorter period as may be reasonably determined by the Debtors) after the date on which all Disputed Claims have been resolved by Final Order.

**1.73.** *Final DIP Order* means the Final Order: (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Grant Senior Liens and Superpriority Administrative Expense Status; (ii) Approving Use of Cash Collateral of Prepetition Lender, (iii) Granting Adequate Protection to Prepetition Lender, Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(B) and 4001(C) and (v) Granting Related Relief, entered August 11, 2009 and as may be amended, modified or supplemented by the Bankruptcy Court from time to time.

**1.74.** *Final Order* means an order, ruling or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or by the clerk of such other court of competent jurisdiction on the docket of such court) that: (a) is in full force and effect; (b) is not stayed; and (c) is no longer subject to review, reversal, modification or amendment, by appeal or writ of certiorari; provided, however, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order.

**1.75.** *General Unsecured Claim* means any Claim other than: (a) a Secured Claim; (b) an Administrative Expense Claim; (c) a Fee Claim; (d) a Priority Tax Claim; (e) a Priority Non-Tax Claim; (f) an Intercompany Claim; (g) a RGCH PIK Notes Claim; and (h) a RGCH PIK Notes Agent Claim; and shall not include: (i) Claims that are Disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise; or (ii) any Assumed Liabilities.

**1.76.** *Greenville* means Greenville Tube Company, one of the Debtors.

**1.77.** *Greenville General Unsecured Claim* means a General Unsecured Claim against Greenville.

**1.78.** *Initial Distribution Date* means the first Business Day three (3) business days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Debtors to make initial Distributions under the Plan.

**1.79.** *Intercompany Claim* means any Claim (including an Administrative Expense Claim), Cause of Action, or remedy asserted by a Debtor against another Debtor.

**1.80.** *Interest* means the interest (whether legal, equitable, contractual or other rights) of any holders of equity securities of, or profits interests in, any of the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from the foregoing, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

**1.81.** *Interim DIP Order* means the Interim Order: (i) Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Grant Senior Liens and Superpriority Administrative Expense Status; (ii) Approving Use of Cash Collateral of Prepetition Lender; (iii) Granting Adequate Protection to Prepetition Lender; (iv) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(B) and 4001(C); and (v) Granting Related Relief, entered July 14, 2009 and as may be amended, modified or supplemented by the Bankruptcy Court from time to time.

**1.82.** *Interim Distribution Date* means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Debtors determine, that an interim distribution should be made to or on account of holders of Allowed Claims and Allowed Interests, as applicable, in light of, *inter alia*, resolutions of Disputed Claims or Disputed Interests, as applicable, and the administrative costs of such a distribution.

**1.83.** *IRB Claim* means any Claim relating to the industrial development revenue bond in the original principal amount of $2.0 million issued by Greenville Tube Company to the City of Clarksville, Arkansas, due December 30, 2014.

**1.84.** *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.85.** *Other Secured Claim* means any Secured Claim, including an IRB Claim (but solely to the extent such IRB Claim is a secured claim pursuant to section 506(a)) against a Debtor other than a: (a) DIP Claim; (b) Prepetition Secured Credit Agreement Claim; or (c) Prepetition Secured Lender Guaranty Claim.

**1.86.** *Person* means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization.

**1.87.** *Petition Date* means July 13, 2009, the date on which the Debtors commenced the Chapter 11 Cases.

**1.88.** *Plan* means this third amended joint chapter 11 plan proposed by the Debtors, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof or thereof.

**1.89.** *Plan Administrator* means such Person designated by the Debtors and approved by the Bankruptcy Court as Plan Administrator pursuant to Article VII of the Plan, or any Bankruptcy Court approved successor.

**1.90.    *Plan Administrator Agreement*** means the agreement governing, among other things, the retention and duties of the Plan Administrator, as described in Section 7.6 of the Plan, which shall be in form and substance as contained in the Plan Supplement.

**1.91.    *Plan Administrator Expenses*** means all actual and necessary costs and expenses incurred on and after the Effective Date in connection with the Wind Down and the administration of the Plan, including, but not limited to, the Debtors' costs, expenses and legal fees incurred related to: (i) filing and prosecuting objections to Claims; (ii) investigating, litigating, settling, negotiating, pursuing or otherwise associated with causes of action, including, but not limited to, attorneys' fees, accounting fees, expert witness fees, and all costs relating to obtaining and distributing recoveries from such causes of action; (iii) performing the duties set forth in Section 7.6 of the Plan and the Plan Administrator Agreement; and (iv) all fees payable pursuant to section 1930 of Title 28 of the United States Code.

**1.92.    *Plan Consideration*** means, with respect to any Class of Claims and any Class of Interests entitled to a distribution under this Plan, Cash.

**1.93.    *Plan Distribution*** means the payment or distribution under the Plan of the Plan Consideration.

**1.94.    *Plan Documents*** means the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan, including, without limitation, the documents to be included in the Plan Supplement, and the Schedule of Rejected Contracts and Leases.

**1.95.    *Prepetition Ordinary Course of Business Trade Claims*** has the meaning set forth in Section 7.8 of this Plan.

**1.96.    *Prepetition Ordinary Course of Business Trade Claims Bar Date*** means such deadline as established pursuant to Section 7.8 of this Plan and the Confirmation Order.

**1.97.    *Plan Supplement*** means the supplemental appendix to this Plan, to be filed three (3) Business Days prior to the Voting Deadline, which will contain, among other things, draft forms or signed copies, as the case may be, of the Plan Documents; <u>provided</u>, that such supplemental appendix may be amended, supplemented or modified from time to time after the Voting Deadline in accordance with terms of the Bid Procedures Order and the Confirmation Order.

**1.98.    *Prepetition Secured Agent*** means General Electric Capital Corporation, as administrative agent under the Prepetition Secured Credit Agreement.

**1.99.    *Prepetition Secured Credit Agreement*** means that certain senior secured revolving credit agreement dated as of February 7, 2006, as amended, supplemented or otherwise modified from time to time, by and among RathGibson as borrower, RGCH and Greenville as guarantors, the lenders who are parties thereto, and the Prepetition Secured Agent, and including any and all documents and instruments executed in connection therewith.

**1.100.** ***Prepetition Secured Credit Agreement Claims*** means all Claims of the Prepetition Secured Lender and/or the Prepetition Secured Agent arising under the Prepetition Secured Credit Agreement against RathGibson, as borrower, and RGCH and Greenville as guarantors, together with all of the security and other documents related thereto.

**1.101.** ***Prepetition Secured Lender(s)*** means, individually or collectively, a lender under the Prepetition Secured Credit Agreement.

**1.102.** ***Prepetition Secured Lender Guaranty Claims*** means any Claims against Greenville and/or RGCH, as guarantors, arising under the Prepetition Secured Credit Agreement.

**1.103.** ***Priority Non-Tax Claim*** means any Claim, other than an Administrative Expense Claim, a Fee Claim and a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.104.** ***Priority Tax Claim*** means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.105.** ***Professional Person(s)*** means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to order of the Bankruptcy Court.

**1.106.** ***Pro Rata Share*** means, with respect to any distribution on account of an Allowed Claim or an Allowed Interest, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Interest, as applicable, bears to the aggregate amount of all Allowed Claims or Allowed Interests, as applicable, in its Class.

**1.107.** ***Purchase Price*** has the meaning given to such term in the APA.

**1.108.** ***Purchased Assets*** has the meaning given to such term in the APA.

**1.109.** ***Purchaser*** means either: (i) the Stalking Horse Bidder; or (ii) such other Person that submits the highest or otherwise best bid for the Purchased Assets at the Auction in accordance with the Bid Procedures and with whom the Debtors consummate the APA.

**1.110.** ***Rath General Unsecured Claims*** means General Unsecured Claims against RathGibson.

**1.111.** ***RathGibson*** means RathGibson, Inc., one of the Debtors.

**1.112.** ***Released Parties*** means, collectively: (a) the Debtors and their respective affiliates; (b) each DIP Lender and the DIP Administrative Agent; (c) the Ad Hoc Senior Noteholders Committee and each of its members or affiliates; (d) the Prepetition Secured Agent, the Prepetition Secured Lender and their respective successors and assigns; (e) the Senior Notes Indenture Trustee; (f) the Creditors' Committee and each of its members; (g) the RGCH PIK Notes Agent; (h) those holders of RGCH PIK Notes who vote in favor of this Plan; (i) the

Purchaser; (j) the Backstop Equity Investors; (k) the Stalking Horse Bidder; and (l) each of the foregoing party's current officers, authorized persons, affiliates, partners, directors, employees, agents, members, advisors and professionals (including any attorneys, accountants, consultants, financial advisors, investment bankers and other professionals retained by such Persons), together with their respective successors and assigns, (a) - (l) each solely in its capacity as such; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Chapter 11 Cases and the transactions contemplated by this Plan; provided, further, however, that neither the Stalking Horse Bidder nor the Debtors shall be deemed to be a Released Party as against one another with respect to each such party's right to enforce the Stalking Horse Agreement (and all ancillary documents thereto) against the other party.

**1.113.** ***RGCH*** means RGCH Holdings Corp., one of the Debtors.

**1.114.** ***RGCH General Unsecured Claims*** means General Unsecured Claims against RGCH.

**1.115.** ***RGCH PIK Notes*** means the 13.5% payment-in-kind notes issued by RGCH pursuant to the RGCH PIK Notes Credit Agreement in the aggregate original principal amount of $115.0 million.

**1.116.** ***RGCH PIK Notes Agent*** means Credit Suisse Cayman Islands Branch, solely in its capacity as administrative agent under the RGCH PIK Notes Credit Agreement, or any successor thereto in such capacity.

**1.117.** ***RGCH PIK Notes Agent Claims*** means all Claims of the RGCH PIK Notes Agent for reasonable documented fees and expenses under the terms of the RGCH PIK Notes Credit Agreement (including, but not limited to, the reasonable documented fees, costs and expenses incurred by the RGCH PIK Notes Agent's professionals and in connection with the distributions required under this Plan or the implementation of any provisions of this Plan), not to exceed $25,000 in the aggregate.

**1.118.** ***RGCH PIK Notes Claims*** means all Claims against RGCH, as issuer, arising under or in connection with the RGCH PIK Notes and the RGCH PIK Notes Credit Agreement (and related documents), including any Claims in excess of $25,000 of the RGCH PIK Notes Agent not otherwise included as RGCH PIK Notes Agent Claims.

**1.119.** ***RGCH PIK Notes Credit Agreement*** means that certain credit agreement, dated as of June 15, 2007, as amended, supplemented or otherwise modified from time to time, by and among RGCH, as borrower, the lenders parties thereto, and the RGCH PIK Notes Agent, and including any and all documents and instruments executed in connection therewith.

**1.120.** ***RG Tube*** means RG Tube Holdings LLC, one of the Debtors.

**1.121.** ***RG Tube Cash*** means all Cash held by RG Tube at Wells Fargo Bank, N.A. in account ending 5578.

**1.122.** ***RG Tube General Unsecured Claims*** means General Unsecured Claims against RG Tube.

**1.123.** ***Sale*** means the sale of the Purchased Assets under or in connection with the Plan and the APA.

**1.124.** ***Schedule of Rejected Contracts and Leases*** means the schedule of certain executory contracts and unexpired leases to be rejected by the Debtors pursuant to this Plan, a copy of which shall be annexed to the Plan Supplement, which schedule shall be filed by the Debtors with Bankruptcy Court within three (3) Business Days prior to the Bid Deadline (as defined in the Bid Procedures).

**1.125.** ***Secured Claim*** means a Claim, either as set forth in this Plan, as agreed to by the holder of such Claim and the Debtors or as determined by a Final Order in accordance with sections 506(a) and 1111(b) of the Bankruptcy Code: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff.

**1.126.** ***Senior Notes*** mean the 11.25% Senior Notes due February 15, 2014 in the aggregate principal amount of approximately $200 million as of the Petition Date, issued by RathGibson pursuant to the Senior Notes Indenture.

**1.127.** ***Senior Notes Claims*** means all Claims against RathGibson, as issuer, arising under the Senior Notes and the Senior Notes Indenture (and related documents).

**1.128.** ***Senior Notes Indenture*** means that certain indenture dated as of February 7, 2006, as supplemented on August 15, 2006 (and as further amended, modified or supplemented from time to time), between RathGibson, as issuer, Greenville, as guarantor and the Senior Notes Indenture Trustee, related to the Senior Notes, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith.

**1.129.** ***Senior Notes Indenture Trustee*** means The Bank of New York, solely in its capacity as indenture trustee under the Senior Notes Indenture, or any successor thereto solely in such capacity.

**1.130.** ***Senior Notes Indenture Trustee Claim*** means all Claims of the Senior Notes Indenture Trustee for reasonable documented fees and expenses under the terms of the Senior Notes Indenture (including, but not limited to, the reasonable documented fees, costs and expenses incurred by the Senior Notes Indenture Trustee's professionals), not to exceed $50,000 in the aggregate.

**1.131.** ***Specified Matters*** means the APA and ancillary agreements thereto and the transactions contemplated in each such agreement, the Auction and Bid Procedures and all matters related thereto (including the assumption and assignment procedures set forth in Article X of this Plan), and all fees and expenses of the Purchaser as set forth in the APA.

**1.132.** ***Stalking Horse Agreement*** means that certain Asset Purchase Agreement, dated as of March 5, 2010 (as may be amended, modified, restated or supplemented from time to time) by and among the Debtors, as sellers, and the Stalking Horse Bidder, as buyer, which provides, among other things, for the sale of the Purchased Assets. A copy of the Stalking Horse Agreement is annexed to the Disclosure Statement as Exhibit 4.

**1.133.** ***Stalking Horse Bidder*** means RathGibson Acquisition Co., LLC, a Delaware limited liability company.

**1.134.** ***Subsidiary*** means any corporation, association or other business entity of which at least the majority of the securities or other ownership interest is owned or controlled by a Debtor and/or one or more subsidiaries of the Debtor.

**1.135.** ***U.S. Trustee*** means the United States Trustee for the District of Delaware.

**1.136.** ***U.S. Trustee Fees*** means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**1.137.** ***Voting Deadline*** means May 11, 2010, at 4:00 p.m. (prevailing Eastern time), or such later date and time as may be determined by the Debtors in accordance with the Bid Procedures Order or as otherwise determined by Bankruptcy Court.

**1.138.** ***Wind Down*** means the wind down of the Debtors in accordance with the Plan, as more fully set forth in Article VII herein.

**1.139.** ***Wind Down Account*** means the account to be established by the Debtors on or prior to the Effective Date to be used to effect the Wind Down, which account shall be funded in an amount determined by the Plan Administrator.

**1.140.** ***Wind Down Costs*** includes the fees and expenses incurred by the Debtors following the Effective Date (including reasonable fees and costs of attorneys and other professionals) for the purpose of: (i) resolving Disputed Claims, if any, and effectuating distributions to holders of Allowed Claims; (ii) otherwise implementing the Plan, the Wind Down and the closing of the Chapter 11 Cases; and (iii) undertaking such other matters relating to implementation of the Plan as are deemed necessary and appropriate by the Debtors.

### B. *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except for the rules of construction contained in sections 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Any reference in

this Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns.

### C. *Appendices and Plan Documents.*

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or www.rathrestructuring.com, or obtain a copy of the Plan Documents by a written request sent to the following address:

> RGI Bankruptcy Administration
> c/o The Garden City Group, Inc.
> PO Box 9396
> Dublin OH 43017-4296
> 1.888.282.1244

## ARTICLE II.

## RESOLUTION OF CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES

### 2.1. *Settlement of Certain Inter-Creditor Issues.*

The treatment of Claims and Interests under this Plan represents, among other things, the settlement and compromise of certain potential inter-creditor disputes.

### 2.2. *Intercompany Claims.*

On the Effective Date, all Intercompany Claims (other than Intercompany Claims that constitute Purchased Assets or Assumed Liabilities and that are sold, transferred, assigned, conveyed or delivered by the applicable Debtor, pursuant to the terms of the APA) shall be eliminated by offset, the contribution or distribution of such Claims, or otherwise, including being settled pursuant to the terms of this Plan (as determined by the Debtors).

# ARTICLE III.

## ADMINISTRATIVE EXPENSE CLAIMS,
## FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

This Plan constitutes a separate chapter 11 plan for each of the Debtors.  All Claims and Interests, except DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article IV below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtors have not been classified, and the holders thereof are not entitled to vote on this Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest also is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

**3.1.**     *DIP Claims.*

In full satisfaction, settlement, release and discharge of the Allowed DIP Claims, on the Effective Date the holders of Allowed DIP Claims shall be paid in full in Cash.  Notwithstanding anything to the contrary herein, the liens and security interests securing the DIP Claims shall continue in full force and effect until the DIP Claims have been paid in full in Cash.

**3.2.**     *Administrative Expense Claims.*

(a)     Time for Filing Administrative Expense Claims.

The holder of an Administrative Expense Claim arising during the period after February 28, 2010 and through the Effective Date, other than the holder of:

> (i)     a Fee Claim;
>
> (ii)     an Administrative Expense Claim subject to the Administrative Expense Claim Bar Date Order;
>
> (iii)     an Administrative Expense Claim that has been Allowed on or before the Effective Date;
>
> (iv)     an Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor;

<ol style="list-style-type: none">
<li>(v)      an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;</li>

<li>(vi)     an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;</li>

<li>(vii)    an Ad Hoc Senior Noteholders Committee Fee Claim;</li>

<li>(viii)   a Senior Notes Indenture Trustee Claim;</li>

<li>(ix)     a RGCH PIK Notes Agent Claim; and</li>

<li>(x)      an Ad Hoc RGCH PIK Noteholders Committee Fee Claim,</li>
</ol>

must file with the Bankruptcy Court and serve on the Debtors, the Claims Agent, the Creditors' Committee and the Office of the United States Trustee, proof of such Administrative Expense Claim **within thirty (30) days after the Effective Date**.  Such proof of Administrative Expense Claim must include at a minimum:  (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

      (b)     Treatment of Administrative Expense Claims.

      Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive from the applicable Debtor Cash in an amount equal to such Allowed Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the applicable Debtor, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities; provided, further, however, that any Administrative Expense Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse

against the Debtors or the Plan Administrator or any of their property on account of such Administrative Expense Claim.

In the case of the Senior Notes Indenture Trustee Claims, such Claims will be paid in the ordinary course of business (subject to the Debtors' prior receipt of invoices and reasonable documentation in connection therewith and without the requirement to file a fee application with the Bankruptcy Court) but no later than the Effective Date; provided, that such fees, costs and expenses are reimbursable under the terms of the Senior Notes Indenture; and provided further, however, that the Senior Notes Indenture Trustee will receive payment in the ordinary course of business (subject to the Debtors' prior receipt of invoices and reasonable documentation in connection therewith) for all reasonable fees, costs, and expenses incurred after the Effective Date in connection with the distributions required pursuant to this Plan or the implementation of any provisions of this Plan.

In the case of the Ad Hoc Senior Noteholders Committee Fee Claims, such Claims will be paid in full in Cash on the Effective Date for all reasonable documented fees and expenses incurred up to the Effective Date, without the requirement to file a fee application with the Bankruptcy Court. In the event that the Debtors dispute all or a portion of the Ad Hoc Senior Noteholders Committee Fee Claims, the Debtors shall pay the undisputed amount of such Claims, and reserve the Cash allocable to the remaining portion of such Claims until such dispute is resolved by the parties or by the Bankruptcy Court.

In the case of the Ad Hoc RGCH PIK Noteholders Committee Fee Claims, such Claims will be paid in full in Cash on the later of the Effective Date and 14 days after receipt by the Debtors of invoices demonstrating reasonable documented fees and expenses, without the requirement to file a fee application with the Bankruptcy Court. In the event that the Debtors dispute all or a portion of the Ad Hoc RGCH PIK Noteholders Committee Fee Claims, the Debtors shall pay the undisputed amount of such Claims, and reserve the Cash allocable to the remaining portion of such Claims until such dispute is resolved by the parties or by the Bankruptcy Court.

In the case of the RGCH PIK Notes Agent Claims, such Claims will be paid in the ordinary course of business (subject to the Debtors' prior receipt of invoices demonstrating reasonable documented fees and expenses, and without the requirement to file a fee application with the Bankruptcy Court) on or as soon as reasonably practicable after the Effective Date; provided, that such fees, costs and expenses are reimbursable under the terms of the RGCH PIK Notes Credit Agreement.

**3.3.** ***Fee Claims.***

(a)     Time for Filing Fee Claims.

Any Professional Person seeking allowance by the Bankruptcy Court of a Fee Claim shall file its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date no later than forty-five (45) days after the Effective Date. **FAILURE TO FILE AND SERVE SUCH FEE**

**APPLICATION TIMELY AND PROPERLY SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED.**

Objections to such Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) days after the Effective Date or such other date as established by the Bankruptcy Court; provided, however, that on the Effective Date, without the requirement to file a fee application with the Bankruptcy Court, the Debtors shall pay the Ad Hoc Senior Noteholders Committee Fee Claims, in accordance with Section 3.2(b) hereof, in full in Cash.

(b)     Treatment of Fee Claims.

All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall be paid in full in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date, and (y) ten (10) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Debtors.  On the Effective Date, to the extent known, the Debtors shall reserve and hold in a segregated account or shall place in escrow Cash in an amount equal to the accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be disbursed solely to the holders of Allowed Fee Claims with the remainder to be reserved until all Allowed Fee Claims have been paid in full or all remaining Fee Claims have been Disallowed by Final Order, at which time any remaining Cash in the segregated account shall become the sole and exclusive property of the Debtors to be distributed in accordance with the terms of this Plan.

**3.4.     *U.S. Trustee Fees.***

Each of the Debtors shall pay all outstanding U.S. Trustee Fees of such Debtor on an ongoing basis on the later of: (i) the Effective Date; and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Chapter 11 Case or the applicable Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.5.     *Priority Tax Claims.***

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive, in the applicable Debtors' discretion, either: (i) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due; provided, further, however, that any Priority Tax Claim that is an Assumed Liability shall be

assumed by the Purchaser and the Purchaser shall be responsible therefor in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Priority Tax Claim.

## ARTICLE IV.

## CLASSIFICATION OF CLAIMS AND INTERESTS

### 4.1. *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtors, and specifies which Classes are: (i) impaired or unimpaired by this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject this Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| *All Debtors* | | | |
| Class 1 | Priority Non-Tax Claims | No | No (Deemed to accept) |
| Class 2 | Other Secured Claims | No | No (Deemed to accept) |
| *RathGibson* | | | |
| Class 3(a) | Prepetition Secured Credit Agreement Claims | No | No (Deemed to accept) |
| Class 3(b) | Rath General Unsecured Claims | Yes | Yes |
| Class 3(c) | Existing Rath Interests | Yes | No (Deemed to accept)* |
| *Greenville* | | | |
| Class 4(a) | Greenville General Unsecured Claims | Yes | Yes |
| Class 4(b) | Existing Greenville Interests | Yes | No (Deemed to accept)* |
| *RGCH* | | | |
| Class 5(a) | RGCH PIK Notes Claims | Yes | Yes |
| Class 5(b) | RGCH General Unsecured Claims | Yes | Yes |
| Class 5(c) | Existing RGCH Interests | Yes | No (Deemed to accept)* |
| *RG Tube* | | | |
| Class 6(a) | RG Tube General Unsecured Claims | Yes | Yes |
| Class 6(b) | Existing RG Tube Interests | Yes | Yes |

---

* See section 4.3(b) infra.

**4.2.**    *Unimpaired Classes of Claims.*

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code.

(a)    Class 1: Class 1 consists of all Priority Non-Tax Claims.

(b)    Class 2: Class 2 consists of all Other Secured Claims.

(c)    Class 3(a): Class 3(a) consists of all Prepetition Secured Credit Agreement Claims.

**4.3.**    *Impaired Classes of Claims and Interests.*

(a)    The following Classes of Claims are impaired and entitled to vote on this Plan:

    (i)    Class 3(b): Class 3(b) consists of all Rath General Unsecured Claims.

    (ii)    Class 4(a): Class 4(a) consists of all Greenville General Unsecured Claims.

    (iii)    Class 5(a): Class 5(a) consists of all RGCH PIK Notes Claims.

    (iv)    Class 5(b): Class 5(b) consists of all RGCH General Unsecured Claims.

    (v)    Class 6(b): Class 6(b) consists of all Existing RG Tube Interests.

    (vi)    Class 6(a): Class 6(a) consists of all RG Tube General Unsecured Claims.

(b)    The following Classes of Interests are impaired, but because the holders of such Interests are Plan proponents and, thus, have consented to the filing of this Plan and the approval of the treatment afforded to such holders, such Classes are deemed to have accepted this Plan:

    (i)    Class 3(c): Class 3(c) consists of all Existing Rath Interests.

    (ii)    Class 4(b): Class 4(b) consists of all Existing Greenville Interests.

    (iii)    Class 5(c): Class 5(c) consists of all Existing RGCH Interests.

**4.4.**    *Separate Classification of Other Secured Claims.*

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different

than that securing any other Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Plan Distributions.

## ARTICLE V.

## TREATMENT OF CLAIMS AND INTERESTS

### 5.1.   *Priority Non-Tax Claims (Class 1).*

(a)   Treatment:  The legal, equitable and contractual rights of the holders of Class 1 Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to different treatment and after the date a Priority Non-Tax Claim becomes an Allowed Claim, on, or as soon thereafter as is reasonably practicable, the Initial Distribution Date, the holder of such Allowed Priority Non-Tax Claim shall receive Cash from the applicable Debtor in an amount equal to such Claim; provided, however, that any Priority Non-Tax Claim that is an Assumed Liability shall be assumed by the Purchaser, and the Purchaser shall be responsible therefor, in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Priority Non-Tax Claim.

(b)   Voting:  Priority Non-Tax Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

### 5.2.   *Other Secured Claims (Class 2).*

(a)   Treatment:  The legal, equitable and contractual rights of the holders of Class 2 Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to different treatment and after the date an Other Secured Claim becomes an Allowed Claim, on, or as soon thereafter as is reasonably practicable, the Initial Distribution Date, each holder of such Allowed Other Secured Claim shall receive, at the election of the Debtors: (i) Cash in an amount equal to such Allowed Claim; (ii) such other treatment that will render the Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code; or (iii) the return of property securing such Allowed Other Secured Claim; provided, however, that Class 2 Claims incurred by a Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto, in the discretion of the applicable Debtor, without further notice to or order of the Bankruptcy Court; provided, further, however, that any Other Secured Claim that is an Assumed Liability shall be assumed by the Purchaser, and the Purchaser shall be responsible therefor, in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Other Secured Claim.  Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment or other satisfaction of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of such Claims in accordance with the Plan, the Liens securing

such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)     Voting:  Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

(c)     Deficiency Claims:  To the extent that the value of the Collateral securing each Allowed Other Secured Claim is less than the amount of such Allowed Other Secured Claim, the unsecured portion of such Allowed Other Secured Claim shall be treated for all purposes under this Plan as an Allowed General Unsecured Claim and shall be classified as a General Unsecured Claim against the applicable Debtor.

### 5.3.     *Prepetition Secured Credit Agreement Claims (Class 3(a)).*

(a)     Allowance:  Except to the extent that the Prepetition Secured Credit Agreement Claims of the Prepetition Secured Lender and the Prepetition Secured Agent are otherwise paid prior to the Effective Date, such Prepetition Secured Credit Agreement Claims shall be deemed Allowed Claims and shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense, disallowance, impairment, objection or any challenges under any applicable law or regulation by any Person, in an aggregate amount equal to (i) $52,747,405.02, plus (ii) any accrued and unpaid interest at the non-default contract rate under the Prepetition Secured Credit Agreement as of the Effective Date, except to the extent such interest is otherwise provided herein to be paid or satisfied, plus (iii) unpaid professional fees and expenses, as provided for in the Prepetition Secured Credit Agreement and the DIP Orders, plus (iv) all other Obligations (as defined in the Prepetition Secured Credit Agreement); provided that, with respect to 5.3(a)(iii) and (iv), the Prepetition Secured Agent must provide a written notice to the Debtors (with a copy to counsel for the Debtors) of any such unpaid professional fees and expenses and unpaid Obligations no later than two days prior to the Effective Date.  In the event the Debtors dispute any such professional fees, expenses or Obligations, the Debtors shall pay the undisputed amount of such professional fees, expenses or Obligations, and segregate the remaining portion of such professional fees, expenses or Obligations until such dispute is resolved by the parties or by the Bankruptcy Court.

(b)     Treatment:  To the extent not already paid in full prior to the Effective Date pursuant to the terms of DIP Orders or otherwise, on the Effective Date, or as soon as practicable thereafter, the Allowed Prepetition Secured Credit Agreement Claims shall be paid in full, in Cash, in complete and final satisfaction, settlement, release, and discharge of, and in exchange for such Allowed Claims.

(c)     Voting:  Prepetition Secured Credit Agreement Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Prepetition

Secured Credit Agreement Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Prepetition Secured Credit Agreement Claims.

### 5.4. *Rath General Unsecured Claims (Class 3(b)).*

(a)     Treatment:  Except to the extent that a holder of an Allowed Rath General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of five (5) Business Days after the Prepetition Ordinary Course of Business Trade Claims Bar Date and the next Interim Distribution Date immediately following the date that a Rath General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed Rath General Unsecured Claim shall receive its Pro Rata Share of the Class 3(b) Distribution; provided, however, that any Rath General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser, and the Purchaser shall be responsible therefor, in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Allowed Rath General Unsecured Claim.

(b)     Voting:  Rath General Unsecured Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan and the votes of such holders will be solicited with respect to such Rath General Unsecured Claims.

### 5.5. *Existing Rath Interests (Class 3(c)).*

(a)     Treatment:  Existing Rath Interests shall be cancelled and holders of Existing Rath Interests shall not be entitled to any distribution under the Plan.

(b)     Voting:  Existing Rath Interests are impaired Interests.  However, as the holders of Existing Rath Interests are Plan proponents and, thus, have consented to the filing of this Plan and the approval of the treatment afforded to such holders of Interests hereunder, such holders are deemed to accept the Plan and the votes of such holders will not be solicited with respect to such Existing Rath Interests.

### 5.6. *Greenville General Unsecured Claims (Class 4(a)).*

(a)     Treatment:  Except to the extent that a holder of an Allowed Greenville General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of five (5) Business Days after the Prepetition Ordinary Course of Business Trade Claims Bar Date and the next Interim Distribution Date immediately following the date that a Greenville General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed Greenville General Unsecured Claim shall receive its Pro Rata Share of the Class 4(a) Distribution; provided, however, that any Greenville General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser, and the Purchaser shall be responsible therefor, in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such Allowed Greenville General Unsecured Claim.

(b)     Voting:  Greenville General Unsecured Claims are impaired Claims. Holders of such Claims are entitled to vote to accept or reject the Plan and the votes of such holders will be solicited with respect to such Greenville General Unsecured Claims.

### 5.7.     *Existing Greenville Interests (Class 4(b)).*

(a)     Treatment:  Existing Greenville Interests shall be cancelled and holders of Existing Greenville Interests shall not be entitled to any distribution under the Plan.

(b)     Voting:  Existing Greenville Interests are impaired Interests.  However, as the holders of Existing Greenville Interests are Plan proponents and, thus, have consented to the filing of this Plan and the approval of the treatment afforded to such holders of such Interests hereunder, such holders are deemed to accept the Plan and the votes of such holders will not be solicited with respect to such Existing Greenville Interests.

### 5.8.     *RGCH PIK Notes Claims (Class 5(a)).*

(a)     Treatment:  As part of the settlements and compromises contained in this Plan, the RGCH PIK Notes Claims shall be deemed Allowed Claims against RGCH as of the Effective Date and, on the first Business Day after the Effective Date, or as soon thereafter as reasonably practicable, each holder of an Allowed RGCH PIK Notes Claim shall receive, subject to the terms of this Plan and in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim its Pro Rata Share of the Class 5(a) Distribution; provided, however, that Allowed RGCH PIK Notes Claims shall not receive or retain any distribution under the Plan on account of their RGCH PIK Notes Claims if Class 5(a) does not vote to accept the Plan.

(b)     Voting:  The RGCH PIK Notes Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed RGCH PIK Notes Claims.

### 5.9.     *RGCH General Unsecured Claims (Class 5(b)).*

(a)     Treatment:  Except to the extent that a holder of an Allowed RGCH General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the next Interim Distribution Date immediately following the date that a RGCH General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed RGCH General Unsecured Claim shall receive its Pro Rata Share of the Class 5(b) Distribution; provided, however, that any RGCH General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser, and the Purchaser shall be responsible therefor, in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such RGCH General Unsecured Claim.

(b)     Voting:  RGCH General Unsecured Claims are impaired Claims.  Holders of such Claims are entitled to vote to accept or reject the Plan and the votes of such holders will be solicited with respect to such RGCH General Unsecured Claims.

**5.10.** *Existing RGCH Interests (Class 5(c)).*

(a)     Treatment:  Existing RGCH Interests shall be cancelled and holders of Existing RGCH Interests shall not be entitled to any distribution under the Plan.

(b)     Voting:  Existing RGCH Interests are impaired Interests.  However, as the holders of Existing RGCH Interests are Plan proponents and, thus, have consented to the filing of this Plan and the approval of the treatment afforded to such holders of such Interests hereunder, such holders are deemed to accept the Plan and the votes of such holders will not be solicited with respect to such Existing RGCH Interests.

**5.11.** *RG Tube General Unsecured Claims (Class 6(a)).*

(a)     Treatment:  Except to the extent that a holder of an Allowed RG Tube General Unsecured Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the next Interim Distribution Date immediately following the date that a RG Tube General Unsecured Claim becomes an Allowed Claim, the holder of such Allowed RG Tube General Unsecured Claim shall receive its Pro Rata Share of the Class 6(a) Distribution; provided, however, that any RG Tube General Unsecured Claim that is an Assumed Liability shall be assumed by the Purchaser, and the Purchaser shall be responsible therefor, in accordance with the terms of the APA and the holder thereof shall have no recourse against the Debtors or the Plan Administrator or any of their property on account of such RG Tube General Unsecured Claim.

(b)     Voting:  RG Tube General Unsecured Claims are impaired Claims. Holders of RG Tube General Unsecured Claims are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed RG Tube General Unsecured Claims.

**5.12.** *Existing RG Tube Interests (Class 6(b)).*

(a)     Treatment:  As part of the settlements and compromises contained herein, each holder of an Allowed Existing RG Tube Interest shall receive, subject to the terms of this Plan and in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Existing RG Tube Interest, its Pro Rata Share of the Class 6(b) Distribution.

(b)     Voting: Existing RG Tube Interests are impaired Interests.  Holders of such Interests are entitled to vote to accept or reject the Plan, and the votes of such holders will be solicited with respect to such Allowed Existing RG Tube Interests.

# ARTICLE VI.

## ACCEPTANCE OR REJECTION OF
## THE PLAN; EFFECT OF REJECTION BY ONE
## OR MORE CLASSES OF CLAIMS OR INTERESTS

**6.1.** *Class Acceptance Requirement.*

(a) A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan.

(b) A Class of Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

**6.2.** *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."*

If any Classes vote to reject this Plan, the Debtors intend to request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code. The Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document, as to any and all Debtors, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**6.3.** *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**6.4.** *Voting Classes; Deemed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

# ARTICLE VII.

## MEANS FOR IMPLEMENTATION

**7.1.** *Sale of the Purchased Assets.*

(a) Upon entry of the Confirmation Order, the Debtors shall be authorized to, among other things, sell, assume, assign and/or transfer the Purchased Assets pursuant to sections 105(a), 363, 365, 1123(b)(4), 1129 and 1146(a) of the Bankruptcy Code under the terms

and conditions of the APA, and shall be authorized to take any and all actions necessary to consummate the Sale. Any such Sale shall be entered into in accordance all applicable orders of the Bankruptcy Court. The actions necessary to effect the sale of the Purchased Assets may include: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the APA and the Plan and having such other terms to which the Debtors and the Purchaser may agree, and (ii) all other actions that the Debtors and the Purchaser determine to be necessary or appropriate in connection with such transactions, including making such filings or recordings that may be required by or appropriate under applicable state law.

(b)       The solicitation of votes on the Plan in accordance with the order approving the Disclosure Statement shall be deemed to be a solicitation of the holders of Claims and Interests for the approval of the APA and the Sale. Entry of the Confirmation Order shall constitute approval of any agreements and transactions related to the Sale.

### 7.2.    *Plan Funding.*

(a)       The Debtors' obligations under the Plan and the fees and expenses of the Debtors will be funded out of the proceeds from the Sale. Proceeds from the Sale shall be used as follows: (i) first, to satisfy Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Other Secured Claims; (ii) second, to fund the Wind Down Account; and (iii) third, to satisfy the Debtors' other obligations under this Plan, in accordance with the terms hereof. To the extent that amounts deposited in the Wind Down Account are insufficient, the Debtors may withdraw Cash from the Claims reserves for unsecured claims established by the Plan Administrator as set forth herein.

(b)       Except as provided in Section 7.2(a)(i) and (a)(ii) of this Plan, RGCH's and RG Tube's obligations under the Plan and the fees and expenses of such Debtors will be funded solely from the RG Tube Cash in accordance with the terms of this Plan.

### 7.3.    *Continued Corporate Existence and Vesting of Assets.*

(a)       Except as otherwise provided in this Plan, the Debtors will continue to exist after the Effective Date as separate corporate entities, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, for the purposes of satisfying their obligations under the Plan, including making distributions as required under the Plan and effectuating the Wind Down. On or after the Effective Date, each Debtor, in its sole and exclusive discretion, may take such action as permitted by applicable law as such Debtor may determine is reasonable and appropriate, including, but not limited to, causing: (i) a Debtor to be merged into another Debtor, or its Subsidiary or affiliate; (ii) a Debtor to be dissolved without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities; (iii) the legal name of a Debtor to be changed; or (iv) the closing of a Debtor's case on the Effective Date or any time thereafter.

(b)      On and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan or in the Confirmation Order, all property of the Debtors' Estates, including all claims, rights and Causes of Action (but excluding, for the avoidance of doubt, any Purchased Asset other than a Nonassignable Asset (as defined in the APA), shall vest in each respective Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests (other than, with respect to any of the Nonassignable Assets, any Liens, charges or other encumbrances created under the APA).  Subject to Section 7.3(a) hereof, on and after the Effective Date, the Debtors may effectuate the Wind Down of the Estates, including payment of all Wind Down Costs, and may use, acquire and dispose of property and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action (in each case that are not Purchased Assets or Assumed Liabilities) without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, the Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court. Notwithstanding anything contained herein or in the APA to the contrary, the Debtors shall not be required to delay or otherwise alter the completion of the Wind Down.

### 7.4.    *Cancellation of Credit Agreements, Existing Securities and Agreements.*

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth herein, on the Effective Date all agreements, instruments, and other documents evidencing any Claim against or Interest in a Debtor and any rights of any holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect. Notwithstanding the foregoing, pursuant to the settlements and compromises set forth herein: (i) the Senior Notes Indenture shall continue in effect to the extent necessary to allow the Debtors and the Senior Notes Indenture Trustee and/or the Disbursing Agent to make distributions pursuant to this Plan on account of Allowed Rath General Unsecured Claims that are Allowed Senior Notes Claims, and the Senior Notes Indenture Trustee shall maintain any charging lien such Senior Notes Indenture Trustee may have for any fees, costs and expenses under the Senior Notes Indenture or other agreements until all such fees, costs, and expenses are paid pursuant to the Plan or otherwise; provided, however, that such rights and liens are limited to the distributions, if any, to the holders of Senior Notes; and (ii) the applicable provisions of the RGCH PIK Notes Credit Agreement shall continue in effect solely for the purposes of permitting the RGCH PIK Notes Agent and/or the Disbursing Agent to make distributions pursuant to this Plan on account of Allowed RGCH PIK Notes Claims, and the RGCH PIK Notes Agent shall maintain any charging lien such RGCH PIK Notes Agent may have for any fees, costs and expenses under the RGCH PIK Notes Credit Agreement or other agreements until all such fees, costs, and expenses are paid pursuant to this Plan or otherwise.  The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.  Except as provided pursuant to this Plan, the Senior Notes Indenture Trustee and the RGCH PIK Notes Agent and each of their respective agents, successors and assigns shall be discharged of all of their obligations associated with the Senior Notes and the RGCH PIK Notes, as applicable.

**7.5.    *Corporate Governance.***

From and after the Effective Date, each of the Debtors shall be managed and administered through the Plan Administrator, who shall be appointed the sole officer of each of the Debtors and shall have full authority to administer the provisions of the Plan.  The Plan Administrator may employ one or more Persons to assist it with performing its duties under the Plan.

**7.6.    *Plan Administrator.***

(a)    *Appointment; Duties*.  Not less than ten (10) days prior to the commencement of the Confirmation Hearing and subject to Bankruptcy Court approval in connection with confirmation of the Plan, the Debtors, in consultation with the Committee, shall designate the person who initially will serve as the Plan Administrator; provided, however, that: (i) the Debtors shall have the right at any time prior to the Effective Date to remove the Plan Administrator without cause; and (ii) the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time.  On or after the Confirmation Date but prior to the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan to: (i) establish bank accounts as may be required to fulfill the Debtors' obligations under this Plan; and (ii) exercise such other power and authority as may be set forth in the Confirmation Order (collectively, the "Pre-Effective Date PA Duties").  On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan.

(b)    *Qualifications; Plan Administrator Agreement*.

(i)    *Plan Administrator as Fiduciary*.  The Plan Administrator shall be a fiduciary of each of the Debtors and the Estates, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the Plan Administrator Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement.  To the extent necessary, following the Effective Date, the Plan Administrator shall be deemed to be a judicial substitute for the Debtors as the party-in-interest in the Chapter 11 Cases, under the Plan or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.

The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

(ii)     *Provisions of Agreement and Order*.  The Plan Administrator Agreement and the Confirmation Order shall provide that:  (i) the Plan Administrator shall be a fiduciary of each of the Debtors and the Estates; (ii) neither the Debtors (except as expressly set forth in the Plan Administrator Agreement) nor their respective boards of directors, managements, employees and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken); (iii) any determinations made by the Plan Administrator with respect to the establishment of reserves under this Plan shall not be binding on any party if the Effective Date fails to occur; and (iv) if the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Plan Administrator position shall thereafter be dissolved.

(c)     *Debtors Stock*.  On the Effective Date, a single share of stock shall be issued by each Debtor to the Plan Administrator.

(d)     *Disputed Reserves*.  On the Effective Date, the Debtors shall transfer to the Plan Administrator all assets held in each of the reserves being held by Debtors, including reserves for Disputed Claims, if any, and the Plan Administrator shall establish such reserves, holdbacks and funds as may be required by the Plan.

(e)     *Resignation, Death or Removal*.  The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Bankruptcy Court shall designate another Person to become Plan Administrator and thereupon the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

(f)     *Wind Down Funds.*  The Plan Administrator shall establish the Wind Down Account and any excess funds remaining after effecting the Wind Down shall be distributed in accordance with the terms of this Plan.

### 7.7.     *Wind Down of the Debtors' Estates.*

(a)     The Plan Administrator shall oversee the Wind Down and shall make distributions to, and otherwise hold all property of the Estates for the benefit of, holders of Allowed Claims and Allowed Interests consistent and in accordance with the Plan and the Confirmation Order.  The Debtors (including the Plan Administrator as the sole shareholder of the Debtors) shall not be required to post a bond in favor of the United States.

(b)     As set forth in the Plan Administrator Agreement, the Plan Administrator shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy

Court:  (i) take all steps and execute all instruments and documents necessary to make distributions to holders of Allowed Claims and Allowed Interests; (ii) object to Claims as provided in this Plan and prosecute such objections; (iii) resolve, compromise and/or settle any objections to the amount, validity, priority, treatment, allowance or priority of Claims, Administrative Expenses, or Interests; (iv) comply with this Plan and the obligations hereunder; (v) if necessary, employ, retain, or replace professionals to represent it with respect to its responsibilities; (vi) establish, replenish or release reserves as provided in this Plan, as applicable; (vii) take all actions necessary or appropriate to enforce the Debtors' rights under the APA and any related document and to fulfill, comply with or otherwise satisfy the Debtors' covenants, agreements and obligations under the APA and any related document; (viii) make all determinations on behalf of the Debtors under the APA; (ix) prepare and file applicable tax returns for any of the Debtors; (x) liquidate any of the Excluded Assets; (xi) deposit Estate funds, draw checks and make disbursements consistent with the terms of this Plan; (xii) purchase or continue insurance protecting the Debtors, the Plan Administrator and property of the Estates; (xiii) seek entry of a final decree in any of the Chapter 11 Cases at the appropriate time; (xiv) prosecute, resolve, compromise and/or settle any litigation; (xv) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization (as such term is described in Internal Revenue Code section 501(c)(3) (whose contributions are deductible under Internal Revenue Code section 170)) of the Plan Administrator's choice, any Estate assets that are of no material benefit, including distributable Cash hereunder;  and (xvi) take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of this Plan.

(c) Following the Effective Date, the Debtors shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan, the Wind Down and the compliance with its obligations under the APA.  On and after the Effective Date, the Plan Administrator may, in the name of the Debtors, take such action and settle and compromise Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

**7.8.** ***Bar Date for Prepetition Ordinary Course Trade Claims***.

Any trade vendor, supplier, or other Person who asserts a Claim related to or arising from goods or services provided to the Debtors in the ordinary course of business (but excluding any claims related to or arising from litigation against the Debtors, litigation-related claims, severance claims, or rejection or termination of an agreement with the Debtors, each of which was required to file Claims as set forth in the Bar Date Order) ("**Prepetition Ordinary Course of Business Trade Claims**") arising prior to the Petition Date must file with the Bankruptcy Court and serve on the Debtors, the Claims Agent, the Creditors' Committee and the Office of the United States Trustee, proof of such Prepetition Ordinary Course of Business Trade Claim **within thirty (30) days after the Effective Date (the "Prepetition Ordinary Course of Business Trade Claims Bar Date")**.  Such proof of Prepetition Ordinary Course of Business Trade Claim must include at a minimum:  (i) the name of the applicable Debtor that is purported to be liable for the Claim and if the Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Claim; (iii) the amount of the Claim; (iv) the basis of the Claim; and (v) supporting documentation for

the Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF SUCH CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE CLAIM BEING FOREVER BARRED AND DISCHARGED AND THE HOLDER OF SUCH CLAIM SHALL NOT BE ENTITLED TO RECEIVE ANY DISTRIBUTION FROM THE DEBTORS OR UNDER THIS PLAN ON ACCOUNT OF SUCH CLAIM.**  The following Persons are **not** required to file a proof of such Prepetition Ordinary Course of Business Trade Claim on or before the thirty (30) days after the Effective Date:

      (i)      Any Person whose Prepetition Ordinary Course of Business Trade Claim has been paid as of such date;

      (ii)      Any Person whose Prepetition Ordinary Course of Business Trade Claim is an Assumed Liability;

      (iii)      Any Person that already has properly filed a proof of Claim against one or more of the Debtors on account of such Prepetition Ordinary Court of Business Trade Claim with either The Garden City Group, the Bankruptcy Court-appointed claims agent in the Chapter 11 Cases, or the Clerk of the Bankruptcy Court

      (iv)      Any Person: (i) whose Prepetition Ordinary Course of Business Trade Claim is listed in the applicable Debtors' Schedules of Assets and Liabilities (the "**Schedules**") filed with the Bankruptcy Court or any amendments thereto, <u>and</u> (ii) whose Prepetition Ordinary Course of Business Trade Claim is not described therein as "disputed," "contingent," or "unliquidated," <u>and</u> (iii) who does not dispute the amount or classification of its Prepetition Ordinary Course of Business Trade Claim as set forth in the Schedules;

### 7.9.  *Assumed Liabilities.*

In accordance with the terms of the APA, on the Effective Date, the Purchaser shall be responsible for payment and satisfaction of all Assumed Liabilities.  All Persons holding Claims and Interests arising out of or concerning an Assumed Liability, shall be forever barred, estopped and permanently enjoined from asserting against the Debtors or the Plan Administrator and any of their property, such Persons' Claims or Interests (as applicable) arising out of or concerning such Assumed Liabilities.  The Purchaser is not assuming, and shall not become liable for the payment or performance of, any liabilities or other obligations of any of the Debtors of any nature whatsoever, whether accrued or unaccrued, other than the Assumed Liabilities.

### 7.10.  *Cancellation of Certain Existing Security Interests.*

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors any Collateral or other property of the Debtors held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required in order to terminate any related

financing statements, mortgages, mechanic's liens, or lis pendens; provided, however, any such Collateral that is a Purchased Asset received by the Debtors from the holder of such Allowed Claim shall be delivered promptly to the Purchaser.

### 7.11. *Officers and Boards of Directors.*

(a) *Officers*. The officers of the Debtors immediately prior to the Effective Date, in their capacities as such, shall be deemed removed from such positions as of the Effective Date and each such officer that is an employee of the Debtors shall be offered employment with the Purchaser as and to the extent set forth in the APA.

(b) *Boards of Directors*. The members of the board of directors or board of managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Debtors on or after the Effective Date and each such member will be deemed to have resigned on the Effective Date.

(c) *Plan Administrator as Sole Officer/Director*. The Plan Administrator shall be the sole director and officer of each of the Debtors from and following the Effective Date.

### 7.12. *Corporate Action.*

(a) The Debtors shall serve on the United States Trustee quarterly reports of the disbursements made until such time as a final decree is entered closing the applicable Chapter 11 Case or the applicable Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise. Any deadline for filing Administrative Expense Claims shall not apply to fees payable pursuant to section 1930 of title 28 of the United States Code.

(b) Entry of the Confirmation Order shall establish conclusive corporate and other authority (and evidence of such corporate and other authority) required for each of the Debtors to undertake any and all acts and actions required to implement or contemplated by the Plan (including, without limitation, the execution and delivery of the APA), and such acts and actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without the need for board or shareholder vote and without any requirement of further action by the stockholders or directors of the Debtors.

(c) On the Effective Date, the appropriate officers and managers of the Debtors are authorized to execute and/or deliver, as the case may be, the agreements, documents and instruments contemplated by the Plan, the Plan Supplement and the APA and any schedules, exhibits or other documents attached thereto or contemplated thereby in the name and on behalf of the Debtors.

(d) Upon entry of a final decree in each Chapter 11 Case, if not previously dissolved, the applicable Debtor shall be deemed dissolved and wound up without any further action required by such Debtor.

**7.13.** *Satisfaction of Prepetition Secured Lender Guaranty Claims.*

The treatment of, and Plan Distribution to, to the extent not already paid in full prior to the Effective Date, holders of Class 3(a) Prepetition Secured Credit Agreement Claims shall be in full satisfaction, settlement, release and discharge of, and in exchange for the Prepetition Secured Lender Guaranty Claims.

**7.14.** *RG Tube Cash.*

In connection with the settlements and compromises embodied in this Plan, (i) the RG Tube Cash shall be used as follows: (i) first, to fund the Allowed Claims of the RGCH PIK Notes Agent and the Ad Hoc RGCH PIK Noteholders Committee Advisors; and (ii) second, the remainder shall be distributed in accordance with Section 8.9 of this Plan.

**7.15.** *Additional Transactions Authorized Under this Plan.*

On or prior to the Effective Date, the Debtors shall be authorized to take any such actions as may be necessary or appropriate to reinstate Claims or Interests or render Claims or Interests not impaired, as provided for under this Plan.

**7.16.** *Comprehensive Settlement of Claims and Controversies.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims and Interests or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest, including the Claims asserted against the Debtors by members of the Ad Hoc RGCH PIK Noteholders Committee and all Intercompany Claims between and among the Debtors (including with respect to any related to tax refunds received or to be received from one or more taxing authorities or otherwise). Without limiting the generality of the immediately preceding sentence, the Class 5(a) Distribution, if any, hereunder shall be in full and complete satisfaction of, among other things, potential or actual Intercompany Claims RGCH may have against RathGibson or RG Tube. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interests (x) of the Debtors and their respective Estates and property, and (y) of the Claim and Interest Holders; and (b) fair, equitable and reasonable.

**7.17.** *Non-Substantive Consolidation.*

The Plan is a joint plan that does not provide for substantive consolidation of the Debtors' estates, and on the Effective Date, the Debtors' estates shall not be deemed to be substantively consolidated for purposes hereof. Except as specifically set forth herein, nothing in this Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor. Additionally, claimants holding Claims against multiple Debtors, to the extent Allowed in each Debtor's Chapter 11 Case, will be treated as holding a separate Claim against each Debtor's

estate, provided, however, that no holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus postpetition interest, if and to the extent provided in this Plan), and such Claims or Interests will be administered and treated in the manner provided in this Plan.

# ARTICLE VIII.

# DISTRIBUTIONS

### 8.1. *Distributions.*

The Disbursing Agent shall make all Plan Distributions to the appropriate holders of Allowed Claims and Allowed Interests in accordance with the terms of this Plan.

### 8.2. *No Postpetition Interest on Claims.*

Except with respect to Prepetition Secured Credit Agreement Claims, if any, and DIP Claims, unless otherwise specifically provided for in the Confirmation Order or other order of the Bankruptcy Court (including, without limitation, the Final DIP Order), or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 8.3. *Date of Distributions.*

Unless otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable, provided that the Debtors may utilize periodic distribution dates to the extent appropriate. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 8.4. *Distribution Record Date.*

(a)     As of the close of business on the Distribution Record Date, the various lists of holders of Claims and Interests in each of the Classes, as maintained by the Debtors, or their agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims and Interests. Neither the Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims or Interests occurring after the close of business on the Distribution Record Date. Additionally, with respect to payment of any Cure Costs or any Cure Disputes in connection with the assumption and/or assignment of the Debtors' executory contracts and leases, the Debtors shall have no obligation to recognize or deal with any party other than the non-Debtor party to the underlying executory contract or lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Cost.

(b)     Notwithstanding the foregoing or anything herein to the contrary, in connection with any distribution under this Plan to be effected through the facilities of DTC

(whether by means of book-entry exchange, free delivery, or otherwise), the Debtors will be entitled to recognize and deal for all purposes under the Plan with such holders to the extent consistent with the customary practices of DTC used in connection with such distribution. Distributions to be made on account of Allowed Senior Notes Claims shall be made by the Disbursing Agent to the Senior Notes Indenture Trustee or such other party designated by the Debtors, who shall also act as the transfer agent with respect to the Plan Consideration to be distributed to holders of Allowed Senior Notes Claims for further distribution in accordance with the terms of the Senior Notes Indenture or in accordance with this Plan where such Senior Notes Indenture is silent.  The Senior Notes Indenture Trustee shall cooperate and assist the Disbursing Agent and applicable transfer agent in connection with such distributions to the holders of Allowed Senior Notes Claims.  Distributions to be made on account of Allowed RGCH PIK Notes Claims shall be made by the Disbursing Agent to the RGCH PIK Notes Agent, who shall act as the transfer agent with respect to the Class 5(a) Distribution for further distribution in accordance with the terms of the RGCH PIK Notes Credit Agreement or in accordance with this Plan where such RGCH PIK Notes Credit Agreement is silent.  The RGCH PIK Notes Agent shall cooperate and assist the Disbursing Agent in connection with such distributions to the holders of Allowed RGCH PIK Notes Claims.

## 8.5. *Disbursing Agent.*

All distributions under this Plan shall be made by the applicable Debtor or the Disbursing Agent on and after the Effective Date as provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Debtor.  Furthermore, any such Person required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

## 8.6. *Delivery of Distribution.*

The Disbursing Agent, subject to Bankruptcy Rule 9010, will make all distributions or payments to any holder of an Allowed Claim or an Allowed Interest as and when required by this Plan at: (i) the address of such holder on the books and records of the Debtors or their agents; or (ii) at the address in any written notice of address change delivered to the Debtors or the applicable Disbursing Agent, including any addresses included on any filed proofs of Claim or Interest or transfers of Claim filed pursuant to Bankruptcy Rule 3001 (provided that such transfer of Claim is docketed by the Bankruptcy Court on or before twenty (21) days prior to the Distribution Record Date).  In the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the applicable Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest, <u>provided</u>, <u>however</u>, such distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety days from the later of: (i) the Effective Date; and (ii) the date such holder's Claim or Interest is first Allowed; <u>provided</u>, <u>further</u>, <u>however</u>, that any holder of an Allowed Claim or Allowed Interest that does not provide a current address to the Debtors within 120 days after the date on which a

distribution was deliverable to such holder of an Allowed Claim or Allowed Interest shall be treated as though such Claim or Interest has been disallowed. Any such undeliverable distribution shall be made available for distribution to the holders of the remaining Allowed Claims and Allowed Interests, as applicable, and no further payments shall be made to the holder of an Allowed Claim or an Allowed Interest on account of such undeliverable distribution.

**8.7.** *Unclaimed Property.*

Holders of Allowed Claims and Allowed Interests shall have ninety 120 days from the date of any Plan Distribution check to negotiate such checks. To the extent such checks are not negotiated within such time period, the payment on such applicable checks shall be stopped and the corresponding funds shall be made available for distribution to the remaining holders of Allowed Claims and Allowed Interests, as applicable, no further payments shall be made to the holder of an Allowed Claim or an Allowed Interest on account of such unclaimed property and such Claim or Interest shall be treated as though such Claim or Interest has been disallowed. The Debtors and the Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Claim or Allowed Interest other than by reviewing the Debtors' books and records, proofs of Claim or proofs of Interest filed against the Debtors or transfers of Claim filed pursuant to Bankruptcy Rule 3001 (provided that such transfer of Claim is docketed by the Bankruptcy Court on or before twenty (21) days prior to the Distribution Record Date).

**8.8.** *Reserve Accounts.*

On or as soon as practicable after the Effective Date, the Plan Administrator shall establish and maintain separate reserve accounts as set forth in this Plan and for Disputed Claims and Interests against each Debtor if such Claims and Interests were to become Allowed Claims or Allowed Interests. Each such reserve account shall be funded from that portion of the Purchase Price allocated to each Debtor after: (i) first, payment in full of Allowed DIP Claims, Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Other Secured Claims, and (ii) second, funding of the Wind Down Account, for the payment of Allowed Claims or Allowed Interests, as applicable, against each such Debtor pursuant to the terms of this Plan and for the benefit of the holders of Disputed Claims or Disputed Interests in the applicable Class. Other than establishing and maintaining one separate account for each Debtor, reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate.

**8.9.** *Distribution of RG Tube Cash.*

The RG Tube Cash shall be distributed as follows:

(a)     first, to pay (or provide for the payment of): (i) the Allowed RGCH PIK Notes Agent Claims; and (ii) the Allowed Ad Hoc RGCH PIK Noteholders Committee Fee Claims;

(b)     second, to make the Class 6(a) Distribution;

(c)     third, to make the Class 6(b) Distribution;

(d)     fourth, to make the Class 5(a) Distribution; and

(e)     fifth, to make the Class 5(b) Distribution.

As part of the settlements and compromises contained herein, any remainder, after payment in accordance with this Section 8.9, shall be distributed to RathGibson to be distributed to its creditors in accordance with this Plan.

### 8.10.  *Satisfaction of Claims and Interests.*

Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims and Allowed Interests hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims and Allowed Interests.

### 8.11.  *Manner of Payment Under Plan.*

Except as specifically provided herein, at the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

### 8.12.  *Fractional Cents and De Minimis Distributions.*

Notwithstanding any other provision of the Plan to the contrary, (i) no payment of fractions of cents will be made; and (ii) the Debtors shall not have any obligation to make a distribution that is less than or $40.00 in Cash.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

### 8.13.  *No Distribution in Excess of Amount of Allowed Claim.*

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution (of a value set forth herein) in excess of the Allowed amount of such Claim plus postpetition interest on such Claim, to the extent interest is provided in Section 8.2 herein.

### 8.14.  *Setoffs and Recoupments.*

Each Debtor, or such entity's designee as instructed by such Debtor, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim (other than a Prepetition Secured Credit Agreement Claim, DIP Claim or a Senior Notes Claim) or any Allowed Interest, and the distributions to be made pursuant to this Plan on account of such Allowed Claim or Allowed Interest, any and all claims, rights and Causes of Action that a Debtor or its successors may hold against the holder of such Allowed Claim or Allowed Interest after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim or Interest hereunder will constitute a waiver or release by a Debtor or its successor of any and all claims, rights and Causes of Action that a Debtor or its successor may possess against such holder.

**8.15.** *Rights and Powers of Disbursing Agent.*

(a) *Powers of Disbursing Agent.* The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b) *Expenses Incurred on or After the Effective Date.* Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtors if the Disbursing Agent is a Person other than the Plan Administrator, the amount of any reasonable documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement Claims (including, without limitation, reasonable attorney and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Debtors.

**8.16.** *Withholding and Reporting Requirements.*

In connection with this Plan and all distributions hereunder, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtors or the Disbursing Agent believe are reasonable and appropriate, including requiring a holder of a Claim or Interest to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (i) each holder of an Allowed Claim and/or an Allowed Interest that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (ii) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan if, after 120 days from the date of transmission of a written request to the holder of an Allowed Claim or Allowed Interest, the Debtors do not receive a valid, completed IRS form from such holder of an Allowed Claim or Allowed Interest, which is otherwise required for reporting purposes, and such holder shall be treated as if their Claims or Interests had been disallowed.

**8.17.** *Cooperation with Disbursing Agent.*

The Debtors shall use all commercially reasonable efforts to provide the Disbursing Agent with the Allowed amount of Claims and Interests and the identity and addresses of holders of Claims and Interests, in each case, as set forth in the Debtors' books and records as of the Distribution Record Date. Notwithstanding the foregoing, the Senior Notes

Indenture Trustee and the RGCH PIK Notes Agent, as the case may be, shall use commercially reasonable efforts to provide the applicable Disbursing Agent with the amount of Claims and the identity and address of holders of Claims, to the extent needed to effectuate distributions hereunder, in each case, as set forth in their books and records.

# ARTICLE IX.

# PROCEDURES FOR RESOLVING CLAIMS

### 9.1. *Objections to Claims.*

Other than with respect to Fee Claims, only the Debtors shall be entitled to object to Claims after the Effective Date. Any objections to those Claims (other than Administrative Expense Claims), shall be served and filed on or before the later of: (i) one-hundred twenty (120) days after the Effective Date; and (ii) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) hereof. Any Claims filed after the Bar Date or Administrative Expense Claims Bar Date, as applicable, shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors unless the Person wishing to file such untimely Claim has received Bankruptcy Court authority to do so. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (iii) if counsel has agreed to or is otherwise deemed to accept service, by first class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Debtors may settle or compromise any Disputed Claim without need for notice or approval of the Bankruptcy Court.

### 9.2. *Amendment to Claims.*

From and after the Effective Date and in accordance with the Bar Date Order and the Administrative Expense Claims Bar Date Order (or such deadline as established pursuant to Section 3.2 of the Plan and the Confirmation Order), unless a claimant has obtained prior Bankruptcy Court approval, no Claim may be filed to increase or assert additional claims not reflected in an already filed Claim (or Claim scheduled, unless superseded by a filed Claim, on the applicable Debtor's Schedules of Assets and Liabilities filed in the Chapter 11 Cases) asserted by such claimant and any such Claim shall be deemed disallowed and expunged in its entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors. Notwithstanding anything contained herein to the contrary, unless otherwise ordered by the Bankruptcy Court, no reserves shall be required to be established or maintained with respect to Claims or Administrative Expense Claims filed after the applicable Bar Date.

**9.3.** *Disputed Claims and Disputed Interests.*

(a)    *No Distributions or Payments Pending Allowance.* Except as provided in this Section 9.3, Disputed Claims and Disputed Interests shall not be entitled to any Plan Distributions unless and until such Claims or Interests become Allowed Claims or Allowed Interests, as applicable.

(b)    *Plan Distributions to Holders of Subsequently Allowed Claims and Subsequently Allowed Interests.* On each Distribution Date (or such earlier date as determined by the Debtors or the Disbursing Agent in their sole discretion but subject to this Section 9.3), the Disbursing Agent will make distributions or payments: (i) on account of any Disputed Claim or Disputed Interest that has become an Allowed Claim or Allowed Interest, as applicable, since the occurrence of the previous Distribution Date; and (ii) on account of previously Allowed Claims of property or Allowed Interests that would have been distributed or paid to the holders of such Claims or Interests on the dates distributions previously were made to holders of Allowed Claims or Allowed Interests, as applicable, in such Class had the Disputed Claims and Disputed Interests that have become Allowed Claims or Allowed Interests been Allowed on such dates. The Disbursing Agent shall distribute in respect of such newly Allowed Claims and Allowed Interests the Plan Consideration as to which holders of such Claims would have been entitled under this Plan if such newly Allowed Claims and Allowed Interests were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees, or other direct costs of maintaining Plan Consideration on account of such Disputed Claims and Disputed Interests, as applicable.

(c)    *Distribution of Reserved Plan Consideration Upon Disallowance.* Except as otherwise provided in this Plan, to the extent any Disputed Claim or Disputed Interest has become Disallowed in full or in part (in accordance with the procedures set forth in the Plan), any Plan Consideration held by the Debtors on account of, or to pay, such Disputed Claim or Disputed Interest, including amounts held in any reserve, shall become the sole and exclusive property of the applicable Debtor and shall be applied in accordance with the terms of this Plan.

**9.4.** *Estimation of Claims; Certain Reserves.*

For purposes of calculating and making distributions under the Plan, the Debtors shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Debtors may request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the allowed amount of such Claim at any time. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation,

settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, resolved or withdrawn by any mechanism approved by the Bankruptcy Court.

**9.5.    *Directors' and Officers' Claims.***

All contingent and unliquidated Claims relating from the obligation of a Debtor to exculpate, indemnify and advance any expenses to any Person serving at any time for one or more of the Debtors as one of its directors or officers (statutory or otherwise) by reason of such Person's service in such capacity, or as a director or officer (statutory or otherwise) of any other corporation or legal entity, for acts or omissions occurring at or prior to the Effective Date, whether asserted or claimed prior to, at or after the Effective Date, to the extent provided in such Debtor's constituent documents, a written agreement with a Debtor, in accordance with any applicable law, or any combination of the foregoing, shall be treated under this Plan as a Claim for $0.00 and the Debtors shall have no obligation to reserve any amounts therefor; provided, nothing herein shall effect the right of any such directors or officers (statutory or otherwise) to proceed against any Debtors' insurance policies, insurance proceeds or any insurer thereof nor effect the value of such Claims in respect of same.

**9.6.    *No Recourse*.**

Notwithstanding that the Allowed amount of any particular Disputed Claim or Disputed Interest is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims or Allowed Interests in the respective Class, no Claim or Interest holder shall have recourse against the Disbursing Agent, the Debtors, the Plan Administrator, the Purchaser or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code, nor shall it modify or limit the ability of claimants (if any) to seek disgorgement to remedy any unequal distribution from parties other than those released under this section. THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

**9.7.    *Expenses Incurred On or After the Effective Date.***

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtors, the amount of any reasonable fees and expenses incurred by any Professional Person or the Claims Agent on or after the Effective Date in connection with implementation of this Plan, including without limitation, reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Debtors.

# ARTICLE X.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**10.1.** *General Treatment.*

(a)     As of and subject to the occurrence of the Effective Date and payment (or provision of the adequate assurance of payment) of the applicable Cure Costs, to the fullest extent permitted under applicable law, all executory contracts and unexpired leases of the Debtors shall be deemed to be assumed by the applicable Debtor as of the Effective Date, except for any executory contract or unexpired lease that: (i) previously has been assumed and assigned or rejected pursuant to a Final Order of the Bankruptcy Court; (ii) is designated specifically or by category as a contract or lease to be rejected on the Schedule of Rejected Contracts and Leases; (iii) is the subject of a separate motion to assume and assign to a Person other than the Purchaser or to reject under section 365 of the Bankruptcy Code pending on the Effective Date; provided, however, that, to the fullest extent permitted by applicable law, the Purchaser shall have the right to instruct the Debtors to, and at the instruction of the Purchaser, the Debtors shall, at any time and from time to time prior to ten (10) days prior to the Confirmation Hearing (or such later date as is specified in the APA), amend the Schedule of Rejected Contracts and Leases in the manner set forth in the APA, the Bid Procedures Order, or by any other means approved by the Bankruptcy Court, to add any executory contract or unexpired lease listed therein, thereby providing for the rejection of such executory contract or lease pursuant to the terms hereof or to delete any executory contract or unexpired lease therein, thereby providing for its assumption and assignment pursuant to the terms hereof.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Listing a contract or lease in the Schedule of Rejected Contracts and Leases shall not constitute an admission by the applicable Debtor that the applicable Debtor has any liability thereunder.

(b)     Except with respect to those insurance policies and any agreements, documents or instruments relating thereto that are listed on the Schedule of Rejected Contracts and Leases, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, shall be treated as executory contracts of the applicable Debtor under the Plan and the Bankruptcy Code and shall be assumed and assigned to the Purchaser in accordance with the terms of the APA and this Plan.

(c)     The final Schedule of Rejected Contracts and Leases shall be subject to the prior approval of the Purchaser.

(d)     Subject to Section 10.2 of this Plan, entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute:  (i) the approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the assumption and assignment of the executory contracts and unexpired leases assumed and assigned pursuant to Section 10.1(a) and Section 10.1(b) of this Plan; and (ii) the approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases listed on the

Schedule of Rejected Contracts and Leases pursuant to Section 10.1(a) or Section 10.1(b) of this Plan.

**10.2.** ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

(a)      All Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as General Unsecured Claims.  Upon receipt of their applicable Plan Distribution pursuant to Article V of this Plan, all such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Purchaser or their respective properties or interests in property (and shall not, for the avoidance of doubt, constitute Assumed Liabilities).

(b)      *Each Person who is a party to a contract or lease rejected under the Plan must file with the Bankruptcy Court and serve on the Debtors, not later than thirty (30) days after the Effective Date, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.*

**10.3.** ***Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.***

(a)      Within five (5) Business Days after entry of the Bid Procedures Order, the Debtors shall serve a notice (the "**Assumption Notice**") on the applicable counterparty of potential assumption and assignment of the executory contracts and unexpired leases that are anticipated to be assumed and assigned to the Purchaser (the "**Assigned Contracts**") and the amount, if any, that the Debtors contend is the amount needed to cure any defaults and pecuniary losses with respect to such Assigned Contracts (the "**Cure Costs**"); provided, however, except as designated specifically or by category as a contract or lease to be rejected on the Schedule of Rejected Contracts and Leases, all executory contracts and unexpired leases shall be assumed by the Debtors and assigned to the Purchaser and, to the extent a counterparty to an Assigned Contract does not receive an Assumption Notice, the Cure Cost for such executory contract or unexpired lease shall be $0.00.  If the Debtors identify additional executory contracts and unexpired leases that might be assumed by the Debtors and assigned to the Purchaser, the Debtors will promptly send a supplemental Assumption Notice to the applicable counterparties to such contract or lease.

(b)      Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or lease, the Purchaser (or the Debtors if so specified in the APA) shall cure any monetary defaults arising under each executory contract and lease to be assumed pursuant to the Plan and assigned to the Purchaser pursuant to Section 10.1(a) or Section 10.1(b) of this Plan, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost on the later of: (i) the Effective Date or as soon thereafter as is reasonably practicable; and (ii) the date on which the Cure Cost has been resolved (either consensually or through judicial decision, subject, in any such case, to the terms and conditions of the APA) or as soon thereafter as is reasonably practicable.

(c)      Any party that fails to object to the applicable Cure Cost listed on the Assumption Notice by 5:00 p.m. (prevailing Eastern time) on the later of:  (i) April 15, 2010, or

(ii) eight (8) days after service of the supplemental Assumption Notice on such party, (a) shall be forever barred, estopped and enjoined from (x) disputing the Cure Cost relating to any executory contract or unexpired lease set forth on the Assumption Notice or, if no Assumption Notice is received and such executory contract or unexpired lease is not listed on the Schedule of Rejected Contracts and Leases, a Cure Cost of $0.00, and (y) asserting any Claim against the applicable Debtor arising under section 365(b)(1) of the Bankruptcy Code other than as set forth on the Assumption Notice or, if no Assumption Notice is received and such executory contract or unexpired lease is not listed on the Schedule of Rejected Contracts and Leases, a Claim in the amount of $0.00; and (b) shall be deemed to have consented to the assumption and assignment of such executory contract and unexpired lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Purchaser or any other assignee of the relevant executory contract or unexpired lease that any additional amounts are due or defaults exist, or conditions to assumption and assignment of such executory contract or unexpired lease must be satisfied (pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise).  Any objection relating to the Cure Cost shall specify the Cure Cost proposed by the counterparty to the applicable contract or lease.

(d)  In the event of a dispute (each, a "**Cure Dispute**") regarding:  (i) any Cure Cost; (ii) the ability of the Debtors or the Purchaser to demonstrate "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under any contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made at the times set forth in Section 10.3(b) of this Plan following the entry of a Final Order resolving such Cure Dispute and approving the assumption.  To the extent a Cure Dispute relates solely to a Cure Cost, the applicable Debtor may assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that the Purchaser establishes a reserve containing Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court).  To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor, such Debtor may (with the consent of the Purchaser), reject the applicable executory contract or unexpired lease after such determination.  Any Cure Disputes not consensually resolved prior to the Confirmation Hearing shall be heard at the Confirmation Hearing (or such other hearing as requested by the Debtors and determined appropriate by the Bankruptcy Court), including any disputed Cure Costs or objections to assumption and assignment, and/or objections to the adequacy of assurance of future performance being provided.

**10.4.  *Compensation and Benefit Programs.***

All employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their respective employees, retirees and non-employee directors including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans are treated as executory contracts under the Plan and on the Effective Date will be listed on the Schedule of Rejected Contracts and will be rejected unless any of the foregoing is a Purchased Asset and the counterparty thereto receives an Assumption Notice, in which case the same shall be assumed and assigned to the Purchaser pursuant to the APA and in accordance with sections 365 and 1123 of the Bankruptcy Code.

**10.5.** *Post-Petition Contracts and Leases.*

Except to the extent set forth on the Schedule of Rejected Contracts and Leases, all contracts, agreements and leases that were entered into or assumed by the Debtors after the Petition Date (other than the APA and the Ancillary Agreements (as defined in the APA)) shall be deemed assigned by the Debtors to the Purchaser on the Effective Date, without a need for any consent or approval of, or notice to, the counterparty to any such contract, agreement or lease.

## ARTICLE XI.

### CONDITIONS PRECEDENT TO
### CONSUMMATION OF THE PLAN

**11.1.** *Conditions Precedent to Confirmation.*

Confirmation of this Plan is subject to entry of the Confirmation Order by the Bankruptcy Court in form and substance acceptable to the Debtors and the Purchaser (solely to the extent that the Confirmation Order relates to the Specified Matters (as defined in the APA)), and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

**11.2.** *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to:

(a)     the Confirmation Order shall have become a Final Order;

(b)     the Plan Documents being executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(c)     all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents in connection with the Plan and the APA, if any, having been obtained (unless failure to do so will not have a material adverse effect on the Debtors) and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

(d)     pursuant to section 1129(a)(4) of the Bankruptcy Code, the Debtors shall have paid in full in Cash all undisputed Ad Hoc Senior Noteholders Committee Fee Claims and all undisputed Senior Notes Indenture Trustee Claims;

(e)     all DIP Claims shall have been paid in full in Cash or the Debtors shall have provided reasonably satisfactory evidence that such Claims shall be paid from the proceeds of the Sale or otherwise;

(f)    there being sufficient Cash, in the Debtors' good faith determination, to pay in full all Administrative Expense Claims, Fee Claims and Priority Tax Claims;

(g)    all conditions to closing under the APA shall have been satisfied or waived in accordance with the terms thereof; and

(h)    the Sale shall have been consummated (including, without limitation, the delivery of the Purchased Assets to the Purchaser (subject to Section 8.3 of the Stalking Horse Agreement in the event the Stalking Horse Bidder is the successful bidder and after giving effect thereto) free and clear of all Liens, Claims, charges, interests or other encumbrances (other than Permitted Encumbrances (as defined in the APA)).

### 11.3.    *Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.*

(a)    The Debtors, with the consent of the Purchaser solely to the extent such conditions involve the APA or the transactions contemplated thereby, shall have the right to waive any condition precedent set forth in Section 11.2 of this Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of the Plan.  Further, the stay of the Confirmation Order, pursuant to Bankruptcy Rule 3020(e), shall be deemed waived by the Confirmation Order.

(b)    If any condition precedent to the Effective Date is waived pursuant to this Section 11.3 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of this Plan shall foreclose any ability to challenge this Plan in any court.

### 11.4.    *Effect of Failure of Conditions.*

If all of the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived (as provided in Section 11.3 above) on or before the first Business Day that is more than 60 days after the Confirmation Date, or by such later date as set forth by the Debtors in a notice filed with the Bankruptcy Court prior to the expiration of such period, then the Debtors may file a motion to vacate the Confirmation Order before all of the conditions have been satisfied or duly waived.  It is further provided that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in Section 11.2 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this Section 11.4, this Plan shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no distributions under this Plan shall be made, the Debtors and all holders of Claims and Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtors; or (c) constitute an admission, acknowledgment, offer or undertaking by any Debtor or any other Person with respect to any matter set forth in the Plan.

# ARTICLE XII.

## EFFECT OF CONFIRMATION

### 12.1. *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

### 12.2. *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan or in the Confirmation Order, the Excluded Assets (and all Nonassignable Assets that are Purchased Assets) shall vest in the applicable Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other Interests (other than, with respect to any of the Nonassignable Assets, any Liens, charges or other encumbrances created under the APA). From and after the Effective Date, the Debtors may, subject to the terms of the APA, take such actions as are necessary to effect the Wind Down, including using and disposing of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 12.3. *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.4. *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

### 12.5. *Injunction.*

(a) *Except as otherwise provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial,*

*arbitral, administrative or other forum) against or affecting the Debtors, the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, or the Estates or any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan.*

(b)    By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the Injunctions set forth in this Section.

### 12.6.    *Releases.*

(a)    *Releases by the Debtors.  For good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise provided in this Plan or the Confirmation Order, as of the Effective Date, the Debtors, in their individual capacities and as debtors in possession shall be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors to enforce this Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the parties released pursuant to this Section 12.6, the Chapter 11 Cases, this Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates, whether directly, indirectly, derivatively or in any representative or any other capacity; <u>provided</u>, <u>however</u>, that the foregoing is not intended to release any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities of or owed to the Debtors, with respect to money borrowed from or owed to the Debtors by the current and former directors, officers and employees of the Debtors, as set forth in the Debtors' books and records.*

(b)    *Releases by Holders of Claims and Interests.  Except as otherwise provided in this Plan or the Confirmation Order, on the Effective Date: (i) each holder of a Claim or Interest that voted to accept the Plan; and (ii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all*

holders of Claims and Interests, in consideration for the obligations of the Debtors under this Plan and the other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, and each Person (other than the Debtors) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and deemed to forever release, waive and discharge all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan, including, without limitation, the APA) against the Released Parties, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Sale, the transactions contemplated by the Stalking Horse Agreement, this Plan or the Disclosure Statement; _provided_, _however_, that the foregoing releases shall not apply to any holder of a Claim or Interest if such holder "opts out" of the releases provided in this Section 12.6 in a timely submitted Ballot.

(c)     Notwithstanding anything to the contrary contained herein: (i)  except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 12.6 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code, or (y) any criminal laws of the United States or any state, city or municipality; and (ii) the releases set forth in this Section 12.6 shall not release any (x) Debtor's claims, right, or Causes of Action for money borrowed from or owed to a Debtor or its Subsidiary by any of its directors, officers or former employees, as set forth in such Debtors' or Subsidiary's books and records, (y) claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives hereof, and (z) Person's fraud, gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court, for matters with respect to the Debtors and their Subsidiaries and/or affiliates.

(d)     Notwithstanding anything to the contrary contained herein, nothing herein: (i) discharges, releases, or precludes any (a) environmental liability that is not a Claim; (b) environmental claim of the United States that first arises on or after the Confirmation Date, or (c) other environmental claim or liability that is not otherwise dischargeable under the Bankruptcy Code; (ii) releases the Debtors from any environmental liability that a Debtor may have as an owner or operator of real property owned or operated by a Debtor on or after the Confirmation Date; (iii) releases or precludes any environmental liability to the United States on the part of any Persons other than the Debtors; or (iv) enjoins the United States from asserting or enforcing any liability described in this paragraph; _provided_, that the holder of a Claim in respect of any such environmental liability that is an Assumed Liability shall have no recourse against the Debtors or the Plan Administrator or any of their property with respect to such Assumed Liability.

### 12.7. *Exculpation and Limitation of Liability.*

*None of the Released Parties shall have or incur any liability to any holder of any Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation, the negotiation, implementation and execution of this Plan, the Chapter 11 Cases, the APA, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of this Plan except, gross negligence, or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.*

### 12.8. *Injunction Related to Releases and Exculpation.*

*The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released in Sections 12.6 and 12.7 of this Plan. Such injunction shall extend to successors of the Debtors and their respective properties and interests in property.*

### 12.9. *Termination of Subordination Rights and Settlement of Related Claims.*

(a) Except as provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to this Article XII.

(b) Pursuant to Bankruptcy Rule 9019 and in consideration of the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the subordination rights that a holder of a Claim or Interest may have or any distribution to be made pursuant to this Plan on account of such Claim or Interest. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their respective properties, and holders of Claims and Interests, and is fair, equitable and reasonable.

**12.10.** *Retention of Causes of Action/Reservation of Rights.*

Subject to Sections 12.6 and 14.13 herein, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. With respect to the Excluded Assets and Excluded Liabilities, the Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Section 4.2 herein, may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

**12.11.** *No Successor Liability.*

Except as otherwise expressly provided in the Plan or the APA, the Purchaser does not, pursuant to this Plan or otherwise, assume, agree to perform, pay or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other party relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on, or after the Effective Date. The Purchaser is not, and shall not be, a successor to any of the Debtors by reason of any theory of law or equity, and it shall not have any successor or transferee liability of any kind or character, except that the Purchaser shall assume the Assumed Liabilities under the terms and subject to the conditions set forth in the APA.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the Cure Disputes resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To ensure that distributions to holders of Allowed Claims or Allowed Interests are accomplished as provided herein;

(d)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(e)     To consider Interests or the allowance, compromise or distributions on account of any Interest.

(f)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all Fee Claims;

(j)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(k)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, the APA, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement Hearing, the Confirmation Hearing, any applicable Bar Date, or the deadline for responding or objecting to a Cure Cost, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)     To recover any property of the Estates that are not Purchased Assets, wherever located;

(r)     To determine any other matter not inconsistent with the Bankruptcy Code; and

(s)     To enter a final decree closing each of the Chapter 11 Cases.

# ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1.    *Surrender of Instruments.*

As a condition to participation under this Plan, the holder of a note, debenture or other evidence of indebtedness of the Debtors that desires to receive the property to be distributed on account of an Allowed Claim based on such note, debenture or other evidence of indebtedness shall surrender such note, debenture or other evidence of indebtedness to the Debtors, or their designee (unless such holder's Claim will be reinstated by this Plan, in which case such surrender shall not be required), and shall execute and deliver such other documents as are necessary to effectuate this Plan; provided, however, that if a claimant is a holder of an equity security, note, debenture or other evidence of indebtedness for which no physical certificate was issued to the holder but which instead is held in book-entry form pursuant to a global security held by DTC or other securities depositary or custodian thereof, then the Debtors or the indenture trustee for such equity security, note, debenture or other evidence of indebtedness shall waive the requirement of surrender.  Except as otherwise provided in this section, if no surrender of a security, note, debenture or other evidence of indebtedness occurs and a claimant does not provide an affidavit and indemnification agreement, in form and substance satisfactory to the Debtors, that such security, note, debenture or other evidence of indebtedness was lost, then no distribution may be made to any claimant whose Claim or Interest is based on such security, note, debenture or other evidence of indebtedness thereof.  The Debtors shall make subsequent distributions only to the Persons who surrender the securities for exchange (or their assignees) and the record holders of such securities shall be those holders of record as of the Effective Date.

### 14.2.    *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by applicable law, all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including the transfers effectuated under this Plan, the sale by the Debtors of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 14.3.  Retiree Benefits.

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, payments in respect of retiree benefits (within the meaning of, and subject to the limitations of, section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, shall be continued for the duration of the period for which the Debtors had obligated themselves to provide such benefits.  Nothing herein shall: (i) restrict Purchaser's right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or section 1114(m) of the Bankruptcy Code; or (ii) be construed as an admission that any such retiree benefits are owed by the Debtors.

### 14.4.  Dissolution of Creditors' Committee.

The Creditors' Committee shall be automatically dissolved on the later of:  (i) the Effective Date; and (ii) the conclusion of any appeals with respect to the Confirmation Order (but such functions shall relate solely to services performed related to such appeal), and the Creditors' Committee shall be deemed dissolved as of such date except with respect to the review and prosecution of Fee Claims and any objections thereto.  Following the Effective Date, the attorneys and financial advisors to the Creditors' Committee shall be entitled to assert any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Effective Date in connection with the pursuit of their own Fee Claims or the representation of the Creditors' Committee in connection with the review of and the right to be heard in connection with all Fee Claims.  Except as otherwise provided in this Section 14.4, on the Effective Date, all members, employees or agents of the Creditors' Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases.

### 14.5.  Termination of Professionals.

On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee, if any, shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Debtors shall be responsible for the fees, costs and expenses associated with the prosecution of such Fee Claims.  Nothing herein shall preclude any Debtor from engaging a Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.6.  Amendments.

(a)  *Plan Modifications.*  This Plan may be amended, modified, or supplemented by the Debtors, with the consent of the Purchaser (solely as such amendment, modification or supplement relates to any of the Specified Matters), in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, so long as such action does not

materially and adversely affect the treatment of holders of Allowed Claims and Allowed Interests pursuant to this Plan, the Debtors may, with the consent of the Purchaser (solely as such action relates to any of the Specified Matters), remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)     *Other Amendments.*  Prior to the Effective Date, the Debtors may make, with the consent of the Purchaser (solely as such relates to any of the Specified Matters), appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; provided, however, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

### 14.7.     *Revocation or Withdrawal of this Plan.*

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date.  If the Debtors revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.  Notwithstanding anything to the contrary contained herein and except to the extent necessitated by the Board of Director's (of each Debtor) fiduciary obligations, the Debtors shall not seek to withdraw or revoke this Plan without the consent of the Purchaser.

### 14.8.     *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 14.9.     *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or

provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.10. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 14.11. *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors (and their affiliates, agents, directors, officers, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.12. *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

### 14.13. *Avoidance and Recovery Actions.*

Effective as of the Effective Date, the Debtors retain the right to prosecute any avoidance or recovery actions under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code except for any such actions that are Purchased Assets.

### 14.14. *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

**14.15.** *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**14.16.** *Exhibits.*

All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**14.17.** *Notices.*

In order to be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> RathGibson, Inc.
> 475 Half Day Road, Suite 210
> Lincolnshire, IL 60069
> Attn:   Michael G. Schwartz
>            President and Chief Executive Officer
>
> -and-
>
> Willkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, New York  10019-6099
> Attn:   Paul V. Shalhoub, Esq.
>            Robin Spigel, Esq.
> Telephone:  (212) 728-8000
> Facsimile:   (212) 728-8111
>
> Counsel to the Debtors
>
> *If to the Creditors' Committee*:
>
> Otterbourg, Steindler, Houston & Rosen, P.C.
> 230 Park Avenue
> New York, New York 10169
> Attn:   Jenette A. Barrow-Bosshart, Esq.
>            Jessica M. Ward, Esq.
>
> Counsel to the Creditors' Committee

*If to the Ad Hoc Senior Noteholders Committee or the Stalking Horse Bidder:*

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
Attn:   Kristopher M. Hansen, Esq.
        Matthew A. Schwartz, Esq.
        Jayme T. Goldstein, Esq.
Telephone:  (212) 806-5400
Facsimile:  (212) 806-6006

Counsel to the Ad Hoc Senior Noteholders Committee and the Purchaser

**14.18.** *Filing of Additional Documents.*

On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any such agreements or other documents relating specifically to the terms and conditions of the Plan shall be in form and substance acceptable to the Debtors and to the Purchaser (solely as such terms and conditions relate to the Specified Matters).

**14.19.** *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

[The remainder of this page is intentionally left blank.]

Dated: April 7, 2010
Wilmington, Delaware

Respectfully submitted,

RATHGIBSON, INC.

By: _Michael Schwartz_

Michael Schwartz
President, Chief Executive Officer and Chief
Operating Officer

GREENVILLE TUBE COMPANY

By: _Michael Schwartz_

Michael Schwartz
President

RGCH HOLDINGS CORP.

By: _Michael Schwartz_

Michael Schwartz
President and Chief Executive Officer

RG TUBE HOLDINGS LLC

By: _Michael Schwartz_

Michael Schwartz
President and Chief Executive Officer

Counsel:

WILLKIE FARR & GALLAGHER LLP

Paul V. Shalhoub, Esq.
Robin Spigel, Esq.
Andrew D. Sorkin, Esq.
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
Co-Counsel for the Debtors
    and Debtors in Possession

- and -

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Robert S. Brady, Esq.
Matthew B. Lunn, Esq.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
Co-Counsel for Debtors
    and Debtors In Possession