IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re                                    :    Chapter 11
                                         :
RathGibson, Inc., et al.,[1]             :    Case No. 09-12452 (CSS)
                                         :
                Debtors.                 :    Jointly Administered
------------------------------------------------------------x

## DECLARATION OF MICHAEL G. SCHWARTZ
## IN SUPPORT OF CONFIRMATION OF MODIFIED THIRD AMENDED JOINT PLAN FOR RATHGIBSON, INC. ET AL. AND SALE OF THE PURCHASED ASSETS

Michael G. Schwartz, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am the Chief Executive Officer of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), which positions I have held since January 2009. I submit this declaration (the "Declaration") in support of confirmation of the *Modified Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* [Docket No. 756] (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan")[2] and the sale of the Purchased Assets (the "Sale") to RathGibson Acquisition Co., LLC (the "Purchaser") pursuant to the terms of the Asset Purchase Agreement by and among the Debtors and the Purchaser (the "APA"), a copy of which was attached to the *Disclosure Statement for Third Amended Joint Plan of RathGibson, Inc., et al.* [Docket No. 665] as Exhibit 4. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge and belief, review of relevant documents, inquiries made to others, or opinion based upon

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and (iv) RGCH Holdings Corp. (9683). The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210, Lincolnshire, Illinois 60069.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan.

experience and knowledge of the Debtors' business affairs and financial condition and the advice provided by the Debtors' professionals. I am authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

2. As the President and Chief Executive Officer of RathGibson, Inc. and Greenville Tube Company, the two Debtor operating companies, and Chief Executive Officer of RGCH Holdings, Inc. and RG Tube Holdings LLC, I am one of the individuals responsible for devising and implementing the Debtors' business plan and strategies and overseeing the Debtors' financial, operational and legal affairs. I am familiar with the Debtors' day-to-day operations, business and financial affairs. I have been consistently involved in or am familiar with the Debtors' financing activities, restructuring and development of the Plan and Sale. I have reviewed and am familiar with the terms and provisions of the Plan and the APA.

3. On July 13, 2009 (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. On July 23, 2009, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed in these cases.

5. Following solicitation of an initial plan of reorganization (the "Initial Plan") in September 2010, the Debtors determined it was appropriate to amend the Initial Plan to, among other things, implement a more tax efficient restructuring, provide for the inclusion of

RG Tube Holdings LLC and RGCH Holdings Corp. in the chapter 11 plan, and consummate the sale of substantially all of the Debtors' assets through a chapter 11 plan. The Debtors also worked with their key constituencies to agree to a global settlement of open issues that arose under the Initial Plan and otherwise. The results of those efforts culminated in the formulation of the Plan and the APA.

6. The Plan provides for the Sale of the Purchased Assets to the Purchaser in accordance with the terms of the APA. In connection therewith, on March 26, 2010, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 627] (the "Bid Procedures Order") approving, among other things, certain bid procedures with respect to the Sale and procedures for the assumption, assignment and/or transfer of executory contracts and unexpired leases.

7. The Debtors have complied with the Bidding Procedures Order. As reflected in the affidavits of service and publication that have been filed with the Court and in accordance with the terms of the Bid Procedures Order, the Debtors, with the assistance of The Garden City Group, Inc. ("GCG"), the Court-approved noticing, claims and balloting agent, provided notice of the Auction, the Bid Deadline, the transfer, assumption and/or assignment of contracts and leases under the APA (including the respective Cure Costs) and the Sale. I believe that the auction process approved by the Bid Procedures afforded a full, fair and reasonable opportunity for parties to participate in the process and to submit bids for the Debtors' assets.

8. On April 7, 2010, the Court entered an order (the "Disclosure Statement Order") approving the adequacy of the information contained in the *Disclosure Statement for Third Amended Joint Plan of RathGibson, Inc., et al.* [Docket No. 665] (including all exhibits

thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") and approving the solicitation process with respect to the Plan.

9.  As reflected in affidavits of service and publication that have been filed with the Court, the Debtors, with the assistance of GCG, solicited acceptances of the Plan in reliance on the Disclosure Statement and, to the best of my knowledge, have complied in good faith with all requirements and solicitation procedures adopted by the Court in the Disclosure Statement Order.

10.  I have been advised that the Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, the requirements of sections 1122 and 1123 of the Bankruptcy Code. As required under sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, the Plan designates Classes of Claims and Interests into six separate classes, not including sub-Classes, including (i) for all of the Debtors, Priority Non-Tax Claims and Other Secured Claims; (ii) for RathGibson, Prepetition Secured Credit Agreement Claims, Rath General Unsecured Claims, and Existing Rath Interests; (iii) for Greenville, Greenville General Unsecured Claims and Existing Greenville Interests; (iv) for RGCH, RGCH PIK Notes Claims, RGCH General Unsecured Claims, and Existing RGCH Interests; and (v) for RG Tube, RG Tube General Unsecured Claims and Existing RG Tube Interests.

11.  As required by section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. The Plan's classification scheme recognizes the differing legal and equitable rights of creditors versus interest holders, secured versus unsecured claims and priority versus non-priority claims.

12. Pursuant to sections 1123(a)(2) and (3) of the Bankruptcy Code, Article IV of the Plan specifies all Claims and Interests that are not impaired and specifies the treatment of all Claims and Interests that are impaired. Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan also provides the same treatment for each Claim or Interest within a particular Class, except to the extent a creditor has elected to receive other lesser treatment.

13. The Plan provides adequate means for the implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code. Article VII of the Plan sets forth numerous provisions designed to facilitate implementation of the Plan. Specifically, the Plan provides for the Sale of the Purchased Assets to the Purchaser and authorizes the Debtors to take such actions as are necessary to consummate the Sale. The proceeds realized from the Sale will be used to fund the Debtors' obligations under the Plan.

14. The Plan further provides for the appointment of the Plan Administrator. The Plan Administrator will be the sole officer and director of each of the Debtors and will have the authority to, among other things, establish bank accounts, establish, fund and release reserves, object to and resolve Claims, and liquidate any Excluded Assets. The Plan also provides for the continued existence of the Debtors after the Effective Date, the vesting of the Debtors' respective assets, and the cancellation of, among other things, credit agreements and an indenture. The distribution provisions set forth in Article VIII of the Plan also are designed to facilitate the implementation of the Plan.

15. The Debtors have complied with section 1123(a)(6) of the Bankruptcy Code. Following the Effective Date of the Plan, all existing Interests of the Debtors will be canceled, annulled and voided and one share of stock in each Debtor will be issued to the Plan Administrator.

16. I believe that the manner of selection of the Plan Administrator by the Debtors, which was done in consultation with the Committee, was consistent with the interests of the holders of Claims and Interests and with public policy. All officers and directors of the Debtors shall be deemed to have been terminated immediately prior to the Effective Date. Accordingly, the Plan complies with section 1123(a)(7) of the Bankruptcy Code.

17. The Debtors have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code. In particular, as required by section 1125(b) of the Bankruptcy Code, solicitation of acceptance or rejection of the Plan occurred only after holders of Claims and Interests entitled to vote thereon were provided with a copy of the Plan and Disclosure Statement. The Debtors, including their professionals, have acted in good faith in all respects in this process.

18. Consistent with the purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to liquidate the Debtors' assets in an orderly, efficient and equitable manner. The Plan and its formulation was the product of significant arms' length negotiations by and among the Debtors, the Committee and the Purchaser and is being proposed in good faith. The Plan was proposed with the legitimate and honest purpose of providing the greatest possible distribution to the Debtors' creditors.

19. As required by section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors or by any person acquiring property under the Plan, for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, has been, or will be before payment is remitted, disclosed to this Court.

20. As required by section 1129(a)(5)(A) and (B) of the Bankruptcy Code, the identity, affiliations and compensation of Edward A. Phillips, a partner of Amper, Politziner & Mattia LLP, the person proposed to serve as the Plan Administrator after the Effective Date, have been disclosed. Moreover, no insider of the Debtors will be employed or retained by the Debtors following the Effective Date.

21. Because no governmental regulatory commission will have jurisdiction over the rates of the Debtors following the Confirmation Date, I understand that the provisions of section 1129(a)(6) of the Bankruptcy Code are not applicable to the Plan.

22. Upon consummation of the Sale, which is a condition to the occurrence of the Effective Date of the Plan, the Purchased Assets will be transferred to the Purchaser and the Debtors will no longer have business operations. After considering the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in these chapter 11 cases, including (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee and to his or her professional advisors, and (ii) the likelihood that substantial rejection and other claims would result in a chapter 7 liquidation, and based upon the liquidation analysis attached as Exhibit 2 to the Disclosure Statement, it is my opinion that for each class of Claims that is impaired under the Plan, each holder of a Claim in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Plan Proponent Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

23. I am advised that, except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the treatment of Claims under the Plan of the

type specified in sections 507(a)(1) and 507(a)(3) - 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of Section 1129(a)(9) of the Bankruptcy Code. The Debtors will have the financial ability to make payments to holders of these Claims as and when they become due in accordance with the Plan.

24. As required by section 1129(a)(10) of the Bankruptcy Code, the Plan satisfies the requirement that at least one Class of Claims that is impaired under the Plan of each Debtor accept the Plan, excluding votes cast by insiders. As provided in the *Affidavit of Patrick M. Leathem of The Garden City Group, Inc. with Respect to the Tabulation of Votes on the Third Amended Joint Chapter 11 Plan For RathGibson, Inc., et al.* [Docket No. 755] certifying the ballots accepting or rejecting the Plan (the "Voting Certification"), Class 3(b), Class 4(a), Class 5(a) and Class 6(b) voted to accept the Plan.

25. Based on my review of the Debtors' books and records and the proceeds expected to be realized from the Sale, I believe that the Debtors will be able to meet their obligations under the Plan. I estimate that approximately $10 million will be available to fund distributions under the Plan after payment of the Debtors' debtor in possession financing facility and to allow the Plan Administrator to wind down the estates pursuant to the terms of the Plan. The Plan is a plan of liquidation and, as such, the Plan is not likely to be followed by the need for further financial reorganization of the Debtors. Accordingly, I have been advised that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

26. In accordance with section 1129(a)(12) of the Bankruptcy Code, the Plan provides for payment of all fees payable under 28 U.S.C. § 1930 on or before the Effective Date, or when otherwise due and payable. The Debtors have adequate means to pay such fees.

27. Section 1129(a)(13) of the Bankruptcy Code requires that a plan provide for the continuation of retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code for the duration of the period that the debtor has obligated itself to provide such benefits. The Debtors do not have any "retiree benefits" programs, as such term is defined in section 1114 of the Bankruptcy Code.

28. With respect to impaired classes, the Voting Certification filed with the Court reflects that every impaired class that was entitled to vote, voted overwhelmingly in favor of the Plan in the amounts and numbers required by section 1126 of the Bankruptcy Code.

29. As set forth more fully in Section 12.6(a) of the Plan, the Debtors have agreed to forever release, waive and discharge the Released Parties[3] from all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder). The release by the Debtors in Section 12.6(a), however is not intended to release any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities of or owed to the Debtors, with respect to money borrowed from or owed to the Debtors by the current and former directors, officers and employees of the Debtors, as set forth in the Debtors' books and records.

30. As set forth more fully in Section 12.6(b) of the Plan, holders of Claims and Interests that voted to accept the Plan and that did not "opt out" of the release on timely

---

[3] The Released Parties include, generally, (a) the Debtors and their respective affiliates; (b) each DIP Lender and the DIP Administrative Agent; (c) the Ad Hoc Senior Noteholders Committee and each of its members or affiliates; (d) the Prepetition Secured Agent, the Prepetition Secured Lender and their respective successors and assigns; (e) the Senior Notes Indenture Trustee; (f) the Creditors' Committee and each of its members; (g) the RGCH PIK Notes Agent; (h) those holders of RGCH PIK Notes who vote in favor of this Plan; (i) the Purchaser; (j) the Backstop Equity Investors; (k) the Stalking Horse Bidder; and (l) each of the foregoing party's current officers, authorized persons, affiliates, partners, directors, employees, agents, members, advisors and professionals (including any attorneys, accountants, consultants, financial advisors, investment bankers and other professionals retained by such Persons).

submitted ballots are deemed to have forever released, waived and discharged the Released Parties from all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan, including, without limitation, the APA).

31. Section 12.7 of the Plan exculpates the Released Parties from liability for any act taken or omission made in connection with or arising out of the Debtors' restructuring, including, without limitation, the negotiation, implementation and execution of the Plan, the Chapter 11 Cases, the APA, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except, gross negligence, or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.

32. I believe that the release, exculpation and injunction provisions of the Plan, which were negotiated with and supported by the Committee, are fair and reasonable and supported by reasonable consideration under the circumstances of these cases.

33. I believe that the Plan will enable creditors to realize the highest possible recoveries under the circumstances. I therefore believe that confirmation of the Plan is in the best interests of all creditors.

34. With respect to the Sale of the Purchased Assets to the Purchaser pursuant to the APA and the Plan, I believe that a sound business purpose exists for the Sale. The Plan is

dependent upon the Sale. Absent the proceeds from the Sale, the Debtors would not be able to consummate the Plan.

35.     The Purchased Assets were extensively marketed by the Debtors' financial advisor and investment banker, Jefferies & Company, Inc., prior to and after the entry of the Bid Procedures Order. A number of potential bidders entered into confidentiality agreements and were provided access to the data room established by the Debtors for the purpose of the Sale. However, despite the Debtors' marketing efforts, no competing bids for the Purchased Assets were received by the Debtors.

36.     The Purchaser is not affiliated with any of the Debtors and is separately represented by counsel. I am not aware of any collusion or any fraud or attempt by the Purchaser to assert any unfair advantage over any other potential bidder. I believe auction process was open and fair. As a result, I believe that the Purchaser is a good faith purchaser.

37.     The APA was negotiated by the Debtors and the Purchaser without collusion, in good faith and at arm's-length.

38.     The Debtors have the corporate or limited liability company, as applicable, power and authority necessary to consummate the transactions contemplated by the APA and have taken all corporate or limited liability company, as applicable, action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby.

39.     In light of the fact that no other offers to purchase the Purchased Assets were made after a comprehensive marketing period by the Debtors and their professionals, I believe that the consideration being provided by the Purchaser pursuant to the APA for the Purchased Assets is fair and reasonable and the highest or otherwise best offer for the Purchased

Assets. Accordingly, I believe that the Debtors' entry into the APA is an exercise of the Debtors' sound business judgment and the Sale is in the best interests of the Debtors, their estates and creditors.

[Remainder of Page Intentionally Left Blank]

40. Based upon the facts set forth herein and the advice of counsel, I believe that the Plan satisfies all of the applicable confirmation requirements contained in the Bankruptcy Code, and that due and adequate notice of the Confirmation Hearing, the Sale, the Voting Deadline and the deadline for objecting to confirmation of the Plan, including the Sale, was properly given in accordance with the applicable orders of this Court and applicable law. Therefore, I respectfully request that the Court (i) enter the Confirmation Order and (ii) grant the Debtor such other and further relief as is just or proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 19, 2010

*[signature]*
Michael G. Schwartz
Chief Executive Officer of the Debtors