## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| | |
| RathGibson, Inc., et al.,[1] | Case No. 09-12452 (CSS) |
| | |
| Debtors. | Jointly Administered |
| | *Re: Docket No. 756* |

-------------------------------------------------------------x

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER (I) CONFIRMING MODIFIED THIRD AMENDED JOINT CHAPTER 11 PLAN FOR RATHGIBSON, INC., ET AL., (II) AUTHORIZING (A) SALE OF SUBSTANTIALLY ALL OF DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (B) ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon consideration of the *Third Amended Joint Chapter 11 Plan for RathGibson,*

*Inc., et al.*, dated April 7, 2010 [Docket No. 756] (including all exhibits, schedules, appendices

and supplements thereto, and as amended, modified or supplemented from time to time,

including pursuant to the terms thereto or of this Order, the "Plan"), which Plan provides for,

among other things: (i) the proposed Sale[2] of the Purchased Assets free and clear of all liens,

claims, interests and other Encumbrances (except for the Assumed Liabilities and Permitted

Encumbrances in accordance with the terms of the APA) under sections 363(b), (f) and (m) of

title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code")

pursuant to that certain Asset Purchase Agreement, dated as of March 8, 2010, including any

exhibits and/or schedules and as amended from time to time (the "APA") (substantially in the

---

[1]     The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses:
(i) Greenville Tube Company (2689); (ii) RathGibson, Inc. (3283); (iii) RG Tube Holdings LLC (4080); and
(iv) RGCH Holdings Corp. (9683). The Debtors' executive headquarters' address is 475 Half Day Road, Suite 210,
Lincolnshire, Illinois 60069.

[2]     Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the
APA or the Plan, as applicable; as to any conflicts with respect to such terms, the meanings contained in the APA
shall control over the meanings contained in the Plan.

form attached hereto as Exhibit A (without exhibits and schedules)) between the above-captioned debtors and debtors in possession (collectively, the "Debtors") and RathGibson Acquisition Co., LLC (together with its successors and permitted assigns, the "Purchaser") and (ii) the assumption by the Debtors and the assignment and/or transfer by the Debtors of certain executory contracts and unexpired leases to the Purchaser, as provided in the APA; and the Debtors having filed the *Disclosure Statement for Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.* [Docket No. 651] (including all exhibits, schedules, appendices and supplements thereto, and as amended, modified or supplemented from time to time, the "Disclosure Statement"); and the Court, by order dated April 7, 2010 [Docket No. 665] (the "Disclosure Statement Order") having approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code after notice and a hearing held on April 7, 2010; and upon the affidavits of service and publication filed in connection therewith reflecting compliance with the notice and solicitation requirements of the Disclosure Statement Order; and upon the *Affidavit of Patrick M. Leathem of The Garden City Group, Inc. with Respect to the Tabulation of Votes on the Third Amended Joint Chapter 11 Plan For RathGibson, Inc., et al.* [Docket No. 755] (the "Leathem Affidavit"); and this Court having entered an order, dated March 26, 2010 [Docket No. 627] (the "Bid Procedures Order"), approving, among other things, certain bid procedures (collectively, the "Bid Procedures") in connection with the Sale; and all interested parties having been offered a fair and reasonable opportunity at the hearing on the motion to approve the entry of the Bid Procedures Order to be heard and object with respect to the Bid Procedures; and no party, other than the Purchaser, having submitted a bid for the Purchased Assets pursuant to the Bid Procedures Order; and the Debtors, therefore, in accordance with the Bid Procedures, having declared the Purchaser as the successful bidder for the Purchased Assets without the need to

conduct the Auction; and upon the affidavits of service and publication filed in connection with the Bid Procedures Order reflecting compliance with the notice requirements set forth in the Bid Procedures Order; and upon the *Declaration of Michael Schwartz in Support of Confirmation of Third Amended Joint Plan for RathGibson, Inc., et al.* [Docket No. 758] (the "Schwartz Declaration"), the *Declaration of Leon Szlezinger in Support of Confirmation of Third Amended Joint Plan for RathGibson, Inc., et al. and Sale of the Purchased Assets* [Docket No. 757] (the "Szlezinger Declaration"), and the *Declaration of John E. Foley in Support of: (A) Confirmation of Modified Third Amended Joint Chapter 11 Plan For RathGibson, Inc., et al., Providing for the (1) Sale of Substantially all of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests and (2) Assumption, Assignment and/or Transfer of Certain Executory Contracts and Unexpired Leases; and (B) Adequate Assurance of Future Performance to Counterparties to Assigned Contracts* [Docket No. 753] (the "Foley Declaration"); and objections to the Plan and the amount of the proposed Cure Cost having been timely filed with this Court by GE Capital Franchise Finance Corporation; and no other objections to confirmation of the Plan having been filed; and a hearing to consider confirmation of the Plan and any disputes regarding the amount of Cure Costs with respect to any Assigned Contract (as defined herein) or the assumption and transfer and/or assignment thereof having been held on May 21, 2010 (the "Confirmation Hearing"); and the Debtors having filed a brief [Docket No. 763] (the "Confirmation Brief") in support of approval of the Sale and confirmation of the Plan; and upon the evidence adduced and proffered, and the arguments of counsel presented, at the Confirmation Hearing; and this Court having reviewed all documents in connection with confirmation of the Plan and approval of the Sale and having heard all parties desiring to be heard with respect to same; and it appearing that the confirmation of the Plan and the consummation of the Sale is in

the best interests of the Debtors, their Estates, their creditors and other parties in interest; and upon the entire record compiled in the Chapter 11 Cases; and it appearing that no other notice need be given; and after due deliberation and consideration of all of the foregoing; and upon this Court's rulings, findings and determinations made on the record at the Confirmation Hearing, which are incorporated herein, and sufficient cause appearing therefor; the Court hereby makes the following:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(1). Venue of these proceedings and the Chapter 11 Cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) (A), (L), (N) and (O). The statutory predicates for the relief granted herein are sections 105, 363, 365, 1123, 1129 and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014.

B.     The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

### *With Respect to the Plan:*

C.     The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence. As set forth below, the Debtors have met their burden.

D. The Plan complies with all of the applicable provisions of the Bankruptcy Code.

E. The classification of Claims and Interests under the Plan is proper under section 1122 of the Bankruptcy Code. Claims or Interests in each particular Class are substantially similar to other Claims or Interests in such Class. Valid reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan.

F. The Plan specifies the treatment of each impaired Class of Claims and Interests.

G. The Plan provides equal treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

H. The Plan provides adequate and proper means for its implementation.

I. The Plan provides that the Plan Administrator shall be the sole director and officer of each of the Debtors from and following the Effective Date.

J. The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

K. The Plan has been proposed in good faith and not by any means forbidden by law.

L. Any payment made or promised by the Debtors for services or for costs and expenses in, or in connection with, these Chapter 11 Cases, or in connection with the Plan

and incident to these Chapter 11 Cases, has been approved by, or is subject to approval of this Court as reasonable.

M.    Through the *Amended Notice of Appointment of Plan Administrator* filed on May 18, 2010 [Docket No. 754], the identity, qualifications, and affiliations of the Plan Administrator were fully disclosed. The appointment of the Plan Administrator is consistent with the interests of the Debtors' creditors and equity security holders and with public policy.

N.    The provisions of section 1129(a)(6) of the Bankruptcy Code are inapplicable to the Chapter 11 Cases because, after the Effective Date, there are no rate changes provided for in the Plan for which a governmental regulatory commission will have jurisdiction over the Debtors after confirmation of the Plan.

O.    As evidenced by the Plan, the Disclosure Statement (including the liquidation analysis attached as Exhibit 2 thereto) and evidence adduced and proffered at the Confirmation Hearing, each holder of a Claim or Interest in each impaired Class has either accepted the Plan, consented to its treatment under the Plan, or will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors liquidated under chapter 7 of the Bankruptcy Code on such date.

P.    Each holder of a Claim or Interest in a Class that is not impaired under the Plan is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

Q.    Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the treatment of Claims under the Plan of the type specified in

6

sections 507(a)(1) - 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code.

R.     At least one impaired Class of Claims for each Debtor has accepted the Plan, which acceptance has been determined without including any acceptances of the Plan by any insider.

S.     The Plan provides for the Sale and the winding down of the Debtors' remaining affairs. Accordingly, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors except as proposed in the Plan.

T.     All fees payable under section 1930 of title 28 of the United States Code, either have been or will be paid under the Plan.

U.     The Debtors do not have any retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code. Accordingly, section 1129(a)(13) is inapplicable to the Chapter 11 Cases.

V.     Other than the Plan, no other chapter 11 plan applicable to the Debtors is currently being moved for confirmation in these Chapter 11 Cases.

W.     The primary purpose of the Plan is not the avoidance of taxes or the requirements of Section 5 of the Securities Act of 1933.

X.    The procedures by which the ballots for acceptance or rejection of the Plan were distributed and tabulated were fair, properly conducted, and complied with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

Y.    Votes on the Plan were solicited after this Court's approval of the Disclosure Statement and disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. Votes to accept the Plan have been solicited (including the RGCH PIK Notes Agent posting of the Solicitation Package (as defined in the Disclosure Statement Order) on the Intralinks website accessible to all holders of RGCH PIK Notes Claims) and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

Z.    Fair, proper and sufficient notice of the Confirmation Hearing and the related deadlines for submission of objections to the Plan, and ballots to vote to accept or reject the Plan, were provided consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Disclosure Statement Order.

AA.    The Debtors have acted in good faith with respect to the formulation, solicitation and confirmation of the Plan pursuant to section 1125(e) of the Bankruptcy Code.

BB.    Each of the conditions precedent to the entry of this Order has been satisfied in accordance with section 11.1 of the Plan.

CC.    The release, exculpation and injunction provisions set forth in the Plan are part of good faith compromises and settlements of the matters covered by the Plan. Such compromises and settlements are made in exchange for consideration and are in the best interests

8

of the Debtors, their Estates, and holders of Claims and Interests, are fair and reasonable, and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan.

DD.     The technical modifications made to the Plan, as set forth in the *Modified Third Amended Joint Chapter 11 Plan for RathGibson, Inc., et al.,* dated May 19, 2010 [Docket No. 756], are hereby approved under section 1127(a) as having neither a material nor adverse affect to the treatment of holders of Claims or Interests pursuant to the Plan.

EE.     Based upon the foregoing, and the evidence proffered or adduced at or in connection with to the Confirmation Hearing, the Debtors have complied with the applicable provisions of the Bankruptcy Code.

### With Respect to the Sale:

FF.     On March 8, 2010, the Debtors entered into the APA with the Purchaser for the sale of the Purchased Assets. Pursuant to the Bid Procedures Order, the Stalking Horse Agreement was deemed to be a Qualified Bid for the Purchased Assets.

GG.     The Bid Procedures were fair and reasonable.

HH.     Good and sufficient notice of: (i) the Sale, the Auction, the Bid Procedures Order, the related notices and the relief requested with respect thereto; and (ii) the transfer, assumption and/or assignment of the contracts and leases to be assumed by the Debtors and transferred and/or assigned to the Purchaser in accordance with the terms of the APA (such contracts and leases, the "Assigned Contracts"), including the relevant proposed Cure Costs with

9

respect to the Assigned Contracts, has been provided to the applicable creditors and/or parties in interest in compliance with the Bid Procedures Order and no other or further notice is required.

II.     A reasonable opportunity to object or be heard with respect to the Sale, including the assumption and assignment and/or transfer of the Assigned Contracts and the amount of Cure Costs, the Auction, and the Bid Procedures Order, has been provided to all parties in interest, including, without limitation: (i) the U.S. Trustee; (ii) counsel for the Creditors' Committee; (iii) counsel to the agent for the prepetition secured lenders; (iv) counsel for the Ad Hoc Senior Noteholders Committee and the DIP Lenders; (v) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (vi) all entities known by the Debtors to have asserted any lien, claim, interest or other Encumbrance in or on any of the Purchased Assets; (vii) the non-Debtor counterparties to the executory contracts and unexpired leases (including the Assigned Contracts); (viii) the Attorneys General in the State where any of the Purchased Assets are located; (ix) the United States Environmental Protection Agency; (x) any applicable state environmental agency; and (xi) all Persons who have expressed an interest in acquiring some or all of the Purchased Assets within the last six (6) months prior to entry of the Bid Procedures Order. Other parties interested in bidding on the Purchased Assets were provided, upon request, with access to sufficient information to make an informed judgment on whether to bid for the Purchased Assets.

JJ.     The bidding and related procedures established by the Bid Procedures Order have been complied with in all material respects by the Debtors and the Purchaser.

KK.     The Debtors have articulated a sound business purpose for, and good and sufficient reasons for this Court to approve, the Sale. The Debtors have demonstrated a

10

sufficient basis for their entry into the APA, the consummation of the Sale (including the assumption and assignment and/or transfer of the Assigned Contracts) under sections 363, 365, 1123 and 1129 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtors' business judgment.

LL.     The Debtors have all of the corporate or limited liability company (as applicable) power and authority necessary to consummate the transactions contemplated by the APA and have taken all corporate or limited liability company (as applicable) action necessary to authorize and approve the APA and the consummation by the Debtors of the transactions contemplated thereby.

MM.     Subject to the applicable provisions of the Bankruptcy Code and other applicable law, upon entry of this Order, the Debtors will have the power and authority to execute, deliver and perform under the APA and all documents and instruments related thereto (including all of the Seller Ancillary Agreements).

NN.     No consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Sale (including the assumption and assignment and/or transfer of the Assigned Contracts to the Purchaser).

OO.     The Cure Costs as set forth in the Notice of Filing of Cure Notices [Docket No. 722] and as set forth in the Exhibits to the Affidavit of Laurie Thornton of Supplemental Notices of Assumption, Assignment and/or Transfer [Docket No. 752] (collectively, the "Cure Notices") are deemed to be the only amounts necessary to "cure" (within the meaning of section 365(b)(1) of the Bankruptcy Code) all "defaults" (within the meaning of

section 365(b) of the Bankruptcy Code) under the Assigned Contracts, to the extent required by section 365 of the Bankruptcy Code.

PP.     Pursuant to and in accordance with the APA and the Plan, the Debtors and the Purchaser, as applicable, upon consummation of the Plan and the APA, will have: (i) "cured" or provided "adequate assurance" of "cure" (each within the meaning of section 365(b) of the Bankruptcy Code), of any "default" (within the meaning of section 365(b) of the Bankruptcy Code) existing or occurring prior to the Confirmation Date, including any supplemental Cure Notices, under any of the Assigned Contracts; and (ii) provided compensation or "adequate assurance" of compensation to any party for any actual pecuniary loss to such party resulting from a "default" existing or occurring prior to the Confirmation Date, including any supplemental Cure Notices, under any of the Assigned Contracts, and the Purchaser has provided "adequate assurance" of its future performance of and under the Assigned Contracts.

QQ.     The Debtors conducted an auction process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order. The auction process set forth in the Bid Procedures Order afforded a full, fair and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Purchased Assets.

RR.     The Purchaser's offer for the Purchased Assets, as embodied in the APA, is the highest or otherwise best offer received by the Debtors for the Purchased Assets.

SS.     The Debtors have obtained fair and reasonable consideration for the Sale.

TT.     Consummation of the Sale to the Purchaser pursuant to the APA will provide the highest or otherwise best value for the Purchased Assets and provide a greater

recovery for the Debtors' creditors than would be provided by any other practical available alternative.

UU. The assumption, assignment and/or transfer of the Assigned Contracts to the Purchaser pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors and their Estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

VV. The APA and the transactions contemplated therein were negotiated by the Debtors and the Purchaser without collusion, in good faith and at arm's-length. The Debtors and the Purchaser have not engaged in any conduct that would permit the APA or the Sale to be avoided under section 363(n) of the Bankruptcy Code.

WW. The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

XX. The Purchaser is a "good faith purchaser" entitled to the benefits and protections of section 363(m) of the Bankruptcy Code.

YY. The Debtors have adequately marketed the Purchased Assets for sale, and the consideration to be provided by the Purchaser pursuant to the APA: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Purchased Assets; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, and the District of Columbia.

ZZ.    The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, or the District of Columbia.

AAA.    The consummation of the Sale pursuant to the APA will be a legal, valid and effective transfer of the Purchased Assets to the Purchaser, authorized pursuant to the Bankruptcy Code and other applicable law, and vests or will vest the Purchaser with all right, title and interest in and to the Purchased Assets free and clear of all liens, Claims, interests and other Encumbrances of any kind or nature whatsoever (except for the Permitted Encumbrances and Assumed Liabilities) in accordance with section 363(f) of the Bankruptcy Code because one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. All parties with Encumbrances in or related to any of the Purchased Assets, if any, who did not object to the Plan, and specifically the Sale, or who withdrew their objections thereto, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Any holder of an Encumbrance in or related to any of the Purchased Assets who did object either falls within one or more of the other subsections of section 363(f) of the Bankruptcy Code and is either not entitled to adequate protection or is adequately protected by having its Encumbrance, if any, attach to the proceeds of the Sale (net of taxes, fees and expenses incurred in effecting the Sale) ultimately attributable to the Purchased Assets in which such party alleges an interest, in the same order of priority, and with the same validity, force and effect that such party had prior to the Sale, subject to any claims and defenses the Debtors and their Estates may possess with respect thereto.

BBB.    Except as expressly set forth in the APA, the Purchaser shall have no liability or obligations for any Encumbrances in, on or related to the Purchased Assets by reason

14

of the assumption by the Debtors of any of the Assigned Contracts or the transfer of the Purchased Assets to the Purchaser. The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets or the assumption of the Assumed Liabilities, to: (1) be a successor to or continuation of (or other such similarly situated party) any of the Debtors; or (2) have, *de facto* or otherwise, merged with or into, or consolidated with, any of the Debtors. The Purchaser is not acquiring or assuming any liability, warranty or other obligation of the Debtors, except as expressly set forth in the APA.

CCC. The Sale constitutes an element of a chapter 11 plan; the Sale has occurred "under" a plan as such term is used in section 1146(a) of the Bankruptcy Code; and the Sale does not circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code.

DDD. The legal and factual bases set forth in the Confirmation Brief and at the Confirmation Hearing establish just cause for approval of the Sale and the related transactions provided for in the APA.

EEE. Consummation of the Sale pursuant to the APA is an exercise of the Debtors' sound business judgment and is in the best interests of the Debtors, their creditors, their Estates and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The findings of this Court as set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, which is applicable to this matter by virtue of Bankruptcy Rule 9014. To the extent any findings of fact constitute conclusions of

15

law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

2.      To the extent that any objections (including any reservations of rights contained therein) to confirmation of the Plan, (including approval of the Sale, the payment or amount of the Cure Costs with respect to any Assigned Contract, or the assumption by the Debtors of any of the Assigned Contracts and the transfer and/or assignment thereof to the Purchaser), have not been withdrawn prior to entry of this Order, are not cured by the relief granted herein or resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) shall be, and hereby are, overruled on the merits.

3.      The Plan complies with the plan confirmation requirements of sections 1122, 1123 and 1129 of the Bankruptcy Code.

4.      The Debtors' solicitation of acceptances of the Plan pursuant to section 1125 of the Bankruptcy Code is hereby approved.

5.      Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the solicitation materials complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules. Notice of the Plan, and all related documents, was appropriate and

16

satisfactory based on the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

6.       The terms of the Plan are an integral part of this Order and are incorporated herein by reference and "So Ordered" in their entirety. The terms of the Plan Documents are an integral part of the Plan and this Order and are incorporated herein by reference and "So Ordered" in their entirety.

7.       The Plan Documents and any amendments, modifications, and supplements thereto, all documents and agreements related thereto or the consummation and implementation of the Plan and any other documents and agreements introduced by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery and performance thereof by the Debtors are authorized and approved. Without need for further order or authorization of the Bankruptcy Court, the Debtors are authorized and empowered to make any and all modifications to any and all such documents, including the Plan Documents, that do not materially modify the terms of such documents and are consistent with the Plan.

8.       The Plan is confirmed pursuant to section 1129 of the Bankruptcy Code.

9.       The Plan and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

10.       In the event that there is a conflict or ambiguity between the terms of the Plan and: (i) the Disclosure Statement; (ii) the terms of any agreement entered into between a Debtor and any party, other than the APA; or (iii) orders of the Court (other than this Order), the

17

Plan shall control over the Disclosure Statement and any such agreements (other than the APA) or prior orders of the Court.

11.     In the event that there is a conflict or ambiguity between the terms of this Order or the APA and the terms of the Plan: (i) this Order and the APA shall control over the Plan; and (ii) this Order shall control over the APA.

12.     The Debtors are hereby authorized and empowered to issue, execute, deliver, file and record any documents or court papers or pleadings, and to take any and all actions, that are necessary or desirable to implement, effectuate, and consummate the transactions contemplated by the Plan, including making distributions as required under the Plan and effectuating the Wind Down, irrespective of whether specifically referred to herein or therein and without further application or order of this Court, in each case with like effect as if exercised and taken by unanimous action of the directors and managers and stockholders and members of the Debtors as may be necessary to cause the same to become effective under applicable state law. The Debtors shall remain debtors in possession under the Bankruptcy Code until the Effective Date. The Debtors may wind-up their affairs and make distributions under the Plan after the Effective Date in accordance with the terms and conditions of the Plan.

13.     Edward A. Phillips, a partner at Amper, Politziner & Mattia LLP, is appointed as the Plan Administrator and shall have such powers and duties and shall receive such compensation as is provided for in the Plan and the Plan Administrator Agreement. From and following the Effective Date, the Plan Administrator shall be the sole officer and director of each of the Debtors.

14.     Pursuant to sections 105(a), 365 and 1123 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and payment (or the provision of adequate assurance of payment) of the applicable Cure Costs, to the fullest extent permitted under applicable law, all Assigned Contracts shall be deemed assumed by the applicable Debtor as of the Effective Date and assigned and/or transferred to the Purchaser.

15.     The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon and subject to the occurrence of the Closing, the Assigned Contracts free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances), which Assigned Contracts, by operation of this Order, shall be deemed assumed by the applicable Debtor party thereto and assigned and/or transferred to the Purchaser effective as of the Closing Date, without a need for any further action of, notice to, or consent or approval from, any Person, and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to the Purchaser.

16.     Pursuant to section 365 of the Bankruptcy Code, as of and subject to the occurrence of the Effective Date and payment (or the provision of adequate assurance of payment) of the applicable Cure Costs or establishment by the Purchaser of a reserve containing cash in an amount sufficient to pay the full amount asserted as a Cure Cost by the non-Debtor party to any Assigned Contract (or such smaller amount as may be fixed or estimated by the Court), the Debtors or Purchaser, as applicable, has: (i) cured and/or provided adequate assurance of cure of any monetary default existing prior to the Confirmation Date, under any of the Assigned Contracts; and (ii) provided compensation or adequate assurance of compensation to any party for actual pecuniary loss to such party resulting from a default prior to the

Confirmation Date, under any of the Assigned Contracts. The Purchaser also has provided adequate assurance of future performance of the Assigned Contracts, as provided by sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

17. Unless otherwise set forth herein or in the Plan, the counterparties to the executory contracts and unexpired leases of the Debtors, including the Assigned Contracts, shall be forever barred, estopped and enjoined from disputing the Cure Costs as set forth in the Cure Notices and/or from asserting any claim against the Debtors or the Purchaser arising under section 365(b)(1) of the Bankruptcy Code.

18. As of the Effective Date, the executory contracts and unexpired leases set forth (either specifically or by category) on the *Schedule of Rejected Contracts and Leases* shall be deemed rejected effective as of the Confirmation Date. Listing a contract or lease in the *Schedule of Rejected Contracts and Leases* shall not constitute an admission by the Debtors that any Debtor has any liability thereunder.

19. Subject to the occurrence of the Effective Date, entry of this Order constitutes approval of the assumptions, assumptions and assignments and rejections contemplated by the Plan and the APA, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, and the requirements of section 365(b)(l) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

20. The Assigned Contracts shall be assumed by the applicable Debtor party thereto and transferred and assigned to, and following the closing of the Sale, remain in full force and effect (without amendment or modification) for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract

20

(including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assumption, assignment or transfer, or purports to terminate or alter any term of such Assigned Contract as a result of such assumption, assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assigned Contracts after such assumption and transfer and assignment to the Purchaser; provided, however, that no such relief of liability with respect to any such Assigned Contract shall increase the liabilities assumed by the Purchaser with respect to such Assigned Contract pursuant to the APA. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all of the Debtors' right, title and interest of each Assigned Contract. Each non-Debtor party to an Assigned Contract that has not objected to the assumption, assignment and/or transfer of such Assigned Contract by the Debtors to the Purchaser is deemed to have consented to the assumption, assignment and/or transfer by the Debtors to the Purchaser of the Assigned Contracts.

21.     All defaults, breaches or other obligations of the Debtors under the Assigned Contracts incurred, arising or accruing prior to the Confirmation Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) as to which no objections were interposed, are deemed satisfied by the Cure Costs with respect to each such Assigned Contract in those amounts set forth in the Cure Notices, which were served in substantial compliance with the Bidding Procedures Order, and which were satisfied, or shall be satisfied as soon as practicable, by the Purchaser or the Debtors, as applicable. The Purchaser shall have no liability or obligation with

respect to defaults, breaches or other obligations under the Assigned Contracts incurred, arising or accruing prior to the Closing Date, except as otherwise expressly provided in the APA.

22.     No non-Debtor party to any Assigned Contract shall be permitted to cancel or terminate any Assigned Contract, or declare a default, claim that additional fees or other payments are due, increase or modify rights, benefits or obligations, or accelerate any obligation, under such Assigned Contract or otherwise take action against the Purchaser as a result of these Chapter 11 Cases, any Debtor's failure to perform any obligation under such Assigned Contract, the consummation of the Sale, or the assumption by the Debtors and the transfer and/or assignment by the Debtors of such Assigned Contract to the Purchaser.

23.     Each non-Debtor party to an Assigned Contract is hereby forever barred, estopped, and permanently enjoined from asserting against the Debtors, the Purchaser, or the property of any of them, any default existing as of the Confirmation Date, or any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors or the Purchaser. Except as expressly as set forth in the APA, the Plan or this Order, after the Closing Date, the Debtors and their Estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or Estates.

24.     Except with respect to the Purchased Assets (other than the Nonassignable Assets, subject to the terms of the APA), the Debtors shall have the exclusive right to enforce any and all Causes of Action against any Person and rights of the Debtors that arose before or after the Petition Date, including but not limited to the rights and powers of a trustee and debtor

22

in possession, against any Person whatsoever, including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all Causes of Action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code. In accordance with section 1123(b) of the Bankruptcy Code, all such Causes of Action are expressly reserved for later adjudication and therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.

25. The Debtors will continue to exist after the Effective Date as separate corporate or limited liability company entities for purposes of satisfying their obligations under the Plan, including making distributions as required under the Plan and effectuating the Wind Down.

26. Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and Interests or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest, including the Claims asserted, or that may be asserted, against the Debtors or the Purchaser by members of the Ad Hoc RGCH PIK Noteholders Committee and all Intercompany Claims (including with respect to any related to tax refunds received or to be received from one or more taxing authorities or otherwise). Without limiting the generality of the foregoing, the Class 5(a) Distribution shall be in full and complete satisfaction of, among other things, potential or actual Intercompany Claims RGCH may have against RathGibson or

23

RG Tube. The compromises and settlements set forth in the Plan are fair, equitable and reasonable, and are in the best interests of the Debtors, their Estates, creditors and stakeholders.

27.     Except for the purpose of evidencing a right to distribution under the Plan, and except as otherwise set forth herein or in the Plan, on the Effective Date all agreements, instruments, and other documents evidencing any Claim against or Interest in a Debtor and any rights of any holder in respect thereof, shall be deemed cancelled, discharged and of no force or effect. Notwithstanding the foregoing, pursuant to the settlements and compromises set forth in the Plan: (i) the Senior Notes Indenture shall continue in effect to the extent necessary to allow the Debtors and the Senior Notes Indenture Trustee and/or the Disbursing Agent to make distributions pursuant to the Plan on account of Allowed Rath General Unsecured Claims that are Allowed Senior Notes Claims, and the Senior Notes Indenture Trustee shall maintain any charging lien and priority of payment such Senior Notes Indenture Trustee may have for any fees, costs and expenses under the Senior Notes Indenture or other agreements until all such fees, costs, and expenses are paid pursuant to the Plan or otherwise; provided, however, that such rights and liens are limited to the distributions, if any, to the holders of Senior Notes; and (ii) the applicable provisions of the RGCH PIK Notes Credit Agreement shall continue in effect solely for the purposes of permitting the RGCH PIK Notes Agent and/or the Disbursing Agent to make distributions pursuant to the Plan on account of Allowed RGCH PIK Notes Claims, and the RGCH PIK Notes Agent shall maintain any charging lien such RGCH PIK Notes Agent may have for any fees, costs and expenses under the RGCH PIK Notes Credit Agreement or other agreements until all such fees, costs, and expenses are paid pursuant to the Plan or otherwise. The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or

24

the cancellation thereof, except the rights provided for pursuant to the Plan. Except as expressly as set forth in the Plan, the Senior Notes Indenture Trustee and the RGCH PIK Notes Agent and each of their respective agents, successors and assigns shall be discharged of all of their obligations associated with the Senior Notes and the RGCH PIK Notes, as applicable.

28.     Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors any Collateral or other property of the Debtors held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or *lis pendens*; provided, however, any such Collateral that is a Purchased Asset received by the Debtors from the holder of such Allowed Claim shall be delivered promptly to the Purchaser.

29.     On the Effective Date of the Plan, the Committee shall be dissolved as provided by section 14.4 of the Plan.

30.     All proofs of claim with respect to Claims arising from the rejection of any executory contract or unexpired lease under the Plan shall, unless another order of the Court provides for an earlier date, be filed with the Court within thirty (30) days after the Effective Date. The holder of any Claim asserted in any such proof of claim that is not timely filed shall not be treated as a creditor or a claimant with respect to such Claim for purposes of distribution under the Plan and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Estates, the Purchaser, or the Plan Administrator or any of the foregoing

25

parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Professionals.

31.     Except as set forth in section 7.8 of the Plan, any trade vendor, supplier, or other Person who asserts a Claim related to or arising from goods or services provided to the Debtors in the ordinary course of business (but excluding any claims related to or arising from litigation against the Debtors, litigation-related claims, severance claims, or rejection or termination of an agreement with the Debtors, each of which was required to file Claims as set forth in the Bar Date Order) ("Prepetition Ordinary Course of Business Trade Claims") arising prior to the Petition Date must file with the Court and serve on the Debtors, the Claims Agent and the Office of the United States Trustee proof of such Prepetition Ordinary Course of Business Trade Claim within thirty (30) days after the Effective Date (the "Prepetition Ordinary Course of Business Trade Claims Bar Date"). Holders of such Prepetition Ordinary Course of Business Trade Claims (which Prepetition Ordinary Course of Business Trade Claims are not otherwise satisfied prior to the Prepetition Ordinary Course Trade Claims Bar Date) that fail to timely file a proof of claim shall not be treated as a creditor or a claimant with respect to such Claim for purposes of distribution under the Plan and will be barred from asserting such Claims in any manner against the Debtors, the Estates, the Purchaser, or the Plan Administrator or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Professionals.

32.     Except as set forth in section 3.2 of the Plan, all requests for payment of Administrative Expense Claims relating to the period March 1, 2010 through the Effective Date, must be filed with the Court and served on the Debtors, the Plan Administrator, the Claims Agent and the Office of the United States Trustee, no later than thirty (30) days after the

Effective Date. Any request for payment of an Administrative Expense Claim (other than as set forth in section 3.2 of the Plan) that is not timely filed as set forth in the immediately preceding sentence will be forever barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Estates, the Purchaser, or the Plan Administrator or any of the foregoing parties' accountants, advisors, agents, attorneys, consultants, directors, employees, members, officers, representatives, or Professionals.

33.     All requests for payment or any other means of preserving and obtaining payment of a Fee Claim that arose prior to the Effective Date and that was not already paid, released, or otherwise settled, must be filed with the Court and served upon the Debtors, the Plan Administrator, the Claims Agent, the Committee, and the Office of the United States Trustee, no later than forty-five (45) days after the Effective Date, or such extended date as the Court may allow. Any request for payment of a Fee Claim that is not timely filed as set forth above will be forever barred, and holders of such Claims will not be able to assert such Claims in any manner against the Debtors, the Estates, the Purchaser, or the Plan Administrator.

34.     Other than with respect to Fee Claims, only the Debtors shall be entitled to object to Claims after the Effective Date. The Debtors shall file and serve any objections to Claims (other than Administrative Expense Claims and Fee Claims) on or before the later of: (i) one hundred twenty (120) days after the Effective Date, and (ii) such other date as may be fixed by the Court. Any Claims (other than Fee Claims) filed after the Bar Date or Administrative Expense Claims Bar Date, as applicable, shall be deemed disallowed and expunged in their entirety without further order of the Court or any action being required on the part of the Debtors unless the Person wishing to file such untimely Claim has received Court authority to do so.

35. This Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

36. The Sale (including of the Purchased Assets and assumption and assignment of the Assigned Contracts to the Purchaser), shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, recording, mortgage recording, or other similar tax or fee.

37. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

38. The release, exculpation and injunction provisions contained in the Plan including, without limitation, those set forth in Article XII of the Plan, are expressly incorporated into this Order as if set forth in full and are hereby authorized and approved.

39. The Court hereby retains jurisdiction of the Chapter 11 Cases and all matters arising under, arising out of, or related to, these Chapter 11 Cases and the Plan: (i) as provided for in the Plan; (ii) as provided for in this Order; and (iii) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

40. Subject to paragraph 11, the failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

41. The Plan shall be deemed to be substantially consummated on the Effective Date.

42. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors shall serve a notice of the entry of this Order and the occurrence of the Effective Date (the "Confirmation Notice"), on all holders of record of Claims and Interests as of the date hereof, all parties who have entered their appearance in these Chapter 11 Cases and requested notice pursuant to Bankruptcy Rule 2002 and the Office of the United States Trustee no later than ten (10) days after the Effective Date.

43. Unless otherwise provided by the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and still extant on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

44. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the Debtors (including the Plan Administrator) and their counsel, (b) the United States Trustee, (c) the Purchaser and its counsel and (d) any party known to be directly affected by the relief sought therein.

*With Respect to the Sale:*

45. The Sale, pursuant to the terms and conditions of the APA and the Plan, is hereby approved, pursuant to sections 105(a), 363, 365, 1123, 1129 and 1146 of the Bankruptcy Code.

46. The APA and all of the terms and conditions thereof are hereby approved.

47. Objections (and any reservations of rights contained therein) to the Sale (including the assumption by the Debtors and the transfer and/or assignment by the Debtors of any of the Assigned Contracts to the Purchaser), if any, to the extent not withdrawn, are hereby overruled in their entirety and denied on the merits.

48. Pursuant to sections 363(b), 1123 and 1129 of the Bankruptcy Code, and by the terms of this Order, the Debtors are authorized to perform their obligations under and comply with the terms of the APA, and consummate the Sale, pursuant to and in accordance with the terms and conditions of the APA.

49. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect to the APA and all other Sale-related documents.

50. The Debtors are authorized to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with all additional instruments,

documents, and agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

51. This Order and the APA shall be binding in all respects upon all holders of Claims against, or Interests in (whether known or unknown) of any Debtor, all non-Debtor parties to the Assigned Contracts, all successors and assigns of the Purchaser, the Debtors and their respective affiliates and subsidiaries, and any subsequent examiners or trustees appointed in the Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code. Nothing contained in the Plan shall conflict with or derogate from the provisions of this Order and the APA, and this Order and the APA shall control to the extent of such conflict or derogation.

52. The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms of such agreements, documents or instruments, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' Estates.

53. Except as expressly permitted or otherwise specifically provided for in the APA or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing Date, the Purchased Assets shall be transferred to the Purchaser, free and clear of all Claims or Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever, with all such Claims or Encumbrances of any kind or nature

31

whatsoever attaching to the proceeds of the Sale (net of taxes, fees and expenses incurred in effecting the Sale) ultimately attributable to the applicable Purchased Assets to which such Claims or Encumbrances relate, in order of their respective priorities, with the same validity, force and effect of which they now have against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto, and in accordance with the provisions of the Plan.

54. The transfer of the Purchased Assets to the Purchaser pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets upon the Closing Date, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Claims and Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever.

55. Except as expressly permitted or otherwise specifically provided by the APA, the Plan or this Order, all Persons, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, customers, lenders, trade and other creditors, holding Claims or Encumbrances of any kind or nature whatsoever against or in the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the operation of the Debtors' business prior to the Closing Date, or the assumption by the Debtors and the transfer and/or assignment by the Debtors of the Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against: (a) the Purchaser; (b) the Purchaser's successors,

32

designees or assigns or their respective properties, assets or interests; or (c) the Purchased Assets, such Persons' Claims, Encumbrances or Interests.

56.    In accordance with the terms of the APA, on the Effective Date, the Purchaser shall be responsible for payment and satisfaction of all Assumed Liabilities. As provided in section 7.9 of the Plan, all Persons holding Claims and Interests arising out of or concerning an Assumed Liability, shall be forever barred, estopped and permanently enjoined from asserting against the Debtors or the Plan Administrator and any of their property, such Persons' Claims or Interests (as applicable) arising out of or concerning such Assumed Liabilities. The Purchaser is not assuming, and shall not become liable for the payment or performance of, any liabilities or other obligations of any of the Debtors of any nature whatsoever, whether accrued or unaccrued, other than the Assumed Liabilities.

57.    If any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Encumbrances in the Debtors or the Purchased Assets shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Claims and Encumbrances which the Person has with respect to the Debtors or such Purchased Assets or otherwise, then (a) the Debtors and the Purchaser (and each of them individually) are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets, and (b) the Purchaser is hereby authorized and directed to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Claims, Interests and Encumbrances in or on the Purchased Assets of any kind or nature whatsoever. Each federal, state and local

33

governmental agency or department is authorized to accept for filing and/or recording any and all documents and instruments to evidence the release of all Claims, Interests and Encumbrances in or on the Purchased Assets or otherwise necessary and appropriate to consummate the transactions contemplated by the APA.

58.     The consideration provided by the Purchaser for the Purchased Assets under the APA constitutes, and shall be deemed to constitute, reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession thereof, and the District of Columbia.

59.     The consideration provided by the Purchaser for the Purchased Assets under the APA is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

60.     On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Claims and Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) in the Purchased Assets, if any, as such Claims or Encumbrances may have been recorded or may otherwise exist.

61.     This Order (a) shall be effective as a determination that, on the Closing Date, all Claims and Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) of any kind or nature whatsoever existing or relating as to the Debtors or the Purchased Assets on or prior to the Closing Date have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all Persons including without limitation, all filing

34

agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

62.     All non-Debtor Persons who are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to provide access to, and surrender possession of, the Purchased Assets to the Purchaser on the Closing Date (unless otherwise instructed by the Purchaser).

63.     Except for the Assumed Liabilities, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the APA, the Purchaser shall not be liable for any Claims against, or Interests in, the Debtors or any of their predecessors or affiliates, and the Purchaser and each of its affiliates, successors and assigns shall have no successor or vicarious liabilities of any kind or character including but not limited to any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business, or the sale or use of any of the Debtor's current or former assets or properties, on or prior to the Closing Date.

64. Except as set forth in the APA, each Assigned Contract shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such Assigned Contract; provided, however, that, notwithstanding the foregoing, the Assigned Contracts shall not include the Non-Assumed Contracts (as defined in the APA) and none of the Non-Assumed Contracts shall be assumed and transferred and/or assigned to the Purchaser.

65. Following the Closing Date, except as expressly set forth herein or in the APA, no holder of a Claim or Encumbrance in the Debtors or the Purchased Assets shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on or related to such Claim or Encumbrance, or any actions that the Debtors may take in their Chapter 11 Cases.

66. As of the Closing Date, the Debtors are authorized without further Court order to change the name of each Debtor to a name that does not include "RathGibson", "Greenville Tube," "Mid-South", the names of the Debtors and, any derivations thereof (collectively, the "Purchased Names"); provided, however, that following the Closing Date, the Debtors are authorized to include the Purchased Names for reference as "f/k/a" in any filings or other correspondence relating to the Chapter 11 Cases.

67. The Debtors are authorized to close the Utility Deposit Account (as defined in the Final Order: (I) Prohibiting Utilities From Altering, Refusing or Discounting Services; (II) Deeming Utility Companies Adequately Assured of Future Performance; and (III) Establishing Procedures for Determining Adequate Assurance of Payment [Docket No. 153]) and transfer all funds in the Utility Deposit Account to the Purchaser as a Purchased Asset

pursuant to the terms of the APA. Any bank with which the Utility Deposit Account is maintained shall take any and all steps necessary to terminate the Utility Deposit Account consistent with the terms of this Order.

68. The Debtors are hereby authorized to further amend or modify the Plan at any time prior to the substantial consummation of the Plan subject to and in accordance with section 1127 of the Bankruptcy Code, without further order of the Court. In addition, without the need for a further order or authorization of this Court, but subject to the express provisions of this Order, the Debtors are authorized and empowered as may be necessary to make non-material modifications to the documents filed with the Court, including the Plan Supplement or documents forming part of the evidentiary record at the Confirmation Hearing, in their reasonable business judgment, as well as such other modifications that are made in accordance with the terms of this Order, the Plan or the applicable Plan Document. The Debtors may institute proceedings in this Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

69. This Court retains jurisdiction to enforce and implement the terms and provisions of the APA, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser; (b) compel delivery of the purchase price (or any downward adjustments thereto) or performance of other obligations owed to the Debtors or the Purchaser under the APA or such other agreements; (c) resolve any disputes arising under or related to the APA, except as otherwise provided therein; (d) interpret, implement, and enforce the provisions of this Order; (e) address

any matters relating to the assumption by the Debtors and the transfer and/or assignment by the Debtors of any of the Assigned Contracts to the Purchaser, including entering any orders under section 365 of the Bankruptcy Code; and (f) protect the Purchaser against (i) any of the Excluded Liabilities or (ii) any Encumbrances (other than Assumed Liabilities and Permitted Encumbrances) in the Debtors, the Purchased Assets or the Excluded Assets, of any kind or nature whatsoever.

70.     Notwithstanding Fed. R. Bankr. P. 6004(h), 6006(d) and 3020(e), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan, and the Debtors and the Purchaser are free to close under the APA at any time. The transactions contemplated by the APA are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption by the Debtors and the assignment of any of the Assigned Contracts to the Purchaser), unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

71.     The failure specifically to include any particular provisions of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety.

## DIP Payoff/Wind Down

72. On the Effective Date, in full satisfaction, settlement, release and discharge of the Allowed DIP Claims, the holders of Allowed DIP Claims shall be paid in full in Cash, and the DIP Credit Agreement shall be terminated after such payment in full.

73. On the Closing Date, the Debtors shall be authorized to use proceeds from the Sale to establish the following segregated accounts to be maintained by the Debtors following the Closing Date (with the funds in each account being used solely for the types of expenses described for each such account): (i) an amount equal to the estimated accrued, but unpaid, fees and expenses of the Debtors' and Committee's professionals and Committee member expenses as of the Closing Date (the "Pre-Closing Date Professional Fees"), including but not limited to, any success or restructuring or similar fees to be paid (the "Professional Fee Account"); and (ii) an amount equal to $1.078 million (the "Wind Down Account") to fund the Wind Down (collectively, with the Professional Fee Account, the "Accounts").

## Resolutions and Compromises

74. That certain Lease Agreement, dated November 11, 1999, as amended by Amendment to Lease, dated October 31, 2001 between Gibson Industrial Park, L.L.C., as lessor, and RathGibson, Inc. (f/k/a Gibson Tube, Inc.), as lessee, as further amended by that certain Lease Extension, is approved and shall be assumed and assigned to the Purchaser upon the Closing of the Sale. The Debtors and the Purchaser are authorized to take all necessary actions to implement the terms of the Lease Agreement, as amended.

75. Notwithstanding the Cure Cost set forth in Exhibit 1 to the Notice of Assumption and Assignment served upon Harley B. Kaplan, the Cure Cost related to the assumption of the Separation Agreement and General Release, as modified by the Release

Agreement, dated as of March 8, 2010, between the Debtors and Harley B. Kaplan is as set forth in such Release Agreement.

76.     Notwithstanding anything to the contrary contained in the Loan Agreement among GE Government Finance, Inc., as lender, and City of Clarksville, Arkansas, as Issuer, and Greenville Tube Company, as Borrower, dated as of December 1, 2007 (the "Loan Agreement"), or any related document, Greenville Tube Company is hereby authorized to assume and assign the Loan Agreement to the Purchaser upon Closing; provided, that (i) Greenville Tube Company pays to GE Capital Franchise Finance Corporation, in its capacity as a successor-in-interest by assignment to GE Government Financing, Inc., the sum of $341,022.53, as the Cure Cost necessary to cure all defaults and pecuniary losses under the Loan Agreement as of May 30, 2010 plus per diem interest at the contract rate set forth in the first sentence of section 2.03 of the Loan Agreement from May 30, 2010 through the Closing plus any additional reasonable documented attorneys' fees and costs incurred under the Loan Agreement through Closing (not otherwise included in the $341,022.53); and (ii) upon the Effective Date, if an unqualified opinion (the "Opinion"), in form and substance reasonably satisfactory to GE Capital Franchise Finance Corporation, of bond counsel stating that the sale of the Project (as defined in the Loan Agreement) will not cause interest payable by the Purchaser under the Loan Agreement to become includable in the gross income of the recipient, has not yet been delivered to GE Capital Franchise Finance Corporation, the Purchaser shall pay interest on the loans calculated at the Gross-Up Rate (as defined in the Loan Agreement) until such time as GE Capital Franchise Finance Corporation receives such Opinion. Upon receipt of the Opinion by GE Capital Franchise Finance Corporation, interest will be payable (as of the date of receipt) as set forth in the first sentence of section 2.03 of the Loan Agreement. Upon Closing, the claim filed by GE

40

_and RathGibson, Inc._

Capital Franchise Finance Corporation against Greenville Tube Company, and designated as
_Nos._ _, and 151, respectively,_ _and (iv) See Insert._
Claim ~~No.~~ 152 will be deemed withdrawn, with prejudice, and the claim filed by GE Capital

~~Franchise Finance Corporation against RathGibson, Inc., and designated as Claim No. 151, will~~

~~be deemed amended to assert only a contingent claim as to such Debtor's contingent guaranty of~~

~~the obligations assumed and assigned to the Purchaser.~~ In connection with the Opinion, the

Debtors are authorized to pay Friday Eldredge & Clark, as their bond counsel, for reasonable

documented fees and expenses in connection therewith. To the extent not filed as of the date

hereof, Friday Eldredge & Clark promptly shall file an affidavit or declaration as required under

the Order Authorizing Debtors to Employ Professionals Utilized in the Ordinary Course of

Business [Docket No. 147].

77.     The terms and provisions of the APA, the Plan and this Order shall be

binding in all respects upon, and shall inure to the benefit of, the Debtors, their Estates, and their

creditors, the Purchaser, and its respective affiliates, successors and assigns, and any affected

third parties including, but not limited to, all Persons asserting Claims and/or Encumbrances in

the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) under any

chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall

be binding.

78.     The provisions of this Order are integrated with each other and are non-

severable and mutually dependent.

79.     This Order is a Final Order and the period in which an appeal must be

filed shall commence upon the entry hereof.

Dated: _____, 2010
       Wilmington, Delaware

41

Dated: May 21, 2010
Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

INSERT #76
_____

(ii) GE Capital Finance Corporation shall retain all
security interests and liens in and against
the Collateral (as defined in the IRB Loan
Agreement) subject to the IRB Loan Agreement
to the same extent and priority as such
security interests and liens existed immediately
prior to the Sale, and such security interests and
liens shall be Permitted Encumbrances under
the terms of the APA.

_____
(iv) At the time of the Closing, RathGibson Intermediate
Co. LLC shall provide GE Capital Franchise
Finance Corporation with an unsecured guaranty
of the obligations of Greenville Tube Company
Acquisition LLC under the IRB Loan Agreement
substantially similar in form and substance to
that Corporate Guaranty Agreement executed on
December 1, 2007 by RathGibson, Inc.

42